IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT ERNST, individually and as a representative of the classes,<br><br>Plaintiff<br><br>v.<br><br>DISH NETWORK, LLC, DISH NETWORK SERVICE, LLC, and STERLING INFOSYSTEMS, INC.<br><br>Defendants. | Case No. 12-cv-8794-VM – ECF Case<br><br>**CLASS ACTION COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

Plaintiff Scott Ernst ("Plaintiff"), by and through his attorneys, and on behalf of himself, the Putative Classes set forth below, and in the public interest, brings the following class action Complaint against Defendants DISH Network, L.L.C., DISH Network Service, L.L.C. (collectively "DISH Network"), and Sterling Infosystems, Inc. ("Sterling Infosystems"), pursuant to the Fair Credit Reporting Act ("the FCRA").

## PRELIMINARY STATEMENT

1. This is a case about the improper creation, procurement, and use of consumer reports. Through the Fair Credit Reporting Act, Congress has expressed its purpose and policy judgment, requiring consumer reporting agencies and users of consumer reports to "adopt reasonable procedures for meeting the needs of commerce" in a manner which is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681. Working together, DISH Network, a well-known provider of direct broadcast satellite services, and Sterling Infosystems, a large consumer reporting agency, have systematically and willfully violated the FCRA. DISH

1

Network has violated the law by procuring consumer reports on its field technicians without first obtaining their consent, and by taking adverse action against its technicians without first providing them with a copy of the report and an opportunity to contest its contents. Sterling Infosystems has violated the law by including irrelevant and outdated information in its reports, and by failing to provide free copies of reports to consumers who request them. In a pattern and practice of related violations, DISH Network and Sterling Infosystems have consistently undermined Congress' carefully struck balance, unlawfully placing their business interests above the rights of consumers.

*FCRA Violations by DISH Network*

2. DISH Network routinely obtains and uses information in consumer reports to conduct background checks on prospective and existing DISH Network technicians, and frequently relies on such information, in whole or in part, as a basis for adverse employment actions, such as prohibiting technicians from performing work installing and maintaining DISH Network products.

3. While the use of consumer report information for employment purposes is not *per se* unlawful, it is subject to strict disclosure and authorization requirements under the FCRA.

4. DISH Network has willfully violated these requirements in at least three separate ways, in systematic violation of Plaintiff's rights and the rights of other Putative Class members.

5. First, in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii), DISH Network has unlawfully procured consumer reports without first receiving *proper authorization* from Plaintiff and other Putative Class members.

6. Second, in violation of 15 U.S.C. § 1681b(b)(2)(A)(i), DISH Network has unlawfully procured consumer reports without first making a *clear and conspicuous disclosure*

to Plaintiff and other Putative Class members stating that DISH Network may procure such reports.

7. Third, in violation of 15 U.S.C. § 1681b(b)(3)(A), DISH Network has taken adverse employment action against Plaintiff and other putative class members based on undisclosed consumer report information, without first providing Plaintiff and other affected class members with a copy of the pertinent consumer report and without providing them a reasonable opportunity to correct inaccuracies.

*FCRA Violations by Sterling Infosystems*

8. Sterling Infosystems is the world's largest company focused entirely on background checks. See http://www.sterlinginfosystems.com/about-sterling.htm. Sterling Infosystems is a consumer reporting agency within the meaning of the FCRA. It receives monetary fees from its customers in exchange for assembling information on consumers for the purpose of furnishing consumer reports to third parties, and provides such reports using the facilities of interstate commerce, including the mail and the internet, for the purpose of preparing and furnishing such reports.

9. Under the FCRA, Sterling Infosystems is obligated to follow strict requirements forbidding the disclosure of outdated adverse information, requiring consumer reporting agencies to maintain reasonable procedures to avoid violations, and requiring consumer reporting agencies to provide a copy of consumer reports when the persons who are the subjects of such reports request copies of their files.

10. Sterling Infosystems has willfully violated these requirements in systematic violation of Plaintiff's rights and the rights of other Putative Class members in at least two ways.

11.     First, in violation of 15 U.S.C. § 1681c(a), Sterling Infosystems has unlawfully reported "adverse item[s] of information, other than records of convictions of crimes which antedate[] the report by more than seven years" in reports describing the backgrounds of Plaintiff and other Putative Class members.  With respect to Named Plaintiff Ernst, Sterling Infosystems improperly reported an arrest and numerous charges and citations that were dismissed or otherwise never led to charges, each of which is **over 20 years old**.

12.     Second, in violation of 15 U.S.C. §§ 1681j(a)(1)(A) and 1681g(a)(1)(A), Sterling Infosystems has failed to produce, upon request by Plaintiff, the information on file, sources, and report recipients for consumer reports it provided regarding Plaintiff.  Specifically, Sterling Infosystems did not respond to Plaintiff's request for a copy of his file.  When Plaintiff followed up by phone, a representative of Sterling Infosystems stated that the company had no record of running a report on Plaintiff.  This statement was untrue.

13.     Based on the foregoing violations, Plaintiff asserts FCRA claims against DISH Network and Sterling Infosystems on behalf of himself and the Putative Classes proposed herein.

14.     On behalf of himself and the Putative Classes proposed herein, Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA.

## THE PARTIES

15.     Individual and representative Plaintiff Scott Ernst is a resident of Cokato, Minnesota (Wright County).  Plaintiff is a member of each of the Putative Classes defined below.

