44. Instead, using mobile workforce management computer software called ETAdirect, DISH Network actively monitors the work of contractor technicians to ensures that no DISH Network work is assigned to technicians rated as "high risk."

45. ETAdirect tracks personal identifying information of DISH Network technicians, including the risk rating assigned to the technician by Sterling Infosystems and conveyed directly to DISH Network at the time a background check is obtained by the contractor. ETAdirect also tracks detailed information about the work technicians perform, such as the starting and ending point of each job, the duration of each job, as well as routing and scheduling information.

46. Contractors have no discretion to alter the parameters set by DISH Network to determine an employee's eligibility to perform DISH projects. Nor do contractors have the authority to challenge Sterling Infosystems' classifications.

47. Indeed, on approximately December 15, 2011, Superior Satellite manager Scott Neuman sent an electronic message to Plaintiff and other contractor technicians. The message was entitled "Background testing and Drug testing." The message stated that "If you have had a recent felony or anything deemed by Dish as a current or previous situation you may be deactivated per Dish from doing work." The message continued, "Again, this is directly from Dish Network and their background company which they make us use. Superior has no say whatsoever …." The message concluded, "It is 100% Dish Network and their pre-selected background company, Sterling, who determines what techs can be assigned work or not."

48. Whenever DISH Network receives a report from Sterling Infosystems indicating that a contractor technician has been labeled "high risk," that contractor technician is immediately banned by DISH Network from performing any work on DISH projects.

49.  In accordance with DISH Network's standard practice, Plaintiff was immediately banned by DISH Network from performing any work on DISH projects as soon as Sterling Infosystems communicated to Superior Satellite and DISH Network that he had been classified as "high risk."

50.  As a result of the classification contained in Sterling Infosystems' report, Plaintiff was no longer able to perform any installation work for Superior Satellite, and experienced the loss of the wages he would have earned had he continued to work at Superior Satellite on DISH Network assignments. He was also flagged in DISH Network's system as "high risk" which hindered his ability to obtain installation work from any other DISH Network contractor.

*DISH Network Fails to Provide Pre-Adverse Action Notice*

51.  Whenever an employment related adverse action is taken based in whole or in part on information contained in a consumer report, the user of the report is required to provide pre-adverse action notification, a summary of rights, and a copy of the report to the subject of the report. 15 U.S.C. § 1681b (3). Neither DISH Network nor Sterling Infosystems ever gave Plaintiff or other contractor technicians a copy of the reports on which the adverse decisions were based. Nor did they ever provide him with a copy of the summary of consumer rights as required by the FCRA. 15 U.S.C. § 1681b (3).

*Sterling Infosystems Refuses to Provide Plaintiff with His Report.*

52.  After Plaintiff was barred from performing work for DISH Network, on or about May 22, 2012, Plaintiff made a written request, via U.S. mail, to Sterling Infosystems seeking a copy of his file.

53.  To make the request, Plaintiff submitted the information sought according to the terms of Sterling Infosystems' website, which informs consumers they have a right under the

FCRA to receive a copy of their file and represents that, upon request, a copy will be provided. See www.sterlinginfosystems.com/fact-act-disclosure.htm

54.     Specifically the FCRA requires that "if...the consumer requests a copy of a consumer report from the person who procured the report, then, within 3 business days of receiving the consumer's request, together with proper identification, the person must send or provide to the consumer a copy of a report..." 15 U.S.C. § 1681b(b)(3)(B)(ii).

55.     Despite its acknowledged legal obligation to do so, Sterling Infosystems did not respond to Plaintiff's request for a copy of the report pertaining to him.

56.     After approximately five weeks, Plaintiff called Sterling Infosystems, seeking information on the status of his request. A representative for Sterling Infosystems falsely informed Plaintiff that Sterling Infosystems had no record of issuing a report on Plaintiff. Accordingly, Plaintiff never received a copy of his file from Sterling Infosystems.

***DISH Network Fails to Obtain Proper Authorization or Make Proper Disclosures Regarding the Reports***

57.     Not only did DISH Network fail to provide proper pre-adverse action notice to Plaintiff and other contractor technicians, it also failed to obtain proper authorization to procure a consumer report and to make required disclosures in connection with the procurement of the report.

58.     In order to obtain a consumer report, the party requesting the report must have a permissible purpose. 15 U.S.C. §1681b (a). "Employment purposes" are permissible under the FCRA. 15 U.S.C. §1681b (a)(3)(B).

59.     A party requesting a consumer report for employment purposes must disclose, in a stand-alone document consisting solely of the disclosure, that it intends to obtain a consumer report for employment purposes. See 15 U.S.C. § 1681b (b)(2)(A)(i).

11

60. A party requesting a consumer report for employment purposes must also obtain the written consent of the subject of the consumer report to obtain the report. See 15 U.S.C. § 1681b (b)(2)(A)(ii).

61. DISH Network never made any disclosure in writing or otherwise to Plaintiff or any other contractor technicians that it would obtain a consumer report on them for employment purposes.

62. DISH Network never obtained written authorization from Plaintiff or any other contractor technicians to obtain a consumer report on them.

63. Nevertheless, DISH Network obtained consumer reports from Sterling Infosystems on Plaintiff and all of its other contractor technicians.

*DISH Network's Violation of the FCRA Was Willful*

64. The Supreme Court defined the standard for willful failure to comply with the FCRA in Safeco Insurance Co. of America v. Burr, 551 U.S. 47 (2007). "Willful violations include not only knowing violations ... but reckless ones as well." Id. at 57.

*DISH Network is Aware of the FCRA*

65. DISH Network is an established business with access to legal advice through its own general counsel's office and outside employment counsel.

66. DISH Network informs each of its residential and commercial customers through its service agreements of the rights and obligation imposed by the FCRA. See http://www.dish.com/downloads/legal/Residential-Agreement.pdf at 8; http://www.dish.com/downloads/legal/Commercial-Customer-Agreement.pdf at 10.

67. DISH Network's knowledge of the FCRA's requirements is further highlighted by the company's participation in lawsuits alleging violations of the FCRA. See, e.g., Gregory