Bickley v. DISH Network LLC, No. 10-0678, 2012 WL 5362425 (W.D. Ky. October 31, 2012); Jackson v. Echostar Commc'ns Corp d/b/a DISH Network, et al., No. 3:06cv494 (S.D. Miss. Sep. 7, 2006) (attached as Exhibit 1.).

***DISH Network Knew or Recklessly Disregarded the Fact that the Reports it Procured were Consumer Reports***

68.   DISH Network knows or recklessly disregarded the fact that the summary reports it received from Sterling Infosystems are "consumer reports" within the meaning of the FCRA.

69.   First, DISH Network was informed by Sterling Infosystems that, as a condition of obtaining consumer reports for employment purposes, it was required to certify that it would comply with its obligations under FCRA. DISH Network certified to Sterling Infosystems that it would do so.

70.   Second, it cannot be argued that the reports DISH Network received from Sterling Infosystems are anything other than consumer reports. This is evidenced by the broad statutory definition of "consumer report," which includes "any . . . communication of any information by a consumer reporting agency bearing on a consumer's . . . character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . ." 15 USC § 1681a(d)(1).

71.   Federal Trade Commission ("FTC") guidance also states that the term "consumer report" is broadly defined. See Exhibit 2 (Schieber Advisory Opinion Letter).

***DISH Network Knew or Recklessly Disregarded its Obligation to Obtain Authorizations and to Make Disclosures Prior to Procuring a Consumer Report***

72. As part of its standard operating procedures, Sterling Infosystems requires all entities who obtain consumer reports from it for employment purposes to certify in writing that they :

    A. Have made a clear and conspicuous disclosure in writing to the consumer before the report is procured or caused to be procured, in a document that consists solely of the disclosure that a consumer report may be procured for employment purposes.

    B. Have obtained authorization, in writing, from the consumer who is the subject of the report.

    C. Will comply with the pre-adverse action notice requirements of 15 U.S.C. §1681b (3).

73. As part of its standard operating procedures, Sterling Infosystems also provides all entities who obtain consumer reports from it with a copy of the consumer's rights under the FCRA as prescribed by the Consumer Financial Protection Bureau.

74. Sterling Infosystems' practices in this regard are consistent with the requirements of 15 U.S.C. §1681b (b)(1)(A).

75. As a recipient of consumer reports from Sterling Infosystems, DISH Network made all of the representations required by Sterling Infosystems' standard practices, and also received a copy, from Sterling Infosystems, of the consumer's rights under the FCRA as prescribed by the Consumer Financial Protection Bureau.

76. Sterling Infosystems' standard service agreement indicates that all users of consumer reports must obtain authorization from the subject of the report before requesting the

14

report. See https://smwreports.sterlingdirect.com/ SubmitBusiness/docs/USASEndUser.pdf. This service agreement put DISH Network on notice as to the legal requirements at issue.

77. DISH Network's only possible permissible purpose for obtaining consumer reports on its contractor technicians was for "employment purposes," which, within the meaning of the FCRA, encompasses the procurement of reports without regard to any formal employer-employee relationship between the party procuring the report and the subject of the report. See 15 U.S.C. § 1681a(h); Exhibit 3 (Allison Advisory Opinion Letter); Exhibit 4 (Solomon Advisory Opinion Letter); Hoke v. Retail Credit Corporation, 521 F.2d 1079 (4th Cir. 1975).

***DISH Network Knew about and Recklessly Disregarded its Duty to Provide Pre-Adverse Action Notification and a Copy of the Report Relied Upon***

78. As alleged in Paragraph 77, Dish Network certified to Sterling Infosystems that it would comply with the pre-adverse action notification requirements of FCRA in its use of consumer reports for employment purposes.

79. DISH Network's knowledge of the FCRA's pre-adverse action requirements and their applicability to its refusal to allow technicians to work is further demonstrated by the company's own internal documents. For example, DISH Network counseled its contractors, in writing, to follow the FCRA by providing pre-adverse action notice to DISH technicians if the contractors elected to *terminate an employee entirely* based on the results of a report. Indeed, DISH Network even provided its contractors with a sample pre-adverse action notice letter to use in such a circumstance.

80. DISH Network's failure to heed its advice to its subcontractors by failing to provide its own pre-adverse action was either in willful disregard of FCRA or was reckless in the extreme.

81. Indeed, it appears that DISH Network may have been advised by its legal counsel that its refusal to allow "high risk" employees to work on its projects constitutes an adverse action within the meaning of FCRA.

82. Specifically, DISH Network has been represented in the past by Jackson Lewis, a national law firm with a large practice focusing on FCRA defense.

83. Jackson Lewis, in a presentation authored jointly with Sterling Infosystems, has opined that a denial of an assignment is an adverse action within the meaning of the FCRA. See Exhibit 5 at 32.

84. The same presentation further opined that the FCRA's requirements are triggered even in the absence of a formal employer-employee relationship. See id. at 11.

85. DISH Network is aware of and recklessly disregarded these opinions from its counsel. DISH Network was also recently accused by the FTC of flagrant and willful violations of federal consumer protection laws. DISH Network faces a FTC lawsuit alleging that DISH Network illegally called millions of consumers who had previously asked telemarketers from the company or its affiliates not to call them again. According to FTC Chairman Jon Leibowitz, "It is particularly disappointing when a well-established, nationally known company – which ought to know better – appears to have flagrantly and illegally made millions of invasive calls to Americans who specifically told DISH Network to leave them alone."

86. DISH Network's pattern and practice of flaunting the law demonstrates its knowing and reckless disregard of its legal obligations.

*Sterling Infosystems' Violations of the FCRA Were Willful*

87. Sterling Infosystems is well aware of its obligations under the FCRA, and chose to knowingly and recklessly disregard them.