

# Nichols Kaster
## ATTORNEYS AT LAW

**Adam Hansen**
Direct: (612) 256-3207
Fax: (612) 338-4878
ahansen@nka.com

4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(877) 448-0492



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/5/13

February 4, 2013

**VIA FACSIMILE**
Hon. Victor Marrero
U.S. District Judge
U.S. Courthouse
500 Pearl Street
New York, NY 10007
F: 212-805-6382

RE: *Ernst v. DISH Network, LLC, et al.*, Case No. 12-cv-8794-VM

Dear Judge Marrero,

I represent Plaintiff Scott Ernst in the above-captioned matter. I write to express opposition to Defendants DISH Network L.L.C.'s and DISH Network Service L.L.C.'s (collectively "DISH Network") letter seeking to sever Defendant Sterling Infosystems, Inc. ("Sterling") from the action and to transfer the action to the District of Minnesota. Under the governing legal framework, neither severance nor a change in venue is appropriate. This case stems from violations of the Fair Credit Reporting Act ("the FCRA") resulting from DISH Network's receipt of improper and flawed consumer reports from Sterling. The gravamen of Plaintiff's Complaint centers around flaws in the manner in which criminal background checks were procured (by DISH Network) and provided (by Sterling)—flaws that find their roots in the contractual relationship between DISH Network and Sterling. The claims set forth in Plaintiff's Complaint stem from the same transaction and contain common issues of law and fact. In addition, proceeding against DISH Network and Sterling collectively conserves judicial resources, prevents prejudice to Plaintiff, and promotes efficiency in discovery and trial. Furthermore, DISH Network cannot overcome the substantial deference owed to Plaintiff's choice of forum.

### Claims Against Sterling and DISH Network Should Not Be Severed into Separate Actions

Federal Rule of Civil Procedure 21 provides in relevant part, "Any claim against a party may be severed and proceeded with separately." In considering whether to sever claims in a civil suit, courts look to the following factors: (1) whether the claims arise out of the same transaction or occurrence, (2) whether the claims present common questions of fact or law, (3) whether severance would serve judicial economy, (4) prejudice to the parties caused by severance, and (5) whether the claims involve different witnesses and evidence. Preferred Med. Imaging, P.C. v. Allstate Ins. Co., 303 F.Supp.2d 476, 477 (S.D.N.Y. 2004); In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig., 214 F.R.D. 152, 154-55 (S.D.N.Y. 2003).

"Federal courts view severance as a procedural device to be employed only in exceptional circumstances." Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F.Supp.2d 821, 826 (S.D.N.Y. 2008). "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." Warner Bros. Entertainment Inc. v. Ideal World Direct, 516 F.Supp.2d 261, 270 (S.D.N.Y. 2007).

Each relevant factor weighs against severance here. The dissemination of flawed reports from Sterling to DISH Network demonstrates that the case involves the same transaction or occurrence. "Transaction is a word of flexible meaning." Moore v. New York Cotton Exch., 270 U.S. 593, 610 (1926). It means "all 'logically related claims' by or against different parties to be tried in a single proceeding." Kehr, 596 F.Supp.2d at 823. In addition, the common factual and legal issues involved demonstrate the efficiency of trying the cases together. DISH Network's agreements with Sterling are relevant to all claims and on the issue of willfulness as to all Defendants. The location where Sterling sent the requested data is critical in substantiating Plaintiff's claims. Sterling possesses information critical in ascertaining the membership in the putative classes asserted against both Sterling and DISH Network. Most fundamentally, the reports themselves, which would have to be produced twice if the case were severed, contain information substantiating Plaintiff's claims against all Defendants. All of this information would have to be subpoenaed needlessly if the case were to proceed on separate tracks—wasting judicial resources and creating unnecessary duplicative discovery. In addition, Plaintiff Ernst would be greatly prejudiced if required to litigate two separate cases.

## This Action Should Not Be Transferred to the District of Minnesota

Under 28 U.S.C. § 1404(a), a court may transfer any civil action to any other district where the case might have been brought if the transfer serves "the convenience of parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a); see Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). Courts generally should disturb the plaintiff's choice of forum only if, on balance, the following factors clearly favor transfer: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with the governing law; (7) the relative financial means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice generally. See Anadigics, Inc. v. Raytheon Co., 903 F. Supp. 615, 617 (S.D.N.Y. 1995).

While a district court has "broad discretion" under Section 1404, because that discretion "must be exercised at the very outset of the case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to the [eighth] factor, plaintiff's choice of forum." Albert Fadem Trust v. Duke Energy Corp., 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002). The burden rests on the moving party to make a "clear and convincing" showing that transfer under Section 1404(a) is proper. Millennium L.P. v. Dakota Imaging, Inc., No. 03 Civ. 1838(RWS), 2003 WL 22940488, at *6 (S.D.N.Y. Dec. 15, 2003) (citation omitted).

Here, the locus of operative facts occurred outside Minnesota, and the relevant documents and witnesses are not located in Minnesota. First, Sterling prepared a report containing outdated information. This conduct likely occurred in New York, where Sterling is headquartered. Relevant documents and witnesses are likely in New York. Next, Sterling sent a report to DISH Network. This transaction originated in New York and was sent to DISH Network, presumably in Colorado, where DISH Network is headquartered. DISH Network made the decision to disallow Plaintiff (and other similarly situated technicians) from performing work, a decision presumably made in Colorado. Witnesses and documents supporting these facts will be located primarily in New York and Colorado. Finally, Sterling failed to provide Plaintiff with a copy of his report as requested. Sterling's failure occurred in New York, and documents and witnesses substantiating Plaintiff's claim are again located in New York. Plaintiff Ernst resides in Minnesota, but he is only one witness and possesses only a tiny fraction of the documents to be produced in this litigation.

DISH Network's arguments with respect Superior Satellite ("Superior") are similarly unavailing. Most fundamentally, the question of whether Superior Satellite violated the FCRA is irrelevant to DISH Network's liability. As set forth in Plaintiff's Complaint, DISH Network caused its contractors (including Superior) to procure background reports from Sterling. Copies of produced report summaries were then sent to both DISH Network and to the relevant contractor. DISH Network failed to provide technicians with notice, failed to obtain written authorizations, and failed to provide notice before taking adverse action against its technicians. These failures are unrelated to whether contractors such as Superior complied with the FCRA. Even assuming some DISH Network contractors followed the FCRA, their compliance would not absolve DISH Network of its legal obligations. Superior (or any other contractor) is not a necessary party to this litigation. DISH Network has not brought a motion so claiming, and has not yet sought to involve Superior in the litigation. In the event that DISH Network sues Superior claiming Superior is responsible for DISH Network's violations under the FCRA,[1] DISH Network can litigate that claim separately without prejudice.

Sincerely,

NICHOLS KASTER, PLLP

Adam Hansen

cc (via fax): Richard I. Greenberg
Steven J. Seidenfeld
Peter C. Moskowitz
William J. Anthony

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Plaintiff.

SO ORDERED.

2-5-13

DATE    VICTOR MARRERO, U.S.D.J.

---

[1] It is far from clear that such a suit would be proper, as the FCRA only authorizes civil suits for violations against consumers and does not authorize suits for the purpose of allowing regulated entities to shift liability.