# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT ERNST, individually and as a representative of the classes, | Case No. 12-cv-8794-LGS |
| Plaintiff | |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT (JURY TRIAL DEMANDED)** |
| DISH NETWORK, LLC, DISH NETWORK SERVICE, LLC, and STERLING INFOSYSTEMS, INC. | |
| Defendants. | |

Plaintiff Scott Ernst ("Plaintiff"), by and through his attorneys, and on behalf of himself, the Putative Classes set forth below, and in the public interest, brings the following class action Complaint against Defendants DISH Network, LLC, DISH Network Service, LLC (collectively "DISH Network"), and Sterling Infosystems, Inc. ("Sterling Infosystems"), pursuant to the Fair Credit Reporting Act ("FCRA").

## PRELIMINARY STATEMENT

1.     This is a case about the improper creation, procurement, and use of consumer reports.  Through the Fair Credit Reporting Act, Congress has expressed its purpose and policy judgment, requiring consumer reporting agencies and users of consumer reports to "adopt reasonable procedures for meeting the needs of commerce" in a manner which is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."  15 U.S.C. § 1681.

2.     Working together, DISH Network, a well-known provider of direct broadcast satellite services, and Sterling Infosystems, a large consumer reporting agency, have

systematically and willfully violated the FCRA. DISH Network has violated the law by procuring consumer reports on its field technicians without first obtaining the technicians' consent; by taking adverse action against them without first providing copies of the reports and an opportunity to contest the contents; and by failing to make proper certifications regarding its purpose for obtaining the reports.

3.      Sterling Infosystems has violated the law by furnishing consumer reports to DISH Network without DISH Network having a permissible purpose and without getting the proper certifications from DISH Network; by including irrelevant and outdated information in its reports; and by failing to provide free copies of reports to consumers who request them.

4.      In a pattern and practice of related violations, DISH Network and Sterling Infosystems have consistently undermined Congress' carefully struck balance, unlawfully placing their business interests above the rights of consumers.

## THE PARTIES

5.      Individual and representative Plaintiff Scott Ernst is a resident of Cokato, Minnesota (Wright County). He is a member of each of the Putative Classes defined below.

6.      Defendant DISH Network, LLC is a Colorado limited liability company, with its principal place of business in Englewood, Colorado.

7.      Defendant DISH Network Service, LLC is a Colorado limited liability company, with its principal place of business in Englewood, Colorado.

8.      Defendant Sterling Infosystems, Inc. is a company incorporated in Delaware with its principal place of business in New York City, New York.

## JURISDICTION AND VENUE

9.      This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).

10.      Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391.

11.      Sterling Infosystems is headquartered in New York City and is subject to personal jurisdiction in this district.

12.      DISH Network does substantial business in this district and is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

13.      DISH Network is a satellite broadcaster, providing direct broadcast satellite service—including satellite television, audio programming, and interactive television services— to millions of commercial and residential customers in the United States.

14.      Superior Satellite Services, Inc. ("Superior Satellite") is a company incorporated and headquartered in Minnesota, and is one of many companies who contract with DISH Network to perform installation and service work on DISH Network's products.   These companies are referred to in practice, and in this Complaint, as "DISH Network contractors" or "contractors."

15.      Plaintiff Scott Ernst began working for Superior Satellite in approximately July 2009, as a satellite TV installation worker installing DISH Network equipment.  The individuals who work for the DISH Network contractors on DISH Network assignments are referred to as "contractor technicians."

***DISH Network Causes Superior Satellite and Other Contractors to Procure Consumer Reports on Contractor Technicians***

16.     In approximately April 2011, DISH Network sent Superior Satellite and all other DISH Network contractors written directions requiring that background checks be performed on all current and prospective contractor technicians who would perform work installing or servicing DISH Network products.

17.     DISH Network required its contractors to procure these background checks exclusively from Sterling Infosystems, the self-described "world's largest company focused entirely on background checks." *See* http://www. sterlinginfosystems.com/about-sterling.htm.

18.     In connection with procuring these background checks, DISH Network required all of the DISH Network contractors to fill out a "Contractor Application Company Information" form, which was subsequently submitted to Sterling Infosystems.

19.     The form stated that "ONLY APPROVED DISH NETWORK CONTRACTORS WILL BE APPROVED TO PARTICIPATE IN THIS PROGRAM."   The contractor was then directed to send the completed form to DISHcontractors@sterlinginfosystems.com.

20.     DISH Network's contractors were required to procure background checks from Sterling Infosystems according to the terms dictated by DISH Network.

21.     DISH Network indicated that contractors that failed to comply with its direction to procure background checks from Sterling Infosystems would no longer be permitted to do business with DISH Network.   DISH Network indicated that obtaining such background checks was necessary for contractors to "remain in compliance with DISH Network's hiring standards."

4

***DISH Network Causes its Contractors to Procure Consumer Reports and Receives Copies of Those Reports Without Proper Authorization and Without Certifying a Permissible Purpose***

22.     A party requesting a consumer report for employment purposes must disclose, in a stand-alone document consisting solely of the disclosure, that it intends to obtain a consumer report for employment purposes.  *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

23.     A party requesting a consumer report for employment purposes must also obtain the written consent of the subject of the consumer report to obtain the report.  *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

24.     On or about November 28, 2011, in response to DISH Network's requirements, Superior Satellite requested a copy of a background check on Plaintiff Ernst from Sterling Infosystems.

25.     On or about November 29, 2011, Sterling Infosystems sent Superior Satellite a consumer report on Plaintiff, which included information on Plaintiff's criminal history, driving history, address history, and a "social security trace search."

26.     Among other things, the report indicated that Plaintiff was arrested on June 21, 1991, on suspicion of drunk driving.  The report indicated that Plaintiff was charged with three crimes stemming from that same arrest that were ultimately dismissed.  None of the dismissed charges resulted in a conviction, and all of them were more than seven years old and the subject of expired statutes of limitations.

