UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

SCOTT ERNST, individually and as a
representative of the classes,

                             Plaintiff,

            -against-

DISH NETWORK, LLC, DISH NETWORK
SERVICE, LLC, AND STERLING
INFOSYSTEMS, INC.

                        Defendants.

------------------------------------------------------------

Case No.: 12 CIV 8794(LGS)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT STERLING INFOSYSTEMS, INC.**

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

I.  PROCEDURAL HISTORY ...........................................................................................2

    A.  This Action ...................................................................................................2

    B.  Discovery and Mediation .............................................................................4

II.  OVERVIEW OF SETTLEMENT TERMS .......................................................................5

    A.  Proposed Nationwide Settlement Classes ....................................................5

    B.  Monetary Relief ............................................................................................6

    C.  Prospective Relief .........................................................................................8

    D.  Release of Claims .........................................................................................8

    E.  Class Notice, Claims Process, and Settlement Administration ....................9

    F.  Attorneys' Fees, Costs, and Class Representative Award ...........................11

ARGUMENT .....................................................................................................................11

I.  STANDARD OF REVIEW ..........................................................................................11

II.  THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL ...13

    A.  The Settlement is the Product of Arm's-Length Negotiations Between Experienced Counsel Before a Well-Respected and Neutral Mediator ..............13

    B.  The Settlement Provides Significant Relief to Class Members ..................13

        1.  Monetary Relief ...............................................................................14

        2.  Prospective Relief ............................................................................15

    C.  Plaintiff and the Settlement Class Members Would Face Significant Risks in the Absence of a Settlement .............................................................16

III.  THE PROPOSED CLASS NOTICES AND NOTICE PLAN ARE REASONABLE ...............17

IV.   Certification of the Settlement Classes under Rule 23 is Appropriate .............. 19

    A.   The Requirements of Rule 23(a) are Met ....................................................20

        1.   Numerosity .........................................................................................20

        2.   Commonality .......................................................................................21

        3.   Typicality ............................................................................................22

        4.   Adequacy ............................................................................................22

    B.   The Requirements of Rule 23(b)(3) are Met ..............................................23

        1.   Predominance ......................................................................................24

        2.   Superiority ...........................................................................................25

CONCLUSION ..........................................................................................................25

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 20, 23, 24, 25

*Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825 (N.D. Ill. July 17, 2014) ... 16

*Bach v. First Union Nat. Bank*, 149 F. App'x 354 (6th Cir. 2005) ................................. 14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52 (2d Cir. 2000) ................. 23

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) .................... 21, 24

*In re Checking Account Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011) .............. 21, 22

*Clark v. Ecolab Inc.*, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ............................... 12

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ........................ 20

*In re Excess Value Ins. Coverage Litig.*, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ........ 13

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................. 13

*Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147 (1982) .................................... 22

*Haley v. TalentWise, Inc.*, No. C13-1915 MJP, 2014 WL 1304007 (W.D. Wash. Apr. 2, 2014),

*reconsid. denied*, 2014 WL 1648480 (W.D. Wash. Apr. 23, 2014) ............................. 16

*Horton v. Metropolitan Life Ins. Co.*, No. 93-1849-CIV-T-23A, 1994 U.S. Dist. LEXIS 21395

(M.D. Fla. Oct. 25, 1994) .................................................................. 20

*In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476 (S.D.N.Y. 2002) ............... 19

*In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007) .................... 13

*In re Interpublic Sec. Litig.*, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ................... 12

*Lomeli v. Sec. & Inv. Co. Bahrain*, 2013 WL 6170572 (2d Cir. Nov. 26, 2013) ............... 19

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) .................................... 19, 22

*Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ..................... 19

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ........................ 12

*In re Medical X-ray Film Antitrust Litig.*, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997) .......... 13

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ...................... 19

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1997) ................... 11

*In re NTL, Inc. Sec. Litig.*, 2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ...................... 20, 24

*In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ........................ 16

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132 (2d Cir. 1998) ........................... 12

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ....................................... 18

*In re Qiao Xing Sec. Litig.*, 2008 WL 872298 (S.D.N.Y. Apr. 2, 2008) ......................... 20

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26 (E.D.N.Y. 2006) ............... 19

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001) ......................... 21

*Singleton v. Domino's Pizza*, No. 11-1823, 2012 WL 245965 (D. Md. Jan. 25, 2012) ............ 25

*In re Stock Exchanges Options Trading Antitrust Litig.*, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ........................................................................................ 20

*In re Traffic Exec. Ass'n*, 627 F.2d 631 (2d Cir. 1980) ....................................... 12

*In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220 (S.D.N.Y. 2006) ..................... 22

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ................... 24

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .................... 12, 13

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) ........................... 20

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003) ............................. 22

<u>Rules and Statutes</u>

15 U.S.C. § 1681, *et seq.* ...........................................................*passim*

Fed. R. Civ. P. 23, *et seq.* .........................................................*passim*

Other Authority

MANUAL FOR COMPLEX LITIGATION (3d ed. 1995) .................................................11, 13, 20

5 MOORE'S FEDERAL PRACTICE § 23.83[a] ........................................................12

4 NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002) ...............................12

## <u>INTRODUCTION</u>

Plaintiff Scott Ernst ("Ernst" or "Plaintiff") submits this memorandum of law in support of his Motion for Preliminary Approval of the Class Action Settlement with Defendant Sterling Infosystems, Inc. ("Sterling").[1]  The Settlement will resolve all claims against Sterling in this litigation, which relate to alleged violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").  Specifically, the Settlement resolves Counts 4, 5 and 8 of the First Amended Complaint ("Amended Complaint"), ECF No. 108.  This Settlement does not resolve the claims asserted against Defendants DISH Network, LLC or DISH Network Service, LLC (collectively, "DISH").  Those claims, Counts 1-3 and 6-7 of the Amended Complaint, remain pending.