16.     DISH Network, L.L.C. is a Colorado limited liability company, with its principal place of business in Englewood, Colorado.

17. Defendant DISH Network Service, L.L.C. is a Colorado limited liability company, with its principal place of business in Englewood, Colorado.

18. Defendant Sterling Infosystems, Inc. is a company incorporated in Delaware with its principal place of business in New York City, New York.

## JURISDICTION AND VENUE

19. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

20. Venue is proper in the United States District Court, District of Southern District of New York pursuant to 28 U.S.C. § 1391.

21. Sterling Infosystems is headquartered in New York City and is subject to personal jurisdiction in this district.

22. DISH Network does substantial business in this district and is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

23. DISH Network is a satellite broadcaster, providing direct broadcast satellite service—including satellite television, audio programming, and interactive television services—to millions of commercial and residential customers in the United States.

24. Superior Satellite Services, Inc. ("Superior Satellite") is a company incorporated and headquartered in Minnesota, and is one of many companies who contract with DISH Network to perform installation and service work on DISH Network's products. These companies are referred to in practice, and in this Complaint, as "DISH Network contractors" or "contractors."

25.     Plaintiff Scott Ernst began working for Superior Satellite in approximately July 2009, as a satellite TV installation worker installing Dish Network equipment. The individuals who work for the DISH Network contractors on DISH Network assignments are referred to as "contractor technicians."

***Dish Network Causes Superior Satellite and Other Contractors to Procure Consumer Reports on Contractor Technicians***

26.     In approximately April 2011, DISH Network sent Superior Satellite and all other DISH Network contractors written directions requiring that background checks be performed on all current and prospective contractor technicians who would perform work installing or servicing DISH Network products.

27.     DISH Network required its contractors to procure these background checks exclusively from Sterling Infosystems, the self-described "world's largest company focused entirely on background checks." See http://www. sterlinginfosystems.com/about-sterling.htm.

28.     In connection with procuring these background checks, DISH Network required all of the DISH Network contractors to fill out a "Contractor Application Company Information" form, which was subsequently submitted to Sterling Infosystems.

29.     The form stated that "ONLY APPROVED DISH NETWORK CONTRACTORS WILL BE APPROVED TO PARTICIPATE IN THIS PROGRAM." The contractor was then directed to send the completed form to DISHcontractors@sterlinginfosystems.com.

30.     DISH Network's contractors were required to procure background checks from Sterling Infosystems according to the terms dictated by DISH Network.

31.     DISH Network indicated that contractors that failed to comply with its direction to procure background checks from Sterling Infosystems would no longer be permitted to do

business with DISH Network. DISH Network indicated that obtaining such background checks was necessary for contractors to "remain in compliance with DISH Network's hiring standards."

***DISH Network Causes its Contractors to Procure Consumer Reports and Receives Copies of Those Reports***

32. On or about November 28, 2011, in response to DISH Network's requirements, Superior Satellite requested a copy of a background check on Plaintiff Ernst from Sterling Infosystems.

33. On or about November 29, 2011, Sterling Infosystems sent Superior Satellite a consumer report on Plaintiff, which included information on Plaintiff's criminal history, driving history, address history, and a "social security trace search."

34. Among other things, the report indicated that Plaintiff was arrested on June 21, 1991, on suspicion of drunk driving. The report indicated that Plaintiff was charged with three crimes stemming from that same arrest that were ultimately dismissed. None of the dismissed charges resulted in a conviction, and all of them were more than seven years old and the subject of expired statutes of limitations.

35. The report also listed other adverse information which antedated the date of the report by more than seven years and was neither a conviction for a crime nor information about an arrest which was still within the statute of limitations. Specifically, Sterling Infosystems' report on Plaintiff Ernst included information pertaining to nine separate traffic tickets, dating from the years 1991-1996. There was no indication on the report that these tickets resulted in any convictions, and indeed, the "conv" column pertaining to these tickets was blank.

36. On or about November 29, 2011, Sterling Infosystems also sent DISH Network a summary of the results of the background check on Plaintiff. This summary included the fact that Plaintiff had been labeled as "high risk."

37.     Sterling Infosystems' indication that Plaintiff had been classified as "high risk" was based on parameters DISH Network provided to Sterling Infosystems. Based on these predetermined parameters, Sterling Infosystems assigned each subject of a background check a rating of "low risk," review," or "high risk." Among other things, these automatically assigned ratings took into account the subject's criminal and motor vehicle history, as represented by Sterling Infosystems.

*DISH Network Takes Adverse Employment Action*

38.     DISH Network maintains a uniform policy with respect to contractor technicians which is based on the classifications assigned by Sterling Infosystems pursuant to DISH Network's uniform classification system.

39.     Pursuant to DISH Network's uniform classification system, persons classified as "low risk" are eligible for assignment to DISH projects.

40.     Pursuant to DISH Network's uniform classification system, persons classified as "high risk" are ineligible to perform any work on DISH projects.

41.     Pursuant to DISH Network's uniform classification system, persons classified as "review" are deemed ineligible to work on DISH projects unless or until they were re-rated as "low risk."

42.     Contractors have no discretion to alter DISH Network's classifications, or to deviate from them.

43.     Indeed, DISH Network does not merely trust its contractors to follow its directive to forbid technicians rated as "high risk" to perform DISH Network projects.