27.     The report also listed other adverse information which antedated the date of the report by more than seven years and was neither a conviction for a crime nor information about an arrest which was still within the statute of limitations.  Specifically, Sterling Infosystems' report on Plaintiff Ernst included information pertaining to nine separate traffic tickets, dating

from the years 1991-1996.  There was no indication on the report that these tickets resulted in any convictions, and indeed, the "conv" column pertaining to these tickets was blank.

28.     On or about November 29, 2011, Sterling Infosystems also sent DISH Network a summary of the results of the background check on Plaintiff.  This summary included the fact that Plaintiff had been labeled as "high risk."  *See* Ex. 1.

29.     Sterling Infosystems' indication that Plaintiff had been classified as "high risk" was based on parameters DISH Network provided to Sterling Infosystems.  Based on these predetermined parameters, Sterling Infosystems assigned each subject of a background check a rating of "low risk," "review," or "high risk."  Among other things, these automatically assigned ratings took into account the subject's criminal and motor vehicle history, as represented by Sterling Infosystems.

30.     DISH Network's purpose in procuring the report was to retain the ability to direct its contractors to disallow certain technicians from working on DISH Network projects.

31.     DISH Network never made any disclosure in writing or otherwise to Plaintiff or any other contractor technicians that it would obtain a consumer report on them for employment purposes.

32.     DISH Network never obtained written authorization from Plaintiff or any other contractor technicians to obtain a consumer report on them.  Plaintiff Ernst never signed any form authorizing DISH Network to receive a consumer report.

33.     Before the inception of the DISH Network contractor background check program in 2011, DISH Network (through its predecessor corporation, Echostar) had previously certified to Sterling Infosystems that its purpose in procuring consumer reports was "employment purposes."  Ex. 2, "Echostar Certification."

6

34.     However in the course of this litigation, DISH Network has maintained that the Echostar Certification did not apply to the DISH Contractor Background Check Program, claiming that its purpose for procuring the summary report was not "employment purposes" within the meaning of the FCRA.

35.     DISH Network has stated that its purpose in obtaining these consumer reports was "to ensure the safety of their customers by preventing certain employees or independent contractors of DISH's third-party contactors, who enter the homes of their customers, from working on assignments for DISH customers." However, to the extent this purpose is something different than "employment purposes," this purpose is not one of the six permissible purposes for obtaining a consumer report under the FCRA.

### DISH Network Takes Adverse Action Without Providing Pre-Adverse Action Notice

36.     DISH Network maintains a uniform policy with respect to contractor technicians which is based on the classifications assigned by Sterling Infosystems pursuant to DISH Network's uniform classification system.

37.     Pursuant to DISH Network's uniform classification system, persons classified as "low risk" are eligible for assignment to DISH Network projects.

38.     Pursuant to DISH Network's uniform classification system, persons classified as "high risk" are ineligible to perform any work on DISH Network projects.

39.     Pursuant to DISH Network's uniform classification system, persons classified as "review" are deemed ineligible to work on DISH Network projects unless or until they are re-rated as "low risk."

40.     DISH Network does not merely trust its contractors to follow its directive to forbid technicians rated as "high risk" to perform DISH Network projects.

41.     Contractors have no discretion to alter the parameters set by DISH Network to determine an employee's eligibility to perform DISH Network projects.  Nor do contractors have the authority to challenge Sterling Infosystems' classifications.

42.     DISH Network uses mobile workforce management computer software called ETAdirect to actively monitor the work of contractor technicians to ensure that no DISH Network work is assigned to technicians rated as "high risk."

43.     ETAdirect tracks personal identifying information of DISH Network technicians, including detailed information about the work technicians perform, such as the starting and ending point of each job, the duration of each job, as well as routing and scheduling information.

44.     When DISH Network receives a report from Sterling Infosystems stating that a technician is rated "high risk," DISH Network personnel deactivate the technician in DISH Network's computer system.  The deactivation prevents the technician from being assigned any work for DISH Network.

45.     On approximately December 15, 2011, Superior Satellite manager Scott Neuman sent an electronic message to Plaintiff and other contractor technicians.  The message was entitled "Background testing and Drug testing."  The message stated that "If you have had a recent felony or anything deemed by Dish as a current or previous situation you may be deactivated per Dish from doing work."  The message continued, "Again, this is directly from Dish Network and their background company which they make us use. Superior has no say whatsoever …."  The message concluded, "It is 100% Dish Network and their pre-selected background company, Sterling, who determines what techs can be assigned work or not."

46.     Whenever DISH Network receives a report from Sterling Infosystems indicating that a contractor technician has been labeled "high risk," that contractor technician is immediately banned by DISH Network from performing any work on DISH Network projects.

47.     In accordance with DISH Network's standard practice, Plaintiff was immediately banned by DISH Network from performing any work on DISH Network projects as soon as Sterling Infosystems communicated to Superior Satellite and DISH Network that he had been classified as "high risk."

48.     As a result of the classification contained in Sterling Infosystems' report, Plaintiff was no longer able to perform any installation work for Superior Satellite, and experienced the loss of the wages he would have earned had he continued to work at Superior Satellite on DISH Network assignments.  He was also flagged in DISH Network's system as "high risk" which hindered his ability to obtain installation work from any other DISH Network contractor.

49.     DISH Network's denial of assignment was an "adverse action."

50.     Whenever an employment related adverse action is taken based in whole or in part on information contained in a consumer report, the user of the report is required to provide pre-adverse action notification, a summary of rights, and a copy of the report to the subject of the report.  15 U.S.C. § 1681b(3).

51.     Neither DISH Network nor Sterling Infosystems ever gave Plaintiff or other contractor technicians copies of the reports on which the adverse decisions were based.  Nor did they ever provide him with a copy of the summary of consumer rights as required by the FCRA. 15 U.S.C. § 1681b(3).