This Litigation has been resolved for the impressive sum of $4,750,000.  Specifically, the Settlement Agreement calls for the certification (for settlement purposes only) of three classes: (1) the "Criminal Record Settlement Class," which includes all persons about whom Sterling prepared a background report which contained non-conviction criminal record information which was older than seven years; (2) the "MVR Record Settlement Class," which includes all persons about whom Sterling prepared a background report which contained motor vehicle record ("MVR") information which was older than seven years; and, (3) the "DISH Contractor Settlement Class," which includes all persons about whom Sterling prepared a background report for a contractor participating in the DISH Network Contractor Program, and for whom certain information contained in the report was also provided by Sterling to DISH in a "summary report."  All classes include individuals for whom reports were prepared between December 4, 2010 and the present.  Each of these classes will receive significant monetary compensation. Specifically, the Criminal Record Settlement Class will divide a settlement fund of $4,125,000,

---

[1]  The Settlement Agreement is attached as Exhibit 1 to the Declaration of E. Michelle Drake ("Drake Decl.").  All capitalized terms in this brief have the same meaning ascribed to them in the Settlement Agreement's Definitions section.  *See* Settlement Agreement ¶¶ 1.1 through 1.35.

the MVR Record Settlement Class will divide a settlement fund of $375,000 and the DISH

Contractor Settlement Class will divide a settlement fund of $250,000.

The Settlement Agreement also provides for important prospective relief.  As explained

in the Settlement Agreement, Sterling has agreed not to report non-conviction charges older than

seven years, even when such charges are associated with a conviction; not to report certain motor

vehicle records older than seven years; and to require DISH to provide a certification that it will

comply with the FCRA requirements regarding any consumer reports that Sterling provides to

DISH regarding consumers working for contractors participating in the DISH Network

Contractor Program.

In light of the substantial monetary and prospective relief afforded to class members

under the Settlement – and the delay, costs and substantial risks that would be associated with

continuing the Litigation – Plaintiff respectfully requests that the Court enter an order: (1)

preliminarily approving the Settlement; (2) approving the proposed notices of Settlement and

authorizing distribution of the notice via first class mail; (3) certifying the proposed settlement

classes; (4) designating Plaintiff's Counsel as Class Counsel; (5) designating Plaintiff as class

representative; and (6) scheduling a final approval hearing.  Sterling does not oppose the relief

sought in this motion.

## BACKGROUND

### I.    PROCEDURAL HISTORY

#### A.    This Action

Prior to reaching the Settlement in this matter, this case was actively litigated for almost

two years.[2]   On December 4, 2012, Plaintiff filed his initial Complaint ("Complaint") in this

---

[2] This procedural history focuses on the litigation between Plaintiff and Sterling.  The litigation between
Plaintiff and DISH is less relevant to this Motion.

2

matter, alleging that Defendants DISH and Sterling failed to comply with certain provisions of the FCRA.  With respect to Sterling, the Complaint alleged that Sterling prepared consumer reports regarding Plaintiff and the class members which contained adverse items of information, other than records of convictions of crimes, which antedated the reports by more than seven years, in violation of 15 U.S.C. § 1681c(a).  ECF No. 1.  Specifically, the report issued on Plaintiff included traffic violations older than seven years and criminal charges which had been dismissed, which were also older than seven years.  On February 4, 2013, Sterling filed its Answer denying all allegations against it.  ECF No. 19.  Shortly thereafter, and in reaction to the filing of another putative class action which Plaintiff's Counsel feared could adversely affect class members' interests, Plaintiff's Counsel moved to be appointed interim class counsel, a motion the Court granted.  ECF Nos. 37, 39.  On October 13, 2014, Plaintiff filed his Amended Complaint, which reasserted the claims set forth in the Complaint, and advanced additional claims, pled in the alternative, against both DISH and Sterling.  ECF No. 108.  With respect to Sterling, the Amended Complaint sets forth one additional claim alleging, in the alternative, that Sterling furnished a consumer report regarding Plaintiff to DISH, when DISH lacked a permissible purpose for procuring the report, in violation of 15 U.S.C. § 1681b(a).  This allegation related to the "summary reports" provided by Sterling to DISH which this Court, in its September 22, 2014 Order on Plaintiff and DISH's cross-motions for partial summary judgment, held were consumer reports under the FCRA.  ECF No. 104.

On November 12, 2014, Sterling filed its Answer to the Amended Complaint denying all allegations against Sterling therein.  ECF No. 114.  In addition, Sterling filed a Motion to Dismiss Count VIII of the Amended Complaint, the allegation related to the provision of the summary reports to DISH.  ECF No. 112.  That Motion remains pending.

### B.      Discovery and Mediation

While this matter was being litigated, Plaintiff vigorously investigated the claims against Sterling.  All told, Sterling produced over 2,000 pages of relevant discovery, and has produced six of its employees for depositions – two as corporate representatives pursuant to Fed. R. Civ. P. 30(b)(6) and four in their individual capacity.   Drake Decl. ¶ 3.   Additionally, DISH has produced over 1,400 pages of documents, Plaintiff has deposed a DISH 30(b)(6) designee, and both Plaintiff and DISH have deposed Plaintiff's former supervisor at Superior Satellite.  *Id.* ¶ 4. Finally, Plaintiff Ernst was himself deposed.  *Id.* ¶ 5.  The discovery in this case allowed all Parties to have a full view of the facts of the case, and the strengths and weaknesses of their respective positions.  *Id.* ¶ 6.  Discovery in this case was adversarial, as this Court has had occasion to observe when the parties brought a discovery dispute before it.  *See* ECF Nos. 86, 91.