*Sterling Infosystems Refuses to Provide Plaintiff with His Report Upon Request*

52.     After Plaintiff was barred from performing work for DISH Network, on or about May 22, 2012, Plaintiff made a written request, via U.S. mail, to Sterling Infosystems seeking a copy of his file.

53.     To make the request, Plaintiff submitted the information sought according to the terms of Sterling Infosystems' website, which informs consumers they have a right under the FCRA to receive a copy of their file and represents that, upon request, a copy will be provided. *See* www.sterlinginfosystems .com/fact-act-disclosure.htm.

54.     Specifically the FCRA requires that "[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request . . . ." 15 U.S.C. § 1681g(a).

55.     Despite its acknowledged legal obligation to do so, Sterling Infosystems did not respond to Plaintiff's request for a copy of the report pertaining to him.

56.     After approximately five weeks, Plaintiff called Sterling Infosystems, seeking information on the status of his request.   A representative for Sterling Infosystems falsely informed Plaintiff that Sterling Infosystems had no record of issuing a report on Plaintiff. Accordingly, Plaintiff never received a copy of his file from Sterling Infosystems.

## SUMMARY OF CLAIMS

*FCRA Violations by DISH Network*

57.     DISH Network routinely obtains and uses information in consumer reports to conduct background checks on prospective and existing DISH Network contractor technicians, and frequently relies on such information, in whole or in part, as a basis for adverse employment

actions, such as prohibiting technicians from performing work installing and maintaining DISH Network products.

58.    Consumer reports may only be procured when the procurer has one or more of the six listed permissible reasons to use the report.  *See* 15 U.S.C. § 1681b(f)(1).

59.    Not only must users have a permissible purpose, they must certify such purpose to the furnisher.  *See* 15 U.S.C. § 1681b(f)(2).

60.    "Employment purposes" is a permissible purpose for procuring a consumer report but it is subject to strict certification, disclosure, and authorization requirements under the FCRA.

61.    Despite its use of consumer reports on its contractor technicians for employment purposes, DISH Network has failed to heed the obligations that the FCRA imposes on users of consumer reports for employment purposes.  Specifically, DISH Network willfully violated the FCRA in at least three separate ways, in systematic violation of Plaintiff's rights and the rights of other Putative Class members.

62.    First, in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii), DISH Network has unlawfully procured consumer reports without first receiving *proper authorization* from Plaintiff and other Putative Class members.

63.    Second, in violation of 15 U.S.C. § 1681b(b)(2)(A)(i), DISH Network has unlawfully procured consumer reports without first making a *clear and conspicuous disclosure* to Plaintiff and other Putative Class members in a document consisting solely of the disclosure that DISH Network may procure such reports.

64.    Third, in violation of 15 U.S.C. § 1681b(b)(3)(A), DISH Network has taken adverse employment action against Plaintiff and other Putative Class members based on

undisclosed consumer report information, without first providing Plaintiff and other affected Class members with a copy of the pertinent consumer report and without providing them a reasonable opportunity to correct inaccuracies.

65.     In the course of this litigation, DISH Network has argued that it does not procure or use reports for employment purposes.  *See* Ex. 3, DISH Network's Response to Plaintiff's Request for Admission No. 34 ("[DISH Network] did not obtain [the report on Ernst] for employment purposes[.]").

66.     However, the only written certification of permissible purpose that DISH Network ever provided to Sterling Infosystems was a certification stating that DISH Network was procuring consumer reports for employment purposes.  In that same certification, DISH Network promised to abide by the FCRA's stand-alone disclosure and pre-adverse action notice requirements.

67.     Plaintiff believes that DISH Network's use of the consumer reports at issue in this case is consistent with the meaning of the term "employment purposes" in the FCRA; however, given DISH Network's steadfast denial, Plaintiff alleges in the alternative that DISH Network has systematically violated Plaintiff and the Putative Class members' rights by procuring consumer reports without any permissible purpose and by failing to truthfully certify that it would comply with the FCRA's requirements.

68.     Moreover, to the extent DISH Network used the reports for a purpose other than the purpose that it certified to Sterling Infosystems, DISH Network violated 15 U.S.C. § 1681b(f), which requires that users of consumer reports certify their permissible purpose for obtaining the reports.

*FCRA Violations Resulting From Sterling Infosystems' Participation in the DISH Network Contractor Program*

69.     Sterling Infosystems is the world's largest company focused entirely on background checks.   *See* http://www.sterlinginfosystems.com/about-sterling.htm.   Sterling Infosystems is a consumer reporting agency within the meaning of the FCRA.   It receives monetary fees from its customers in exchange for assembling information on consumers for the purpose of furnishing consumer reports to third parties, and provides such reports using the facilities of interstate commerce, including the mail and the internet, for the purpose of preparing and furnishing such reports.

70.     Sterling Infosystems is prohibited from furnishing consumer reports without the procurer of the report having a permissible purpose and having truthfully certified such purpose. *See* 15 U.S.C. § 1681b(a) (prohibiting the furnishing of consumer reports to a user without a permissible purpose) and 15 U.S.C. § 1681e(a) (prohibiting the furnishing of consumer reports without the procurer having certified its permissible purpose).

71.     Where the permissible purpose is "employment purposes," the user must certify to the consumer reporting agency that it has received written authorization from the subject of the consumer report, has provided a stand-alone disclosure to the subject of the report indicating that a report may be procured, and that it will provide pre-adverse action notice in the event that it intends to take adverse action based in whole or in part on the report.

72.     DISH Network provided a written certification to Sterling Infosystems that it was procuring consumer reports for employment purposes.  However, DISH Network now maintains that its written certification applied only to its own employees, not to the DISH Network contractor technicians.   Sterling Infosystems has maintained that it received an (apparently unwritten) certification from DISH Network indicating that DISH Network's purpose was not

"employment purposes" per se, but that DISH Network "obtained summary rating information . . . to protect the safety of DISH customers by enabling DISH to confirm that its contractors were not sending ineligible 'high risk' technicians to work (unsupervised) at the homes of DISH customers, thereby helping DISH monitor how the contractors employed their technician employees."