This matter was only resolved after two vigorous arm's-length mediations with a nationally-respected mediator, as well as numerous telephonic conferences, written exchanges, and ongoing conversations between Plaintiff and Sterling.  Drake Decl. ¶ 7.  The Parties first attempted to resolve this matter in a full-day mediation on October 24, 2013, with mediator Nancy Lesser, a well-respected mediator with over 20 years of experience.[3]  *Id.* ¶ 8.  Despite the diligent efforts of both sides, as well as the mediator, a resolution was not reached, and the Parties returned to adversarial litigation.  *Id.*.  On August 20, 2014, the Parties reconvened for a second mediation, again with Ms. Lesser serving as mediator.  *Id.* ¶ 9.  While this mediation was initially scheduled to last for only one day, after the Parties made substantial progress on August 20, it was continued into August 21, when an agreement in principal was reached regarding the Criminal Record Settlement Class and the MVR Record Settlement Class, with a resolution on

---

[3]  Additional information about Ms. Lesser's background and qualifications is available at http://www.paxadr.com/.

the DISH Contractor Settlement Class reserved until the Court resolved the then-pending cross motions for partial summary judgment between Plaintiff and DISH.  *Id.*.  Once the Court resolved those motions, *see* ECF No. 104, and Plaintiff filed the Amended Complaint, ECF No. 108, the Parties communicated by email and telephone to reach a resolution between Plaintiff and Sterling which applied to the DISH Contractor Settlement Class.  Drake Decl. ¶ 10. Thereafter, the Settlement resolving the claims of all three classes was reduced to the Settlement Agreement attached as Exhibit 1 to the Drake Declaration.  *Id.*.

Prior to each mediation, the Parties exchanged extensive formal mediation briefs containing their views of the merits of the case.  *Id.* ¶ 11.  At all times during the mediations, negotiations were made at arm's-length, with the Parties in separate rooms while the mediator conveyed offers and responses, or in joint sessions facilitated by Ms. Lesser.  *Id.* ¶ 12.  The Parties resolved all terms related to relief for the classes – including monetary and prospective relief – before addressing Plaintiff's Counsel's fees and the Named Plaintiff's service award.  *Id.*.

## II.    OVERVIEW OF SETTLEMENT TERMS

### A.    Proposed Nationwide Settlement Classes

The Settlement contemplates that three distinct settlement classes be certified.  The "Criminal Record Settlement Class" is defined as:

> Consumers for whom Sterling issued a consumer report on or after December 4, 2010, where the report contained one or more criminal counts that did not result in a conviction but which predate the report by more than seven years. Consumers for whom Sterling's records indicate a salary that was or was reasonably likely to equal or exceed $75,000 are excluded from the Criminal Record Settlement Class.

Settlement Agreement ¶ 1.7.  Based on the records maintained by Sterling, this class will consist of approximately 58,000 consumers.  *Id.*  The "MVR Record Settlement Class" is defined as

> Consumers for whom Sterling issued a consumer report on or after December 4,

5

2010, where the report contained one or more items of information in the motor vehicle records ("MVR") section of the report which predate the report by more than seven years.  Consumers for whom Sterling's records indicate a salary that was or was reasonably likely to equal or exceed $75,000 are excluded from the MVR Record Settlement Class.

Settlement Agreement ¶ 1.20.  Based on the records maintained by Sterling, this class will consist of approximately 75,000 consumers.  *Id.*  Finally, the "DISH Contractor Settlement Class" is defined as:

Consumers who were the subject of a consumer report issued by Sterling to a contractor participating in the DISH Network Contractor Program, and for whom certain information contained in the report was also provided by Sterling to DISH in a summary report on or after December 4, 2010.

Settlement Agreement ¶ 1.9.  Based on the records maintained by Sterling, this class will consist of approximately 49,000 consumers.  *Id.*  Because the class definitions are somewhat complex, the Settlement makes clear that only those individuals on the class lists to be produced by Sterling are members of the classes.  *Id.* ¶ 4.1.  That is, Sterling will use its best efforts to identify all members of the classes, and cannot assert in a later action that an individual who was not on a class list has released their claims.  *Id.*  Furthermore, no individual not included on the class lists is entitled to receive any benefit from the Settlement.  *Id.*

### B.    Monetary Relief

Each of the classes in this case will receive significant monetary relief, cumulatively totaling $4,750,000.  Settlement Agreement ¶ 8.1.1.  The members of the Criminal Record Settlement Class will divide a settlement fund of $4,125,000, the members of the MVR Record Settlement Class will divide a settlement fund of $375,000, and the members of the DISH Contractor Settlement Class will divide a settlement fund of $250,000.[4]  *Id.*  Members of the Criminal Records Settlement Class will receive a recovery without having to submit a Claim

---

[4] These figures are subject to deduction for the costs of settlement administration, attorneys' fees and costs, and the class representative service award, as explained in detail below.

Form, while members of the MVR Record Settlement Class and the DISH Contractor Settlement Class will have to return a simple Claim Form to receive compensation. *Id.* ¶¶ 8.1.2.-8.1.4.

The different recoveries for the different classes reflect judgments regarding the relative strength of the claims asserted, as well as the relative severity of the violations alleged. For example, with respect to the Criminal Record Settlement Class and the MVR Record Settlement Class, Plaintiff believes that the reporting of dismissed criminal charges on a consumer's background report is considerably more likely to have an adverse impact on one's prospects for employment and promotion than the reporting of certain traffic violations which are older than seven years. Drake Decl. ¶ 13. The ratio of recovery also reflects the fact that the claims asserted on behalf of the MVR Record Settlement Class were more novel, and Plaintiff's Counsel's assessment that they, therefore, carried greater legal risk. *Id.* With respect to the claims on behalf of the DISH Contractor Settlement Class, that class stands to recover considerably more from DISH if the claims still pending against DISH are successful. *Id.* ¶ 14. Additionally, the settlement for the DISH Contractor Settlement Class takes into account the strength of Sterling's pending motion to dismiss. *Id.*.