73.    To the extent it is true that DISH Network's purpose was that stated above, and that such a use of consumer reports was not "employment purposes," then Sterling Infosystems willfully violated the requirements of the FCRA, in systematic violation of Plaintiff and the Putative Class members' rights, by furnishing consumer reports on DISH Network's contractor technicians to DISH Network without DISH Network having certified a permissible purpose and by failing to obtain a compliant and truthful certification of a permissible purpose from DISH Network.

*FCRA Violations Resulting From Sterling Infosystems' Inclusion of Unlawful Information in its Consumer Reports*

74.    Sterling Infosystem's FCRA violations extend beyond its relationship with DISH Network.   Under the FCRA, Sterling Infosystems is obligated to follow strict requirements forbidding the disclosure of outdated adverse information, requiring consumer reporting agencies to maintain reasonable procedures to avoid violations, and requiring consumer reporting agencies to provide a copy of consumer reports when the persons who are the subjects of such reports request copies of their files.

75.    Sterling Infosystems has willfully violated these requirements in systematic violation of Plaintiff's rights and the rights of other Putative Class members in at least two ways.

76.    First, in violation of 15 U.S.C. § 1681c(a), Sterling Infosystems has unlawfully reported "adverse item[s] of information, other than records of convictions of crimes which

antedate[] the report by more than seven years" in reports describing the backgrounds of Plaintiff and other Putative Class members.  With respect to Named Plaintiff Ernst, Sterling Infosystems improperly reported an arrest and numerous charges and citations that were dismissed or otherwise never led to charges, each of which is **over 20 years old**.

77.     Second, in violation of 15 U.S.C. §§ 1681j(a)(1)(A) and 1681g(a)(1)(A), Sterling Infosystems has failed to produce, upon request by Plaintiff, the information on file, sources, and report recipients for consumer reports it provided regarding Plaintiff.   Specifically, Sterling Infosystems did not respond to Plaintiff's request for a copy of his file.  When Plaintiff followed up by phone, a representative of Sterling Infosystems stated that the company had no record of running a report on Plaintiff.  This statement was untrue.

78.     Based on the foregoing violations, Plaintiff asserts FCRA claims against DISH Network and Sterling Infosystems on behalf of himself and the Putative Classes proposed herein.

79.     On behalf of himself and the Putative Classes proposed herein, Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA.

***DISH Network and Sterling Infosystems' Violations of the FCRA Were Willful***

80.     The Supreme Court defined the standard for willful failure to comply with the FCRA in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007).  "Willful violations include not only knowing violations ... but reckless ones as well." *Id.* at 57.  The following facts demonstrate that DISH Network and Sterling Infosystems' violations of the FCRA were willful.

***DISH Network is Aware of the FCRA***

81.     DISH Network is an established business with access to legal advice through its own general counsel's office and outside employment counsel.

82.     DISH Network informs each of its residential and commercial customers through its service agreements of the rights and obligation imposed by the FCRA.   *See* http://www.dish.com/downloads/legal/Residential-Agreement.pdf                at                8; http://www.dish.com/downloads/legal/Commercial-Customer-Agreement.pdf at 10.

83.     DISH Network's knowledge of the FCRA's requirements is further highlighted by the company's participation in lawsuits alleging violations of the FCRA.   *See, e.g., Gregory Bickley v. DISH Network LLC*, No. 10-0678, 2012 WL 5362425 (W.D. Ky. October 31, 2012); *Jackson v. Echostar Commc'ns Corp d/b/a DISH Network, et al.,* No. 3:06cv494 (S.D. Miss. Sep. 7, 2006) (complaint attached as Ex. 4.).

***DISH Network Knew or Recklessly Disregarded the Fact that the Reports it Procured were Consumer Reports and that it Needed a Permissible Purpose and to Certify such Purpose to Sterling Infosystems***

84.     Given the pellucid statutory text[1] and the depth of guidance,[2] DISH Network knows or recklessly disregards the fact that the summary reports it received from Sterling Infosystems are "consumer reports" within the meaning of the FCRA (and thus knows or recklessly disregards that it has to have a permissible purpose and to certify such purpose to Sterling Infosystems prior to procuring the summary reports).

85.     In addition, DISH Network's knowledge or reckless disregard is demonstrated by, *inter alia*, DISH Network being represented by Jackson Lewis, a national law firm with a large practice focusing on FCRA defense, and being a client of Sterling Infosystems.   These

---

[1] *See, e.g.,* 15 U.S.C. § 1681a(d)(1), which defines "consumer report" as including "any . . . communication of any information by a consumer reporting agency bearing on a consumer's . . . character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . ."

[2] *See. e.g.,* Federal Trade Commission ("FTC") guidance also states that the term "consumer report" is broadly defined. *See* Ex. 6 (Schieber Advisory Opinion Letter).

organizations warn their clients, including DISH Network, that consumer reports cannot be procured without a permissible purpose. *See* Ex. 5, 8-11. Specifically, Jackson Lewis and Sterling Infosystems warn that if procuring a report on an independent contractor is not for employment purposes, then it is not permitted. *Id.* at 11.

86. Further, DISH Network knows it must have a permissible purpose and certify such purpose because it admittedly makes such certification for the consumer reports it procures on the technicians it admits it employs, i.e., technicians who receive a paycheck from DISH Network instead of a DISH Network contractor. Yet, DISH Network claims it did not make a written certification to Sterling Infosystems of its permissible purpose for the consumer reports it procured on its contractor technicians. Moreover, DISH Network has not identified any permissible purpose for procuring these reports.

87. Likewise, DISH Network knows it has to certify that it will comply with 15 U.S.C. §§ 1681b(b)(2) and 1681b(b)(3) with respect to reports procured for employment purposes because it makes such certification for the technicians it admits it employs.