All three settlement funds are subject to Court-approved deductions for the costs of settlement administration, attorneys' fees and costs, and the class representative service award. Settlement Agreement ¶ 8.5. After these amounts are deducted, the entirety of the funds will be paid to class members. *Id.* Only if class members fail to cash their settlement checks will funds be sent to a *cy pres* recipient. The parties propose that fifty percent (50%) of the *cy pres* funds be provided to the Southern Coalition for Social Justice and that the remaining fifty percent (50%) be provided to the Salvation Army, subject to the terms set forth in the Settlement Agreement. *Id.* ¶ 8.9. No amount of any settlement fund will revert to Sterling. *Id.* ¶ 8.8.1.

C.      **Prospective Relief**

Sterling has agreed to meaningful prospective relief which will address the claims of all three of the settlement classes.  To address the claims of the MVR Record Settlement Class, which asserted that MVR records were improperly being reported after seven years, Sterling has agreed not to report certain MVR records older than seven years, as set forth in the Settlement Agreement.  Settlement Agreement ¶ 9.1.

To address the claims of the Criminal Records Settlement Class, which asserted that Sterling was reporting dismissed criminal charges older than seven years, Sterling has agreed not to report criminal counts charged in a criminal case in which a conviction occurred more than seven years prior to the date of the report unless the charge itself resulted in a conviction, as set forth in the Settlement Agreement.  Settlement Agreement ¶ 9.2.

Finally, the DISH Contractor Settlement Class asserted that Sterling provided consumer reports to DISH without DISH having a permissible purpose.  To address these claims, Sterling has agreed not to provide consumer reports to DISH regarding applicants or individuals working for third-party contractors who provide satellite installation services for DISH, unless or until it receives from DISH a certification of the type required by 15 U.S.C. § 1681b(b)(1) which explicitly applies to such contractors.  Settlement Agreement ¶ 9.3.

The benefit of this non-monetary relief is substantial both for members of the settlement classes and for future subjects of Sterling's background checks.

D.      **Release of Claims**

In exchange for the monetary and prospective relief outlined above, the members of the classes will release their claims in this case.  The release is tailored to the claims asserted in this case, and only releases claims under the specific sections of the FCRA under which those claims

arose as well as the FCRA State Equivalents.   Settlement Agreement ¶ 10.3.1.   Specific exemptions to the release are made for claims already asserted in another pending class action, as well as for all claims currently asserted against DISH in this action.  *Id.*

### E.   Class Notice, Claims Process, and Settlement Administration

After a competitive bidding process, in which quotes were solicited from a number of experienced third-party settlement administrators, including administrators suggested by counsel for both sides, the Parties have selected Dahl Administration, LLC, to administer this Settlement, subject to Court approval.  Settlement Agreement ¶ 3.2.  The Settlement Administrator will be responsible for mailing notice, receiving and determining the validity of opt-out requests, objections, and claim forms, creating and maintaining the settlement website, and creating and staffing a toll-free telephone line which class members can call with questions.  *Id.*

The Parties have agreed to the form of class notice attached as Exhibits B and C to the Settlement Agreement, subject to the Court's approval.  The Parties believe that individualized notices are required, so that class members can be properly informed about which class(es) they are in, and about whether or not they need to submit a Claim Form.

The notices attached as Exhibit C to the Agreement ("Mail Notice") will be mailed, by first class mail, to each individual settlement class member at the last known available address in Sterling's records, as updated by the National Change of Address Database.   Settlement Agreement ¶ 4.1-4.2.  The parties believe this is "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  The Mail Notice shall be fitted to appear on two double-sided pages and contains details about the definition of the settlement classes, the proposed Class Counsel, the size of the settlement fund, the methodology for opting-out or objecting to the Settlement, the attorneys' fees and expenses and service awards that are

requested pursuant to the Settlement Agreement, and the date and location of the final approval hearing.  *See* Settlement Agreement, Ex. C.  It also directs class members to the Settlement Website, where the Long Form Notice (Ex. B to the Settlement Agreement) will be posted.  *Id.*

Sterling will also comply with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), by providing notice of this proposed Settlement to the appropriate public officials.  Settlement Agreement, ¶ 4.10.

The notice mailed to members of the MVR Record Settlement Class and the DISH Contractor Settlement Class will contain a Claim Form for class members to fill out and return. *See* Settlement Agreement, Exs. A, C.  The members of these classes must return a valid Claim Form to the Settlement Administrator postmarked within 60 days of the day the notice was mailed in order to receive compensation from the Settlement Funds.  Settlement Agreement ¶ 6.1.1.  A valid Claim Form must be timely received, signed, and properly filled out.  *Id.* ¶ 6.2.1. Those who return Claim Forms which the Settlement Administrator deems to be invalid will be so notified by the Administrator, and will have fourteen days to cure the deficiency.  *Id.* ¶ 6.2.3.