***DISH Network Knew or Recklessly Disregarded its Obligation to Obtain Authorizations and to Make Disclosures Prior to Procuring a Consumer Report***

88. As part of its standard operating procedures, Sterling Infosystems requires all entities who obtain consumer reports from it for employment purposes to certify in writing that they :

> A. Have made a clear and conspicuous disclosure in writing to the consumer before the report is procured or caused to be procured, in a document that consists solely of the disclosure that a consumer report may be procured for employment purposes.

17

B. Have obtained authorization, in writing, from the consumer who is the subject of the report.

C. Will comply with the pre-adverse action notice requirements of 15 U.S.C. § 1681b(3).

89.     As part of its standard operating procedures, Sterling Infosystems also provides all entities who obtain consumer reports from it with a copy of the consumer's rights under the FCRA as prescribed by the Consumer Financial Protection Bureau.

90.     Sterling Infosystems' practices in this regard are consistent with the requirements of 15 U.S.C. § 1681b(b)(1)(A).

91.     Regarding the technicians it admits it employs, i.e., its direct employee non-contractor technicians, DISH Network has made all of the representations required by Sterling Infosystems' standard practices, and also received a copy, from Sterling Infosystems, of the consumer's rights under the FCRA as prescribed by the Consumer Financial Protection Bureau.

92.     Similarly DISH Network received Sterling Infosystems' standard service agreement, an agreement that indicates that all users of consumer reports must obtain authorization from the subject of the report before requesting the report.   *See* https://smwreports.sterlingdirect.com/SubmitBusiness/docs/USASEndUser.pdf.

93.     The documents DISH Network received from Sterling Infosystems demonstrate that DISH Network either purposely or recklessly disregarded its contractor technicians' FCRA disclosure and authorization rights.

***DISH Network Knew about and Recklessly Disregarded its Duty to Provide Pre-Adverse Action Notification and a Copy of the Report Relied Upon***

94.     DISH Network certifies to Sterling Infosystems that it will comply with the FCRA's pre-adverse action notice requirement regarding the consumer reports it procures on the

technicians it admits it employs, i.e., its direct employee non-contractor technicians; yet, it ignores the rights of its contractor technicians.

95.     DISH Network's knowledge of the FCRA's pre-adverse action requirements and their applicability to its refusal to allow contractor technicians to work is further demonstrated by the company's own internal documents.

96.     For example, DISH Network counseled its contractors, in writing, to follow the FCRA by providing pre-adverse action notice to DISH Network contractor technicians, but only if the contractors elected to *terminate an employee entirely* based on the results of a report. Indeed, DISH Network even provided its contractors with a sample pre-adverse action notice letter to use in such a circumstance.

97.     However, DISH Network's failure to heed the advice it gave to its contractors by failing to provide its own pre-adverse action notice was either in willful disregard of FCRA or was reckless in the extreme.

98.     Indeed, it appears that DISH Network was advised by its legal counsel that its refusal to allow "high risk" employees to work on its projects constitutes an adverse action within the meaning of FCRA.

99.     Specifically, Jackson Lewis, who represents DISH Network in this lawsuit, in a presentation authored jointly with Sterling Infosystems, has opined that a denial of an assignment is an adverse action within the meaning of the FCRA. *See* Ex. 5 at 32.

100.    The same presentation further opined that the FCRA's requirements are triggered even in the absence of a formal employer-employee relationship. *See id.* at 11.

101.    DISH Network is aware of and recklessly disregarded these opinions from its counsel by instead maintaining that the reports it procured were not for employment purposes

and that its refusal to allow high risk contractor technicians to work on its projects is not an adverse action.

102.    In further support of DISH Network's willful disregard of the FCRA is the fact that DISH Network was also recently accused by the FTC of flagrant and willful violations of federal consumer protection laws.   DISH Network faces a FTC lawsuit alleging that DISH Network illegally called millions of consumers who had previously asked telemarketers from the company or its affiliates not to call them again.   According to FTC Chairman Jon Leibowitz, "It is particularly disappointing when a well-established, nationally known company – which ought to know better – appears to have flagrantly and illegally made millions of invasive calls to Americans who specifically told DISH Network to leave them alone."

103.    DISH Network's pattern and practice of flaunting the law demonstrates its knowing and reckless disregard of its legal obligations.

### Sterling Infosystems is Aware of the FCRA

104.    Sterling Infosystems is a large corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its own general counsel's office and outside employment counsel.

105.    Moreover, Sterling Infosystems holds itself out as an expert on FCRA compliance.   On its website, Sterling Infosystems states that "Compliance is our expertise."   *See* http://www.sterlinginfosystems.com/compliance.htm.   Sterling Infosystems goes on to state that it monitors "FCRA, State, EEOC Legislation and Regulations."   *Id.*

106.    Sterling Infosystems is a member of the National Association of Professional Background Screeners ("NAPBS"), an organization that instructs its members not to furnish consumer reports without a permissible purpose or without getting the proper certifications; to

exclude irrelevant and outdated information from reports; and to provide free copies of reports to consumers who request them.

**Sterling Infosystems' Violations of the FCRA's Permissible Purpose and Certification Requirements Were Willful**

107.    Sterling Infosystems is well aware of its permissible purpose and certification obligations under the FCRA, and chose to knowingly and recklessly disregard them.

108.    Indeed, Sterling Infosystems tells its clients that it will not furnish consumer reports without a permissible purpose and certification of such purpose.

109.    Further, Sterling Infosystems tells its clients that procuring consumer reports on independent contractors is permissible because it is for employment purposes, but that the FCRA's certification requirements still apply. *See* Ex. 5, 11-13.

110.    Yet, Sterling Infosystems has refused to squarely acknowledge that DISH Network's Echostar Certification, which states that the reports DISH Network procured from Sterling Infosystems were for employment purposes, also applied to the contractor technicians' reports.

111.    This refusal to acknowledge that it provided reports on contractor technicians to DISH Network based on the Echostar Certification paints Sterling Infosystems into a corner.