In accordance with Fed. R. Civ, P. 23(c)(2), settlement class members may send opt-out requests to the address contained in the notice, and the Settlement Administrator will maintain that address.  *Id.* ¶ 5.1.  The deadline for class members to opt-out of the Settlement will be 60 days after the date notices are mailed.  *Id.*

Class members who wish to object to the Settlement Agreement must send a written statement of objection to the Settlement Administrator.  To be deemed valid, the objection must include: (i) the objector's name, address, telephone number, and the last four digits of his or her Social Security number; (ii) a statement that he or she is a member of one or more of the settlement classes; (iii) the factual basis and legal grounds for the objection to the Settlement;

(iv) the identity of any witnesses whom the objector may call to testify at the Final Fairness Hearing; and (v) copies of any exhibits the objector may seek to offer into evidence at the Final Fairness Hearing. *Id.* ¶ 5.4. Settlement class members who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement. *Id.*

### F.   Attorneys' Fees, Costs, and Class Representative Award

The Settlement states that Plaintiff's Counsel's fees and the service award for the Named Plaintiff are to come out of the Settlement Funds, subject to Court approval. Settlement Agreement ¶ 8.3.4. Counsel is authorized to petition for their actual costs plus up to one-third of the settlement funds as attorneys' fees, and for a Named Plaintiff service award of up to $5,000. *Id.* ¶¶ 8.3.1; 8.4. Plaintiff's Counsel will formally make this request prior to final approval, no later than forty-five days after notice is mailed, thereby providing that the request for fees is available to any class member who wishes to object prior to the objection deadline. *Id.* ¶ 8.3.1. Neither settlement approval nor the size of the Settlement Funds are contingent upon an award of all requested fees or the class representative service award. *Id.* ¶¶ 8.3.2; 8.4.

## ARGUMENT

### I.   STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a "two-step process." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); MANUAL FOR COMPLEX LITIGATION § 30.41, at 236 (3d ed. 1995). In the first step, the court considers whether the settlement warrants preliminary approval, such that notice of the settlement may be sent to the class members. In the second step, after notice of the proposed settlement has been

11

sent and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the court considers whether the settlement warrants final court approval. *Id*.

The decision whether to approve a proposed class action settlement is a matter of judicial discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). However, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); 4 NEWBERG ON CLASS ACTIONS ("NEWBERG") § 11:41 (4th ed. 2002). As a result, "courts should give proper deference to the private consensual decision of the parties … [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation[.]" *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citations omitted).

This is particularly true on a motion for preliminary approval, which involves only an "initial evaluation" of the fairness of the proposed settlement. *Clark*, 2009 WL 6615729, at *3 (*citing* NEWBERG § 11:25). To grant preliminary approval, the court need only find that there is "probable cause" to submit the settlement to class members and hold a full-scale hearing as to its fairness. *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980). The court is not required to answer the ultimate question of whether the settlement is fair, reasonable, and adequate. *See* 5 MOORE'S FEDERAL PRACTICE § 23.83[a], at 23-336.2 to 23-339. Instead, the court simply evaluates whether the settlement "appears to fall within the range of possible approval[.]" *Clark*, 2009 WL 6615729, at *3; NEWBERG § 11:25. Thus, "preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the

proposed settlement." *In re Medical X-ray Film Antitrust Litig.*, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997); *see also In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

## II.   THE PROPOSED SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Here, both the terms of the Settlement and the manner in which they were negotiated strongly support preliminary approval.

### A.   The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before a Well-Respected and Neutral Mediator

At the preliminary approval stage, a proposed class action settlement "will enjoy a presumption of fairness" where the settlement "is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation." *In re Excess Value Ins. Coverage Litig.*, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d at 116; MANUAL FOR COMPLEX LITIGATION § 30.42 ("[A] presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel"). That is precisely the situation presented here. As recounted above, this matter was litigated for almost two years prior to the Settlement. *See infra* at § I.A - B. The parties mediated this matter at arm's-length, facilitated by an experienced mediator. *See infra* at § I.B. Further, as is discussed at more length *supra* at § IV.A.4, Plaintiff's Counsel is knowledgeable and experienced at consumer class actions, particularly FCRA class actions. The same is true of Sterling's counsel.

### B.   The Settlement Provides Significant Relief to Class Members

The terms that were negotiated provide considerable benefits to the settlement classes,

both in terms of monetary and prospective relief.  As a result, the Settlement falls well within the range of reasonableness for preliminary approval.

### 1.      Monetary Relief

By any measure, the monetary relief provided to settlement class members is substantial. On a total dollars basis, the gross value of the Settlement is $4,750,000.  Plaintiff filed this case seeking statutory damages under the FCRA, which provides for damages of between $100 and $1,000 for each willful violation.  15 U.S.C. § 1681n(a)(1).  Plaintiff did not seek actual damages.  To recover actual damages under the FCRA, damages must be caused by the FCRA violation itself, not merely by the report associated with the violation.  *See Bach v. First Union Nat. Bank*, 149 F. App'x 354, 361 (6th Cir. 2005) (evaluating "causal link" between violation and damages).  Counsel view it as extremely unlikely that any members of the classes could ever do so, for a few reasons.  First, for members of the Criminal Record Settlement Class, discovery indicated that Sterling only reported dismissed charges older than seven years when they were part of the same case in which a conviction ultimately resulted – that is, the situation in which a defendant was charged with multiple counts and pled guilty or was convicted of one or more of those counts, and the remaining counts were dismissed.  In this situation, it is unlikely that a consumer who had both the conviction and the dismissed counts reported on their consumer report could ever prove that any adverse action was the result of the reporting of the dismissed charges, and not the reporting of the conviction.  Additionally, for members of the MVR Record Settlement Class, it is unlikely that the reporting of traffic violations older than seven years resulted in adverse action.  However, any member of any class who wishes to attempt to show actual damages has the opportunity to opt-out of the Settlement.