112.    Absent the Echostar Certification, Sterling Infosystems can point to no permissible purpose or proper certification that would have allowed it to provide reports on contractor technicians to DISH Network (including, when the permissible purpose includes employment purposes, a certification that the procurer will comply with 15 U.S.C. §§ 1681b(b)(2) and 1681b(b)(3)).

*Sterling Infosystems' Violations of the FCRA's Reporting Requirements Were Willful*

113.    Sterling Infosystems is also well aware of and recklessly disregarded provisions of the FCRA barring the inclusion of adverse information (other than convictions) which is older than seven years in its reports.  This is evidenced by the fact that its report on Plaintiff indicated that his expected salary would be less than $75,000.  This number is no arbitrary cut-off, but instead triggers the FCRA's restriction on reporting adverse information older than seven years, other than convictions.  *See* 15 U.S.C. § 1681c(b)(3).

114.    In a presentation jointly-produced by Jackson Lewis, Sterling Infosystems acknowledges many of the FCRA provisions which give rise to liability in this case, including:

- Reports can only be issued if they will be used for a permissible purpose.  Ex. 5 at 9.

- A report can be used for "employment purposes" even outside the scope of a formal employer-employee relationship.  Ex. 5 at 11.

- Adverse information other than convictions that is over seven years old must not be included in reports.  Ex. 5 at 14.

- Denial of an assignment is an adverse action within the meaning of the FCRA.  Ex. 5 at 32.

*Sterling Infosystems' Violations of the FCRA's File Disclosure Requirements Were Willful*

115.    In yet another page on its website, Sterling Infosystems informs consumers who were the subject of a report prepared by Sterling Infosystems that they may request a free copy of the report.  According to the site, "The Fair and Accurate Credit Transactions Act (FACT Act) was enacted in 2003 and amends the Fair Credit Reporting Act (FCRA), a federal law that regulates, in part, who is permitted to access your consumer report information and how it can be used.  The FACT Act entitles consumers to obtain one free copy of their consumer files from certain   consumer   reporting   agencies   during   each   12-month   period."   *See*

http://www.sterlinginfosystems.com/fact-act-disclosure.htm.    The  site  further  states  that,  "**If
Sterling Infosystems has prepared a consumer report or investigative consumer report in
your name for one or more of our clients and you would like to receive a free copy of the
report(s) in your file you may contact us by toll free telephone or by mail.**"  *Id.* (emphasis in
original).

116.    The  Consumer  Financial  Protection  Bureau  has  issued  guidance  and  warned
unnamed  consumer  reporting  agencies  about  the  FCRA's  required  streamlined  process  for
consumers  to  obtain  free  annual  reports  from  covered  consumer  reporting  agencies.    *See*
http://files.consumerfinance.gov/f/201211_cfpb_NSCRA_Bulletin.pdf.    Sterling Infosystems is
aware of this guidance and yet recklessly disregards it.

## CLASS ACTION ALLEGATIONS

117.    Plaintiff asserts his claims in Counts 1, 2, and 6-8 on behalf of the "Improper
Authorization Class," defined as follows:

> **Improper Authorization Class:**  All DISH Network contractor technicians in the
> United States who were the subject of a consumer report that was procured (or
> caused to be procured) by DISH Network.  The Improper Authorization Class
> consists of all persons, defined in the previous sentence, who were the subject of a
> consumer report that was procured by DISH Network between November 30,
> 2007 until the date of final judgment in this action.

118.    Plaintiff asserts his claim in Count 3 on behalf of a the "Adverse Action Class,"
defined as follows:

> **Adverse Action Class:**  All DISH Network contractor technicians against whom
> DISH Network took adverse action by terminating or forbidding the person to
> perform work for DISH Network, based, in whole or in part, on information
> contained in a consumer report.  The Adverse Action Class consists of all persons
> whom DISH Network took adverse action against between November 30, 2007
> until the date of final judgment in this action.

119.    Plaintiff asserts his claim in Count 4 on behalf of a "Outdated Information Class,"
defined as follows:

**Outdated Information Class:**  All persons who were the subject of a background report prepared by Sterling Infosystems whose report contains one or more adverse items of information which antedates the report by more than seven years and where such adverse item of information is something other than a record of a conviction for a crime.  The Outdated Information Class excludes all persons who were the subject of a background report prepared by Sterling Infosystems where the report was prepared to be used in connection with the employment of any individual at an annual salary which equals, or which may reasonably be expected to equal $75,000, or more.  The Outdated Information Class consists of all persons, defined in the prior two sentences, who were the subject of a report issued by Sterling Infosystems between November 30, 2010 until the date of final judgment in this action.

120.   Plaintiff asserts his claim in Count 5 on behalf of a "Failure To Produce Report Class," defined as follows:

**Failure To Produce Report Class:**  All persons who were the subject of a background report prepared by Sterling Infosystems for whom Sterling Infosystems failed to produce, upon request by such a person, the information on file, sources, and report recipients.  The Failure To Produce Report Class consists of all persons, defined in the prior sentence, who were the subject of a report issued by Sterling Infosystems between November 30, 2010 until the date of final judgment in this action.

121.   <u>Numerosity</u>:  The Putative Classes are so numerous that joinder of all Class members is impracticable.  DISH Network regularly obtains and uses information in consumer reports to conduct background checks on its contractor technicians, and frequently relies on such information, in whole or in part, as a basis for adverse employment action.  In excess of one thousand DISH Network contractor technicians and prospective technicians satisfy the definition of the Putative Classes.  Sterling Infosystems produced thousands of reports covered by the claims in this case.

122.   <u>Typicality</u>:   Plaintiff's claims are typical of the members of the Putative Classes.  DISH Network typically uses consumer reports to conduct background checks on its contractor technicians and prospective technicians.  DISH Network typically does not provide copies of consumer reports to them before taking adverse action based on information contained

in such reports.  The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and DISH Network treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.  Throughout the class period, Sterling Infosystems typically produced reports including arrest information, dismissed charges, and uncharged citations antedating the report by more than seven years.  Further, Plaintiff's experience is typical of Sterling Infosystems' interaction with DISH Network, because Sterling Infosystems failed to follow the FCRA's procedures with respect to other DISH Network contractor technicians.