The Settlement is also impressive based upon the unsettled nature of the claims at issue. To Counsel's knowledge, no case asserting the claims of the Criminal Records Settlement Class

has ever advanced to the dispositive motion or trial stages, and the critical question of whether the phrase "records of conviction," – which are reportable after seven years under the FCRA – would include dismissed charges which were part of the same proceeding that resulted in a conviction, remain unsettled.  Furthermore, Counsel is aware of no cases which assert the claims which have been asserted in this case on behalf of the MVR Record Settlement Class and the DISH Contractor Settlement Class.  Furthermore, the recovery of the Criminal Records Settlement Class in this case is very comparable to, and, on a per-class-member basis, higher than, the settlement in *King v. General Info. Services*, No. 10-cv-6850 (E.D. Pa.), the only comparable settlement of which Counsel is aware.  The recovery for all of the classes is particularly impressive when the risks of litigation, discussed below, are considered.

Furthermore, the requirement that members of the MVR Record Settlement Class and the DISH Contractor Settlement Class return claim forms is appropriate and necessary.  Claim forms are commonly used devices in FCRA class settlements, including cases with similar claims.  *See, e.g. Holman v. Experian*, No. 4:11-cv-180, ECF No. 243-1 (N.D. Cal. Mar. 2014); *Hunter v. First Transit, Inc*, No. 1:09-cv-06178, ECF No. 79 (N.D. Ill. Sept. 2011); *Jackson v. Metscheck, Inc*, No. 1:11-cv-2735, ECF No. 46 (N.D. Ga. Dec. 2012).  The use of claim forms for these classes ensures that the administration of the Settlement will be cost-effective, and that the recovery for class members who submit Claim Forms will be meaningful.

### 2.   Prospective Relief

The prospective relief provided to class members under the Settlement is also significant.  As outlined *infra* at § II.C, the prospective relief will end the conduct that forms the basis for the claims asserted against Sterling in this Litigation in its entirety, ensuring that class members, and all others upon whom Sterling conducts background checks in the future, will not have dismissed

criminal charges over seven years old or certain traffic infractions over seven years old reported, and that DISH will be required to properly certify to Sterling that future reports it procures are for a permissible purpose.  Even standing alone, this complete prospective relief is a very positive outcome of this Litigation, especially considering that it is far from settled law whether injunctive relieve is even available under the FCRA in adversarial litigation.

>C.    **Plaintiff and the Settlement Class Members Would Face Significant Risks in the Absence of a Settlement**

The relief outlined above is even more impressive when viewed in light of the risks of continuing to litigate the claims against Sterling.  *See In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").  Although Plaintiff believes that his claims are strong, he would have faced substantial risks in litigation.

With respect to the Criminal Records Settlement Class, Plaintiff believes he had a strong case on the merits, as several recent court decisions have held that dismissed charges are not reportable after seven years, even when associated with convictions.  *Haley v. TalentWise, Inc.*, No. C13-1915 MJP, 2014 WL 1304007 at *2 (W.D. Wash. Apr. 2, 2014), *reconsideration denied*, 2014 WL 1648480 (W.D. Wash. Apr. 23, 2014); *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, *3 (N.D. Ill. July 17, 2014).  However, neither of these cases was binding precedent upon this Court, and there was certainly a chance that this Court would disagree.  Plaintiff believes the same logic employed by the courts in the *Haley* and *Avila* decisions would apply to the claims of the MVR Records Settlement Class, but Plaintiff is not aware of any court decisions addressing the issue, further compounding the risks to that class.

Perhaps most risky were the claims of the DISH Contractor Settlement Class.  The claims of this class were asserted in the alternative to the view put forward in several other counts of the Amended Complaint: briefly, Plaintiff contended that the summary reports had been produced

for "employment purposes," but if they had not been (as DISH contended) then, in the alternative, Plaintiff argued they were produced for no permissible purpose whatsoever, which would mean that Sterling violated the FCRA.  As Sterling noted in its still-pending motion to dismiss, this Court ruled that the summary reports were produced for employment purposes, thus seemly barring any recovery from Sterling for the DISH Contractor Class.  *See* ECF Nos. 104, 114.  In this context, proving that any violation committed by Sterling was willful would have been exceedingly difficult, as Plaintiff is unaware of any cases in which a consumer reporting agency was held liable for an employer's allegedly improper use of a consumer report.

Additionally, there are specific facts in this case which call into question Plaintiff's ability to prove that any violations allegedly committed by Sterling were committed willfully, and this was a contributing factor to the Settlement.

Aside from the these risks, continuing the Litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Second Circuit, which would have significantly delayed any relief to class members (at best), and might have resulted in no relief to class members.  In order to prosecute his claims to a final judgment, Plaintiff would have had to engage in class certification motion practice, engage in summary judgment motion practice, prepare for trial, and present evidence during a jury trial.  Avoiding the risks and expense associated with further litigation, and locking in substantial gains for the classes, was the correct course for Plaintiff to take.

## III.    THE PROPOSED CLASS NOTICES AND NOTICE PLAN ARE REASONABLE

In addition to approving the substance of the Parties' Settlement Agreement, the Court should approve the proposed class notices and notice plan.  Pursuant to Fed. R. Civ. P. 23(e), the Court is required to "direct notice in a reasonable manner to all class members who would be

bound by the proposal."  Although the question of what constitutes reasonable notice is left to the discretion of the Court, Rule 23 provides that the best notice practicable "include[s] individual notice to all class members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  That is precisely the type of notice contemplated here.  Under the Settlement Agreement, each settlement class member will be sent a notice of the proposed Settlement via first-class mail, informing them of the terms of the Settlement and their rights to opt-out or object, and, for members of the MVR Record Settlement Class and the DISH Contractor Settlement Class, enclosing a Claim Form.  *See* Settlement Agreement, Exs. A-C. This type of notice is presumptively reasonable, and satisfies the requirements of due process. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985) (the procedure "where a fully descriptive notice is sent by first-class mail to each class member, with an explanation of the right to 'opt-out,' satisfies due process").[5]  Moreover, the Settlement Administrator will establish a website that will contain detailed information about the Settlement, and also provide class members a toll-free number to call if they have questions.  Settlement Agreement ¶¶ 4.4-4.5.