123.  <u>Adequacy</u>:   Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

124.  <u>Commonality</u>:  Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

    a.  Whether DISH Network uses consumer report information to conduct background checks on its contractor technicians and prospective technicians;

    b.  Whether DISH Network has a permissible purpose to procure consumer reports on its contractor technicians;

    c.  Whether DISH Network follows the proper certification procedures before procuring reports;

    d.  Whether DISH Network violated the FCRA by procuring consumer reports without a permissible purpose or making the proper certifications;

    e.  Whether DISH Network violated the FCRA by failing to disclose or receive authorization for seeking consumer reports;

    f.  Whether DISH Network violated the FCRA by procuring consumer report information based on invalid authorizations;

    g.  Whether DISH Network violated the FCRA by taking adverse action against Plaintiff and other members of the Adverse Action Class on the basis of

information in a consumer report, without first furnishing a copy of the report to the affected persons;

h.   Whether DISH Network's violations of the FCRA were willful;

i.   Whether Sterling Infosystems has a permissible purpose to furnish consumer reports on DISH Network contractor technicians to DISH Network;

j.   Whether Sterling Infosystems includes outdated information in consumer reports, in violation of the FCRA;

k.   Whether Sterling Infosystems follows the proper certification procedures before preparing reports;

l.   Whether Sterling Infosystems properly provides free copies of reports to affected consumers;

m.   Whether Sterling Infosystems' violations of the FCRA were willful;

n.   The proper measure of statutory damages and punitive damages; and

o.   The proper form of injunctive and declaratory relief.

125.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants.  Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

126.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because DISH Network and Sterling Infosystems have acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

127.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions

affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. DISH Network and Sterling Infosystems' conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Classes do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendants by any members of the Putative Classes on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

128.   Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 23. The names and addresses of the Putative Class members are available from DISH Network and Sterling Infosystems' records.

**COUNT I**
**(Asserted Against DISH Network on Behalf of Plaintiff**
**and the Improper Authorization Class)**
**Failure to Obtain Proper Authorization to Procure a Consumer Report for Employment**
**Purposes in Violation of the FCRA**
**15 U.S.C. § 1681b(b)(2)(A)(ii)**

129.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

130.   DISH Network violated the FCRA by procuring consumer reports or causing such reports to be procured relating to Plaintiff and other Improper Authorization Class members

without proper written authorization for it to procure such a report. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

131.   The foregoing violations were willful.  DISH Network acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Improper Authorization Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii).

132.   Plaintiff and the Improper Authorization Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

133.   Plaintiff and the Improper Authorization Class are also entitled to punitive damages and appropriate equitable relief for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

134.   Plaintiff and the Improper Authorization Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT II
**(Asserted Against DISH Network on Behalf of Plaintiff and the Improper Authorization Class)**
**Failure to Make Proper Disclosure Prior to Procuring a Consumer Report in Violation of the FCRA**
**15 U.S.C. § 1681b(b)(2)(A)(i)**

135.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

136.   DISH Network violated the FCRA by failing entirely to disclose to Plaintiff and similarly situated Improper Authorization Class members, in a stand-alone document consisting solely of the disclosure, that it intended to seek consumer reports on them for employment purposes. *See* 15 U.S.C. § 1681b(b)(2)(A)(i).

28

137.    The foregoing violations were willful.  DISH Network knew that it was required to disclose to Plaintiff and Class members its intent to procure a consumer report or cause a consumer report to be procured, and acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Class members under 15 U.S.C. § 1681b(b)(2)(A)(i).

138.    Plaintiff and the Improper Authorization Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

139.    Plaintiff and the Improper Authorization Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

140.    Plaintiff and the Improper Authorization Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT III
**(Asserted Against DISH Network on Behalf of Plaintiff and the Adverse Action Class)**
**Failure to Comply with Pre-Adverse Action Requirements of the FCRA**
**15  U.S.C. § 1681b(b)(3)(A)**

141.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

142.    DISH Network is a "person" as defined by the FCRA.

143.    DISH Network used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

144.    DISH Network violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with a copy of the consumer report that was used to take adverse employment action against them. *See* 15 U.S.C. § 1681b(b)(3)(A).

145.     DISH Network also violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with a summary of their rights under the FCRA.  *See* 15 U.S.C. § 1681b(b)(3)(A).

146.     The foregoing violations were willful.

147.     Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

148.     Plaintiff and the Adverse Action Class are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

149.     Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT IV**
**(Asserted Against Sterling Infosystems on Behalf of Plaintiff**
**and the Outdated Information Class)**
**Provision of Outdated Information in Violation of the FCRA**
**15 U.S.C. § 1681c(a)**

150.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

151.     In violation of 15 U.S.C. § 1681c(a), Sterling Infosystems has unlawfully reported "adverse item[s] of information, other than records of convictions of crimes which antedate[] the report by more than seven years" in reports describing the backgrounds of Plaintiff and other Outdated Information Class members.

152.     The foregoing violations were willful.  Sterling Infosystems acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Outdated Information Class members under 15 U.S.C. § 1681c(a).

153.    Plaintiff and the Outdated Information Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

154.    Plaintiff and the Outdated Information Class are also entitled to punitive damages and appropriate equitable relief for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

155.    Plaintiff and the Outdated Information Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT V
### (Asserted Against Sterling Infosystems on Behalf of Plaintiff and the Failure to Produce Report Class) Failure To Produce Report in Violation of the FCRA 15 U.S.C. §§ 1681j(a)(1)(A) and 1681g(a)(1)(A)

156.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

157.    In violation of 15 U.S.C. §§ 1681j(a)(1)(A) and 1681g(a)(1)(A), Sterling Infosystems has failed to produce, upon request by Plaintiff and other Failure To Produce Report Class members, the information on file, sources, and report recipients.