The content of the notices also satisfies the "reasonable" standard of Fed. R. Civ. P. 23(e).  The proposed Mail Notice provides, among other things: (1) a summary of the lawsuit and the claims asserted; (2) a clear definition of the Settlement Classes; (3) a description of the material terms of the Settlement, including an estimate of the amounts class members are likely to recover; (4) a disclosure of the release of claims should they choose to remain in the class; (5) an explanation of class members' opt-out rights, a date by which class members must opt out, and information regarding how to do so; (6) instructions as to how to object to the Settlement

---

[5] The Settlement Administrator will mail the notices to settlement class members' last known mailing address (as reflected in Sterling's records).  Settlement Agreement ¶ 4.1.  If a notice is returned as undeliverable, the Administrator will re-mail the notice to any forwarding addresses provided.  *Id.*  This constitutes a "reasonable effort" to identify class members.  *See* Fed. R. Civ. P. 23(c)(2)(B).

and a date by which class members must object; (7) the date, time, and location of the final approval hearing; (8) the internet address for the settlement website and the toll-free number from which class members may obtain additional information about the Settlement; (9) the name of the firm representing the settlement classes, and its website; and (10) information regarding the amount of attorneys' fees, costs and named plaintiff service award likely to be requested in the fee petition.  Although there are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements, the notice in this case is clearly reasonable as it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *See Lomeli v. Sec. & Inv. Co. Bahrain*, 2013 WL 6170572, at *2 (2d Cir. Nov. 26, 2013) (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007)) (internal citations omitted); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (settlement notice "need only describe the terms of the settlement generally").

## IV.   CERTIFICATION OF THE SETTLEMENT CLASSES UNDER RULE 23 IS APPROPRIATE

In addition to approving the proposed Settlement and notices of settlement, this Court should certify the proposed settlement classes.  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) *quoting Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).  As a result, doubts as to whether or not to certify a class action should be resolved "in favor of allowing the class to go forward."  *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002).

This is especially true in the context of a settlement class, because the court need not

inquire whether a trial of the action would be manageable on a class-wide basis.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").  Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation."  *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.*, No. 93-1849-CIV-T-23A, 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).[6]

### A.     The Requirements of Rule 23(a) are Met

Fed. R. Civ. P. 23(a) sets forth four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation.  *In re NTL, Inc. Sec. Litig.*, 2006 WL 330113, at *5 (S.D.N.Y. Feb. 14, 2006).  Plaintiff satisfies all four requirements.

### 1.     Numerosity

Fed. R. Civ. P. 23(a)(1) requires Plaintiff to show that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable.  This standard is clearly met for all three classes, each of which involve thousands of people.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").

---

[6] Because Plaintiff seeks class certification in the context of preliminary approval, the Court need only preliminarily certify the settlement classes now, with a more thorough inquiry into the issues to be heard at the hearing for final approval, if needed.  *See In re Qiao Xing Sec. Litig.*, 2008 WL 872298, at *1 (S.D.N.Y. Apr. 2, 2008) (certifying class on a preliminary basis until final determination at fairness hearing); *In re Stock Exchanges Options Trading Antitrust Litig.*, 2005 WL 1635158, at *5 (S.D.N.Y. July 8, 2005) ("In the context of settlement, courts often provisionally certify the class along with preliminary approval of the settlement."); MANUAL FOR COMPLEX LITIGATION (4th) § 21.632 ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).").

### 2.      Commonality

Fed. R. Civ. P. 23(a)(2) requires the existence of "questions of law or fact common to the class."  This does not mean that all class members must make identical claims and arguments, but only that "plaintiff's grievances share a common question of law or fact."  *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001).  Thus, "[t]he commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members."  *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal brackets and quotations omitted).

Here, there are common issues of law and fact with respect to each of the classes which would be determinative of the claims at issue.  For the Criminal Records Settlement Class, the common determinative question is whether the reporting of dismissed charges older than seven years violates the FCRA – even when those charges were associated with a conviction.  For the MVR Record Settlement Class, the common determinative question is whether the reporting of non-criminal motor vehicle record information older than seven years, including citations and civil violations, violates the FCRA.  For the DISH Contractor Settlement Class, the common determinative question is whether there existed a permissible purpose for Sterling to provide consumer reports to DISH.  For each of these classes, Sterling's willfulness – a prerequisite to liability – would also be a common legal question.  *See Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) ("To prove willfulness here, a consumer-by-consumer inquiry is not necessary.").  Furthermore, common factual questions, such as Sterling's standard procedures for processing certain types of information and for providing reports to DISH, abound in this case.  Accordingly, the commonality requirement is satisfied.

3.      **Typicality**

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also In re Checking Account Overdraft Litig.*, 275 F.R.D. at *3 n.8 (citation omitted).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A.*, 126 F.3d at 376 (internal quotations omitted).  This does not require that the situations of the named representatives and the class members be identical.  *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006).  Rather, it is sufficient that "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003).

Here, Plaintiff is typical of the settlement classes that he seeks to represent.  Like the members of the Criminal Record Settlement Class, his consumer report contains dismissed charges older than seven years.  Like the members of the MVR Record Settlement Class, his consumer report contains civil traffic infractions older than seven years.  And like the members of the DISH Contractor Settlement Class, Sterling provided a summary report about him to DISH in conjunction with the DISH Contractor Program.  Plaintiff does not have any claims against Sterling over and above those possessed by the rest of the classes, nor is he subject to any unique or individualized defenses.  Accordingly, Fed. R. Civ. P. 23(a)(3) is also satisfied.