158.    The foregoing violations were willful.  Sterling Infosystems acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Failure To Produce Report Class members under 15 U.S.C. § 1681e(a).

159.    Plaintiff and the Failure To Produce Report Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

160.    Plaintiff and the Failure To Produce Report Class are also entitled to punitive damages and appropriate equitable relief for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

161.    Plaintiff and the Failure To Produce Report Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT VI**
**(Asserted Against DISH Network on Behalf of Plaintiff**
**and the Improper Authorization Class )**
**Procuring a Consumer Report without a Permissible Purpose**
**15 U.S.C. § 1681b(f)(1)**
**Asserted In the Alternative as to Counts I-III**

162.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

163.    Assuming DISH Network did not procure consumer reports on its contractor technicians for "employment purposes," DISH Network violated the FCRA by procuring consumer reports on Plaintiff and the Improper Authorization Class members without having any permissible purpose. *See* 15 U.S.C. § 1681b(f).

164.    The only written certification DISH Network made to Sterling Infosystems states that Sterling Infosystems would furnish reports for employment purposes.

165.    However, both DISH Network and Sterling Infosystems deny that the written certification applies to contractor technicians.

166.    DISH Network's stated purpose for receiving summary reports on contractor technicians—"to ensure the safety of their customers by preventing certain employees or independent contractors of DISH's third-party contactors, who enter the homes of their customers, from working on assignments for DISH customers"—is not itself a permissible purpose within the meaning of the FCRA.

167.    The foregoing violations were willful.   DISH Network acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Improper Authorization Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii).

168.    Plaintiff and the Improper Authorization Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

169.    Plaintiff and the Improper Authorization Class are also entitled to punitive damages and appropriate equitable relief for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

170.    Plaintiff and the Improper Authorization Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

<u>**COUNT VII**</u>
**(Asserted Against DISH Network on Behalf of Plaintiff**
**and the Improper Authorization Class)**
**Procuring a Consumer Report without Certifying the Permissible Purpose**
**15 U.S.C. § 1681b(f)(2)**
**Asserted in the Alternative as to Counts I-III**

171.    Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

172.    Assuming DISH Network did not procure consumer reports on Plaintiff and the Improper Authorization Class members for employment purposes, DISH Network violated the FCRA by procuring the reports without first certifying any permissible purpose to the furnisher.

173.    The only written certification DISH Network made to Sterling Infosystems states that Sterling Infosystems would furnish reports for employment purposes.

174.    However, both DISH Network and Sterling Infosystems deny that the written certification applies to contractor technicians.

175.   DISH Network's stated purpose for receiving summary reports on contractor technicians—"to ensure the safety of their customers by preventing certain employees or independent contractors of DISH's third-party contactors, who enter the homes of their customers, from working on assignments for DISH customers"—is not itself a permissible purpose within the meaning of the FCRA.

176.   The foregoing violations were willful.  DISH Network acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Improper Authorization Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii).

177.   Plaintiff and the Improper Authorization Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

178.   Plaintiff and the Improper Authorization Class are also entitled to punitive damages and appropriate equitable relief for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

179.   Plaintiff and the Improper Authorization Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT VIII
### (Asserted Against Sterling Infosystems on Behalf of Plaintiff and Improper Authorization Class) Furnishing a Consumer Report without a Permissible Purpose 15 U.S.C. § 1681b(a) Asserted in the Alternative to Counts I-III

180.   Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

181.   DISH Network denies that it received summary consumer reports for employment purposes.

182.    Rather, DISH Network claims that its purpose in receiving the reports was "to ensure the safety of their customers by preventing certain employees or independent contractors of DISH's third-party contactors, who enter the homes of their customers, from working on assignments for DISH customers," which is not itself a permissible purpose within the meaning of the FCRA.

183.    To the extent DISH Network's alleged certification to Sterling Infosystems was for something other than an "employment purpose," Sterling Infosystems violated the FCRA by furnishing consumer reports on Plaintiff and the Improper Authorization Class members to DISH Network without the procurer of the reports having a permissible purpose for procuring them. *See* 15 U.S.C. § 1681b(a).

184.    The foregoing violations were willful.  Sterling Infosystems acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Improper Authorization Class members under 15 U.S.C. § 1681c(a).

185.    Plaintiff and the Improper Authorization Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

186.    Plaintiff and the Improper Authorization Class are also entitled to punitive damages and appropriate equitable relief for these violations, pursuant to 15 U.S.C. § 1681n(a)(2).

187.    Plaintiff and the Improper Authorization Information Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Putative Classes, prays for relief as follows:

A. Determining that this action may proceed as a class action under Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure;

B. Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

C. Issuing proper notice to the Putative Classes at Defendants' expense;

D. Declaring that DISH Network committed multiple, separate violations of the FCRA;

E. Declaring that DISH Network acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

F. Awarding appropriate equitable relief, including but not limited to an injunction forbidding DISH Network from engaging in further unlawful conduct in violation of the FCRA;

G. Awarding statutory damages and punitive damages as provided by the FCRA;

H. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

I. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

188. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the Putative Classes demand a trial by jury.

Respectfully submitted,

Dated: October 13, 2014

/s/E. Michelle Drake
NICHOLS KASTER, PLLP
Michele R. Fisher, NY Bar No. MF4600
E. Michelle Drake, MN Bar No. 0387366*
Megan D. Yelle, MN Bar No. 0390870*

36

Joseph C. Hashmall, MN Bar No. 392610**
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Fax: (612) 215-6870
fisher@nka.com
drake@nka.com
myelle@nka.com
jhashmall@nka.com

NICHOLS KASTER, LLP
Adam Hansen, MN Bar No.391704*
One Embarcadero Center
Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7235
Fax: (415) 277-7238
ahansen@nka.com

*admitted *pro hac vice*
***pro hac vice* motion pending

ATTORNEYS FOR PLAINTIFF AND THE
PUTATIVE CLASSES