4.      **Adequacy**

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  To satisfy this requirement: (1) class counsel must be

qualified, experienced and generally able to conduct the litigation; and (2) the representative plaintiff's interests must not be antagonistic to those of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Those requirements are met here.

First, Plaintiff's Counsel is highly experienced in complex class action litigation and consumer litigation in general. *See* Drake Decl., Ex. 2, Firm Resume. In the memorandum in support of the motion to appoint interim class counsel, Plaintiff spelled out counsel's qualifications, experience and efforts to advance the interests of the classes in this litigation. ECF No. 37. In granting that motion, this Court has already held that "Nichols Kaster has demonstrated it is able [to] fairly and adequately to represent the interests of the putative class." ECF No. 39 at 2. The Court should reaffirm that holding.

Second, Plaintiff has been actively engaged in this case. He understands what it means to be a class representative and has and will continue to put the interests of the classes first in making all decisions related to this case. Declaration of Scott Ernst ("Ernst Decl.") ¶ 3. Plaintiff Ernst provided documents to Counsel to aid in the investigation and drafting of the Complaint, reviewed the Complaint prior to filing, and has been in consistent contact with Counsel over the two years that this case has been litigated. *Id.* ¶¶ 5, 6. Additionally, he provided testimony in his deposition. *Id.* ¶ 5. He has reviewed, approves of and signed the Settlement Agreement. *Id.* ¶ 4. Plaintiff Ernst has no conflicts of interest that would compromise his representation of the class. *Id.* ¶ 3. Thus, the adequacy requirement is also met.

## B.    The Requirements of Rule 23(b)(3) are Met

In addition to satisfying Fed. R. Civ. P. 23(a), parties seeking class certification must show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3). *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Here, Plaintiff seeks certification under Rule

23(b)(3), which allows a class action to be maintained if: (1) questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).  Both of these criteria are met here.

   **1.**  **Predominance**

  The predominance requirement is "readily met" in consumer cases such as this.  *Amchem*, 521 U.S. at 624.  "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that 'the issues in the class action that are subject to generalized proof. . . predominate over those issues that are subject only to individualized proof."  *In re NTL, Inc. Sec. Litig.*, 2006 WL 330113, at *12 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)).  That is precisely the situation here.

  As described in the commonality section, *supra* at § IV.A.2, for each of the classes, at least one common question – the legality of the conduct at issue under the FCRA – not only predominates, but is determinative of the matter.  Discovery in this case demonstrated that Sterling had uniform policies and practices with respect to the reporting of criminal and motor vehicle information older than seven years.  All class members are identically situated with respect to whether Sterling's conduct was lawful.  The reporting of non-conviction criminal and/or motor vehicle information which is older than seven years is either legal, or it is not, and the determination of its legality will not vary from class member to class member.  Furthermore, the question of whether Sterling's alleged violations were willful is also a predominant class issue, because Sterling's state of mind will not vary between class members.  *Chakejian*, 256 F.R.D. at 500.  Thus, the predominance requirement is met.

## 2.      Superiority

The superiority requirement is also satisfied here.  To be certified, a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).   Again, in the settlement context, the court need not address the manageability requirements of Rule 23(b)(3)(D).  *Amchem*, 521 U.S. at 620.  In a matter such as this, where the claims of all class members are identical and are based on the same common core of facts, it is clear that adjudicating this matter as a class action will achieve economies of time, effort, and expense, and promote uniformity of results.  *Singleton v. Domino's Pizza*, No. 11-1823, 2012 WL 245965 at *8 (D. Md. Jan. 25, 2012) (finding class action superior and certification for settlement purposes justified "particularly in light of the relatively modest amount of statutory damages available under the FCRA").   As the Supreme Court has recognized, "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."   *Amchem*, 521 U.S. at 617 (internal quotation marks omitted).  Certifying the settlement classes in this case is consistent with that very policy.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court enter a Preliminary Approval Order: (1) preliminarily approving the Settlement; (2) approving the proposed notices of Settlement and authorizing distribution of the notices via first class mail; (3) certifying the proposed settlement classes; (4) designating Plaintiff's Counsel as Class Counsel; (5) designating Plaintiff as class representative; and (6) scheduling a final approval hearing.

Dated: January 9, 2015                    NICHOLS KASTER, PLLP

                                          /s/E. Michelle Drake
                                          NICHOLS KASTER, PLLP
                                          Michele R. Fisher, NY Bar No. MF4600
                                          E. Michelle Drake, MN Bar No. 387366*
                                          Joseph C. Hashmall, MN Bar No. 392610*
                                          Megan D. Yelle, MN Bar No. 390870*
                                                  *admitted *pro hac vice*
                                                  **\*pro hac vice* pending
                                          4600 IDS Center
                                          80 South Eighth Street
                                          Minneapolis, MN 55402
                                          Telephone: (612) 256-3200
                                          Fax: (612) 215-6870
                                          fisher@nka.com
                                          drake@nka.com
                                          jhashmall@nka.com
                                          myelle@nka.com

                                          NICHOLS KASTER, LLP
                                          Adam Hansen, MN Bar No. 391704*
                                                  *admitted *pro hac vice*
                                          One Embarcadero Center
                                          Suite 720
                                          San Francisco, CA 94111
                                          Telephone: (612) 256-3200
                                          Fax: (612) 215-6870
                                          ahansen@nka.com

                                          ATTORNEYS  FOR  PLAINTIFF  AND  THE
                                          PUTATIVE CLASSES