Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into by and between Scott Ernst ("Plaintiff"), individually and as representative of the Settlement Classes as defined below, and Sterling Infosystems, Inc. ("Defendant" or "Sterling"). Plaintiff and Defendant are collectively referred to as the "Parties."  This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle all released rights and claims to the extent set forth below, subject to the terms and conditions set forth herein.

## RECITALS

WHEREAS, on December 4, 2012, Plaintiff filed his initial Complaint ("Complaint") in the United States District Court for the Southern District of New York, styled as *Scott Ernst v. DISH Network, LLC, DISH Network Service, LLC and Sterling Infosystems, Inc.*, Civil Action No. 12-cv-8794-LGS (the "Lawsuit") alleging that Defendants failed to comply with certain provisions of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681, *et seq.*;

WHEREAS, the Complaint alleges certain claims against DISH Network, LLC and DISH Network Service, LLC (collectively, "DISH" or "DISH Defendants") and certain, separate claims against Sterling.  With respect to Sterling, the Complaint alleges that Sterling prepared consumer reports regarding Plaintiff and the Settlement Class Members which contained adverse items of information, other than records of convictions of crimes, which antedate the report by more than seven years, in violation of 15 U.S.C. § 1681c(a);

WHEREAS, on February 4, 2013, Sterling filed its Answer denying all allegations against Sterling in the Complaint, denying any violation of the FCRA by Sterling, denying that

the action and claims against Sterling are suitable for class certification pursuant to Federal Rule of Civil Procedure 23, and asserting affirmative defenses that Sterling contends are meritorious;

WHEREAS, on October 13, 2014, Plaintiff filed his First Amended Class Complaint ("Amended Complaint"), which reasserted the claims set forth in the Complaint, and advanced additional claims, pled in the alternative, against both the DISH Defendants and Sterling.  With respect to Sterling, the Amended Complaint sets forth one additional claim alleging, in the alternative, that, as a part of a program to run background checks on applicants and/or individuals working for third-party contractors who provided satellite installation services for DISH, Plaintiff alleges that Sterling furnished consumer reports regarding Plaintiff and the Settlement Class Members to the DISH Defendants, despite the fact that the DISH Defendants lacked a permissible purpose for procuring the reports, in violation of 15 U.S.C. § 1681b(a);

WHEREAS, on November 12, 2014, Sterling filed its Answer denying all allegations against Sterling in the Amended Complaint, denying any violation of the FCRA by Sterling, denying that the action and claims against Sterling are suitable for class certification pursuant to Federal Rule of Civil Procedure 23, and asserting affirmative defenses that Sterling contends are meritorious.  In addition, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Sterling filed a Motion to Dismiss Count VIII of the Amended Complaint;

WHEREAS, after extensive arm's-length negotiations, significant discovery and three days of mediation before a nationally-respected mediator, as well as numerous telephonic conferences, written exchanges, and ongoing conversations between counsel for the Parties, the Parties have agreed to the settlement in principal of their disputes;

WHEREAS, the Parties are willing to enter into this Settlement Agreement to settle the

2

claims of the Settlement Classes because of, among other reasons, the attendant expense, risks, difficulties, delay, and uncertainties of continued litigation;

WHEREAS, Plaintiff and Class Counsel, after extensive discovery and investigation, believe that this Settlement Agreement provides fair, reasonable, and adequate relief to the Settlement Classes and that it is in the best interest of the Settlement Classes to settle, compromise, and dismiss their claims on the merits and with prejudice as to Sterling on the terms set forth below, subject to the approval of the Court of the Settlement Agreement as a whole;

WHEREAS, Sterling denies all claims asserted against it in the Litigation, denies that class certification would be appropriate if the case was litigated rather than settled, denies all allegations of wrongdoing and liability, and denies that anyone was harmed by the conduct alleged, but nevertheless desires to settle Plaintiff's claims on the terms and conditions set forth in this Settlement Agreement solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing the proceedings on those issues in the Litigation and putting to rest the controversies engendered;

WHEREAS, the settlement and release affected by this Settlement Agreement concerns only claims in the Litigation against Sterling and the Released Parties and does not settle or release any claims in the Litigation against the DISH Defendants; and

NOW THEREFORE, IT IS AGREED that the Litigation as to Sterling, and all claims of the Settlement Classes against Sterling be settled, compromised, and dismissed on the merits and with prejudice as to Sterling on the terms set forth below, subject to the approval of the Court. The recitals stated above are true and accurate and are hereby made a part of the Settlement Agreement.

## I.     DEFINITIONS

As used in this Settlement Agreement, the terms defined below shall have the meanings assigned to them when capitalized in the same fashion as in this Section I.  Any other terms that relate to the consumer reporting industry shall have the customary meaning accorded to those terms in the industry.

1.1.    "Attorneys' Fees" means any attorneys' fees, costs and/or expenses applied for by Class Counsel relating to this Settlement Agreement and approved by the Court.

1.2.    "Claim" means any and all actions, causes of action, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages, demands (whether written or oral), agreements, promises, liabilities, controversies, costs, expenses, attorneys' fees and losses whatsoever, whether in law or in equity, whether by affirmative claim, counterclaim, or setoff, and whether based on any federal law, state law, foreign law or common law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future.

1.3.    "Claim Form" means the form that members of the MVR Record Settlement Class and the DISH Contractor Settlement Class must return in order to be eligible to receive a share of the Settlement Funds pursuant to Sections 6.1.1 through 6.2.3, in a form the same or substantially similar to that attached hereto as **Exhibit A** and approved by the Court.

1.4.    "Claims Process" means the process set forth in Sections 6.1.1 through 6.2.3 for assessing the claims of the members of the MVR Record Settlement Class and the DISH Contractor Settlement Class.

1.5.    "Class Counsel" means Nichols Kaster, PLLP.

1.6.    "Consumer" means a natural person residing in the United States of America or its territories.

1.7.    The "Criminal Record Settlement Class" means Consumers for whom Sterling issued a consumer report on or after December 4, 2010, where the report contained one or more criminal counts that did not result in a conviction but which predate the report by more than seven years.   Consumers for whom Sterling's records indicate a salary that was or was reasonably likely to equal or exceed $75,000 are excluded from the Criminal Record Settlement Class.   Based on the records maintained by Sterling, this class will consist of approximately 58,000 Consumers.

1.8.    "Defendant's Counsel" means LeClairRyan, P.C.

1.9.    The "DISH Contractor Settlement Class" means Consumers who were the subject of a consumer report issued by Sterling to a contractor participating in the DISH Network Contractor Program, and for whom certain information contained in the report was also provided by Sterling to DISH in a summary report on or after December 4, 2010.   Based on the records maintained by Sterling, this class will consist of approximately 49,000 Consumers.

1.10.   "DISH Network Contractor Program" means a program under which Sterling ran background checks on applicants and/or individuals working for third-party contractors who provided satellite installation services for DISH.   The Dish Network Contractor Program does not include employees of the DISH Defendants.

1.11.   "Effective Date" is the date on which this Court's entry of the Final Approval Order and this Court's order regarding Attorneys' Fees have become final because the following has occurred: (i) the expiration of three (3) business days after the time to file a motion to alter or amend the Final Approval Order under Federal Rule of Civil Procedure 59(e) has passed without

any such motion having been filed; (ii) the expiration of three (3) business days after the time in which to appeal the Final Approval Order has passed without any appeal having been filed (which date shall be deemed to be thirty-three (33) days following the entry of the Final Approval Order, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the 33rd day falls on a weekend or a Court holiday, in which case the date for purposes of this Settlement shall be deemed to be the next business day after such 33rd day); and (iii) if such motion to alter or amend is filed, or if an appeal is taken, three (3) business days after a determination of any such motion or appeal that permits the consummation of the Settlement.   For purposes of this definition, the term "appeal" includes all writ proceedings. Notwithstanding the above, if there are no objectors or intervenors who have entered an appearance in the case, then the Effective Date will be the date the Final Approval Order is entered.

1.12.   "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*., and any subsequent amendments thereto.

1.13.   "FCRA State Equivalents" means any statute or regulation of any state, U.S. territory, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection or reporting of consumer information and related actions.

1.14.   "Final Approval" means the approval of the Settlement Agreement by the Court at or after the Final Approval Hearing, and entry on the Court's docket of the Final Approval Order.

1.15.   "Final Approval Hearing" or "Final Fairness Hearing" means the hearing at which the Court will consider and finally decide whether to approve this Settlement, enter the Final Approval Order, and make such other rulings as are contemplated by this Settlement.   The Final

Approval Hearing shall not be scheduled for a date less than one hundred and twenty (120) days following the mailing of CAFA Notice, as set forth in Section 4.10.

    1.16.   "Final Approval Order" means a final order in a form the same or substantially similar to that attached hereto as **Exhibit E** and entered by the Court, giving Final Approval of the Settlement Agreement and dismissing with prejudice Plaintiff's claims and entering an order according to the terms set forth in this Settlement Agreement.

    1.17.   "Litigation" or "Lawsuit" means the matter of *Scott Ernst v. DISH Network, LLC, DISH Network Service, LLC and Sterling Infosystems, Inc.,* in the United States District Court for the Southern District of New York, Civil Action No. 12-cv-8794-LGS.

    1.18.   "Long Form Notice" means the notice that will be posted on the Settlement Website pursuant to the Notice Plan, in a form the same or substantially similar to that attached hereto as **Exhibit B** and approved by the Court.

    1.19.   "Mail Notices" means the notices that will be mailed to Settlement Class Members pursuant to the Notice Plan, in forms the same or substantially similar to those attached hereto as **Exhibit C** and approved by the Court.

    1.20.   The "MVR Record Settlement Class" means Consumers for whom Sterling issued a consumer report on or after December 4, 2010, where the report contained one or more items of information in the motor vehicle records ("MVR") section of the report which predate the report by more than seven years.  Consumers for whom Sterling's records indicate a salary that was or was reasonably likely to equal or exceed $75,000 are excluded from the MVR Record Settlement Class.  Based on the records maintained by Sterling, this class will consist of approximately 75,000 Consumers.

    1.21.   "Named Plaintiff" or "Plaintiff" means the Plaintiff Scott Ernst.

1.22.   "Notice Mailing Date" means the date that the Mail Notices will be mailed, which shall be no later than thirty (30) days after Preliminary Approval.

1.23.   "Notice Plan" means the plan for disseminating notice to Settlement Class Members, as described in Sections 4.1 through 4.11 herein.

1.24.   "Opt-Out and Objection Deadline" means the date by which opt-out requests or objections must be filed by Settlement Class Members, which shall be no later than sixty (60) days after the Notice Mailing Date.

1.25.   "Payment Notices" means the notices sent to the Settlement Class Members at the time of payment pursuant to Sections 8.5 through 8.8.1 of this Settlement Agreement.

1.26.   "Preliminary Approval" means the preliminary approval of the Settlement Agreement by the Court, conditional certification of the Settlement Classes, and approval of the method and content of notice to the Settlement Classes.

1.27.   "Released Claims" means all Claims released by this Settlement, as addressed in Sections 10.1 through 10.3.7 below.

1.28.   "Released Parties" means Sterling, its parents, subsidiaries, affiliates, divisions, officers, directors, shareholders, employees, associates, agents, control persons, advisors, representatives, consultants, insurers and reinsurers, accountants, attorneys, successors, assignors, assignees, and/or assigns and its respective subsidiaries, affiliates, stockholders, departments, and each of their respective present, former or future officers, directors, shareholders, agents, control persons, advisors, employees, representatives, consultants, insurers and reinsurers, accountants, attorneys, and any representative of the above, regardless of the legal theory by which that person or entity could be asserted to be liable for any Released Claim.

1.29.   "Settlement" means the agreement between the Named Plaintiff as proposed representative of the Settlement Classes, and Sterling, to settle and compromise, fully, finally, and forever, the Named Plaintiff's and the Settlement Class Members' claims in the Litigation against Sterling, as memorialized in this Settlement Agreement and the accompanying documents attached hereto.

1.30.   "Settlement Administrator" shall mean the administrator for the Settlement Agreement that Class Counsel has proposed, as identified in Section 3.2.

1.31.   "Settlement Agreement" means this Settlement Agreement and Release.

1.32.   "Settlement Classes" means, collectively, the Criminal Record Settlement Class, the MVR Record Settlement Class, and the DISH Contractor Settlement Class.

1.33.   "Settlement Class Member" means all Consumers in the Settlement Classes provided, however, that "Settlement Class Member" shall exclude: (i) all Consumers who timely and validly request exclusion from the Settlement Class; (ii) all Consumers who would otherwise qualify for membership in the "Settlement Classes" for which the Consumer previously has released all Claims as to the Defendant; (iii) Defendant's officers, directors, and employees; (iv) Defendant's attorneys; (v) Plaintiff's attorneys; and (vi) any judge or other individual who has presided over either mediation or disposition of this case and the members of his or her immediate family.

1.34.   "Settlement Funds" means the amounts paid pursuant to Section 8.1.1 herein. The Settlement Funds shall be inclusive of any and all service awards, Attorneys' Fees, costs, expenses, notice to the class members, and settlement administration costs.

1.35.   "Settlement Website" means the internet website established by the Settlement Administrator for purposes of facilitating notice to, and communicating with, the Settlement Class.

1.36.   "Valid Claim" means a valid claim filed by an MVR Record Settlement Class Member or DISH Contractor Settlement Class Member pursuant to Sections 6.1.1 through 6.2.3.

## II.   NO ADMISSION OF LIABILITY OR TO THE ELEMENTS OF CLASS CERTIFICATION

2.1.   Denial of Wrongdoing or Liability.  Defendant has asserted and continues to assert many defenses in this Litigation and has expressly denied and continues to deny any fault, wrongdoing or liability whatsoever arising out of the conduct alleged in the Litigation.  Defendant expressly denies any fault, wrongdoing or liability whatsoever, as well as the validity of each of the claims and prayers for relief asserted in the Litigation against Defendant.  The Parties expressly acknowledge and agree that neither the fact of, nor any provision contained in, this Settlement Agreement, nor any of the implementing documents or actions taken under them, shall constitute or be construed as any admission of the validity of any claim, any status, or any fact alleged in the Litigation or any fault, wrongdoing, violation of law, or liability of any kind on the part of Defendant and/or the Released Parties, or any admission by Defendant and/or the Released Parties of any claim or allegation made in any action or proceeding against Defendant.  Defendant has denied and continues to deny each and all of the claims and allegations in the Litigation.  Further, Plaintiff expressly states, and will state in his Motion for Preliminary Approval of the Class Action Settlement, that there are specific facts in this case which were such that the Classes' ability to prove willfulness was in doubt and was a contributing factor to the Settlement.  Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement and/or the Settlement, or Defendant's or Plaintiff's willingness to enter into

this Settlement Agreement, nor any or all negotiations, communications, and discussions associated with the Settlement are, or may be construed as, or may be used in any proceeding as, an admission by or against Defendant or Plaintiff of any fault, wrongdoing or liability whatsoever, or any infirmity of any claims or defenses asserted by Defendant or Plaintiff.

     2.2.    No Admission by Defendant of Elements of Class Certification.   Defendant denies that a class should be certified other than for purposes of this Settlement and reserves its right to contest any class certification motion should this Settlement Agreement not be approved by the Court.   Defendant contends that this Litigation could not be certified as a class action under Federal Rule of Civil Procedure 23, including Rule 23(b)(3).   Nothing in this Settlement Agreement shall be construed as an admission by Defendant that this Litigation or any similar case is amenable to class certification for trial purposes.   Furthermore, nothing in this Settlement Agreement shall prevent Defendant from opposing class certification or seeking de-certification of the conditionally certified Settlement Classes if Final Approval of this Settlement is not obtained, or not upheld on appeal, including any review by the United States Supreme Court.

### III.    MOTION FOR PRELIMINARY APPROVAL

     3.1.    On January 9, 2015, Class Counsel shall file this Settlement Agreement with the Court together with a motion for Preliminary Approval that seeks entry of an order that would, for settlement purposes only: (i) certify conditional settlement classes under Federal Rule of Civil Procedure 23(b)(3) composed of the Settlement Class Members; (ii) preliminarily approve the proposed Settlement Agreement; (iii) approve the proposed Mail Notices to the Settlement Classes and Claim Form in forms the same or substantially similar to those attached hereto as **Exhibits A** through **C**; (iv) certify the Named Plaintiff as representative of the Settlement

Classes; (v) appoint Class Counsel; (vi) approve the proposed notice plan; and (vii) appoint the proposed Settlement Administrator.

3.2.    The Parties solicited competitive bids from private companies for the position of Settlement Administrator.  Class Counsel will cause to be hired Dahl Administration, LLC, as the Settlement Administrator.  The Settlement Administrator shall be responsible for carrying out the specified tasks set forth below, including, but not limited to, maintaining records of all its activities, including the dates of Mail and Payment Notices, receipt of Claim Forms, mailed checks, returned mail, and any other communications and attempted communications with the members of the Settlement Classes.

### IV.    NOTICE PLAN

4.1.    Defendant agrees to use commercially reasonable methods to identify the lists of Settlement Class Members in the Settlement Classes and to create the class lists.  Each class list will consist of the Settlement Class Members in the respective Settlement Class.  Defendant agrees to use commercially reasonable methods to provide to the Settlement Administrator a list of names for the Settlement Class Members on the class lists.  In addition to the name of the putative class member on each class list, Defendant agrees to use commercially reasonable methods to provide the most recent mailing address found in and/or available from its records, to the extent such information exists and can be systematically retrieved.  The mailing addresses will be electronically checked and updated against the U.S.P.S. National Change of Address database by the Settlement Administrator.  The Parties agree that Defendant shall not be required to search beyond the records already maintained by it to locate class member information.  The class lists shall be used solely for the purpose of effectuating the Settlement.   In all circumstances, membership in the Settlement Classes shall be exclusively limited to those

individuals who are on the class lists. Defendant shall not assert any of the release provisions of this Settlement Agreement against any individual unless that individual is included on one or more of the class lists. Nor shall any individual not included on the class list be entitled to receive any benefit from this Settlement Agreement. Defendant shall provide the class lists to the Settlement Administrator no later than ten (10) business days after the Court issues the Preliminary Approval Order.

4.2.    Notice Process Generally.   For purposes of providing court-approved class notices and establishing that the best practicable notice has been given, the provision of the Mail Notice will be accomplished in accordance with the following provisions.  Within thirty (30) days following Preliminary Approval (i.e. by the Notice Mailing Date), the Settlement Administrator shall cause the Mail Notices (in a form the same or substantially similar to those attached hereto as **Exhibit C**), to be sent by U.S. mail, postage prepaid to each Settlement Class Member identified on one of the class lists. Each Settlement Class Member shall receive a notice which informs them which Settlement Class(es) they are a member of, and whether or not they are required to return a Claim Form. Neither the Parties nor the Settlement Administrator shall have any further obligation to send Mail Notice to the Settlement Class Members. For any mailing that is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator shall re-mail the Mail Notice to that forwarding address. The Settlement Administrator shall have no further obligation with respect to any other forms of returned mail.

4.3.    Mail Notice for MVR Record Settlement Class Members and DISH Contractor Settlement Class Members. The Mail Notice for the members of the MVR Record Settlement Class and the DISH Contractor Settlement Class shall include a postage pre-paid Claim Form pre-

addressed to the Settlement Administrator, in the form attached as **Exhibit A**.  The Claim Form shall bear a stamped claim number unique for each recipient which shall state that each member of the MVR Record Settlement Class or the DISH Contractor Settlement Class must return the Claim Form to be eligible to receive a share of the Settlement Funds pursuant to Section 6.1.1 through 6.2.3.  Any member of the MVR Record Settlement Class or the DISH Contractor Settlement Class who does not return a Claim Form will not be eligible for payment resulting from the Claims Process.

4.4.  Internet Notice.  The Settlement Administrator shall establish an Internet website containing information about the Settlement.  The Settlement Website will be accessible as of the Notice Mailing Date.  The Settlement Website will set forth the following information: (i) the operative Amended Complaint; (ii) the full text of the Settlement Agreement; (iii) the Mail Notices; (iv) the Long Form Notice; (v) the Preliminary Approval Order and other relevant orders of the Court; (vi) the Claim Form; and (vii) contact information for Class Counsel and the Settlement Administrator.  Any information appearing on the website in addition to the above-listed documents shall be subject to joint approval of the Parties.  The Settlement Website shall be disestablished within sixty (60) days following the mailing of the last Payment Notice.

4.5.  Telephone Assistance Program.  The Settlement Administrator will establish a toll-free telephone number, which will be staffed by the Settlement Administrator, to answer questions from Settlement Class Members.  The toll-free number will provide access to live support, a voice response unit ("VRU") or a combination of live support and VRU.  It shall also offer a Spanish language alternative number and VRU.

4.6.  Expenses of Notice and Administration.  All Mail Notice, Payment Notice, claims and other class administration costs, excluding only the costs associated with Defendant's

creation of the class lists pursuant to Section 4.1, shall be invoiced by the Settlement Administrator and paid promptly from the Settlement Funds.

4.7.    Furthermore, with respect to any of the costs of any mailing contemplated herein, no later than fifteen (15) days after Preliminary Approval, the Class Administrator shall provide to Class Counsel a detailed statement of the mailing costs that will be incurred.  Subject to approval of Class Counsel, Defendant shall transfer to the Settlement Administrator, by draft or wire, the sum required to accomplish the mailing of the Mail Notices as set forth in Section 8.1.1.

4.8.    The total expenses associated with Mail Notice, Payment Notice, claims, and other class administration costs shall not increase the amount paid by Defendant as part of the Settlement under any circumstances.  Any and all payments for class administration shall come from the Settlement Funds.

4.9.    All costs of Mail Notice, Payment Notice, claims and other class administration costs shall be paid from the Settlement Funds before the calculation of net settlement payments to the Settlement Class Members.

4.10.    Notice Under Class Action Fairness Act of 2005 ("CAFA Notice").    The Settlement Administrator will send the CAFA Notice in accordance with 28 U.S.C. § 1715, not later than ten (10) days after this Settlement Agreement is filed with the Court.

4.11.    Confidentiality.  The Settlement Administrator (and any person retained by the Settlement Administrator) shall sign a confidentiality agreement in a form agreed to by Class Counsel and Defendant's Counsel.    The confidentiality agreement will provide that the Settlement Administrator (and any person retained by the Settlement Administrator) shall treat as confidential the names, addresses and all other identifying information concerning the Settlement

15

Class Members.   The confidentiality agreement will further provide that the Settlement Administrator (and any person retained by the Settlement Administrator) shall use such information only for the purposes of fulfilling the Settlement Administrator's duties and responsibilities as provided for under this Settlement Agreement.

## V.    PROCEDURES FOR OPT-OUTS AND OBJECTIONS

5.1.    Opt-Out Procedures for Settlement Class Members.   The Mail Notices contain information about how a Settlement Class Member may opt-out of the Settlement, as well as the potential implications of doing so, including that opting out may preclude later participation in any class action against Defendant.   A Settlement Class Member may request to be excluded from the Settlement Classes by sending a written request for exclusion to the Settlement Administrator.   To be valid, a request for exclusion must be personally signed by the Settlement Class Member and must include: (i) name, address, telephone number, and the last four digits of the Settlement Class Member's Social Security number; (ii) a statement that he or she is a member of one or more of the Settlement Classes; and (iii) the following statement: "I request to be excluded from the class settlement in *Ernst v. Sterling Infosystems, Inc.*"   Opt-out requests must be postmarked no later than the Opt-Out and Objection Deadline.   If an opt-out request bears no post-mark, or if the postmark is illegible, it must be received by the Settlement Administrator no later than seven (7) days after the Opt-Out and Objection Deadline. No person within the Settlement Classes, or any person acting on behalf of or in concert or participation with that person, may exclude any other person within the Settlement Classes from the Settlement Classes. In no event shall persons who purport to opt-out of the Settlement Classes as a group, aggregate, or class involving more than one person be considered valid opt-outs. Requests for exclusion that do not comply with any of the foregoing requirements are invalid.

5.2.    List of Opt-Outs.  Upon request, and in any event no later than ten (10) business days after Opt-Out and Objection Deadline, the Settlement Administrator shall provide to Class Counsel and Defendant's Counsel a complete list of all persons who have properly opted-out of the Settlement together with copies of the opt-out requests.

5.3.    Representation of Objectors and Opt-Outs.   Class Counsel agree that this Settlement Agreement is fair, reasonable, and in the best interest of the Settlement Class Members.  Class Counsel agree that Settlement Class Members who object to the Settlement Agreement should be represented by counsel who do not agree that the Settlement Agreement is fair, reasonable, and in the best interest of the Settlement Class Members.  Class Counsel agree not to represent any individuals who opt-out of the Settlement Agreement in any future litigation against the Released Parties that asserts the claims at issue in this Litigation.

5.4.    Objections from Settlement Class Members.  Any Settlement Class Member who has not previously opted-out in accordance with the terms above may object to the Settlement in writing and/or appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of Attorneys' Fees and costs and the service award to Plaintiff.  However, no individual within the Settlement Classes shall be heard, and no objection may be considered, unless the individual serves the objection no later than the Opt-Out and Objection Deadline.  In order to allow class members to consider Class Counsel's requested compensation before deciding whether to object, Class Counsel's motion for Attorneys' Fees and costs shall be filed at least fifteen (15) days before the Opt-Out and Objection Deadline, and after filing, the motion and any supporting memoranda shall be immediately posted on the Settlement Website.

Copies of all objection papers must be sent to the Settlement Administrator. All objections must include: (i) the objector's name, address, telephone number, and the last four digits of his or her Social Security number; (ii) a statement that he or she is a member of one or more of the Settlement Classes; (iii) the factual basis and legal grounds for the objection to the Settlement; (iv) the identity of any witnesses whom the objector may call to testify at the Final Fairness Hearing; and (v) copies of any exhibits the objector may seek to offer into evidence at the Final Fairness Hearing. The written objection must indicate whether the objector and/or his or her lawyer(s) intend to appear at the Final Fairness Hearing. Any attorney who intends to appear at the Final Fairness Hearing must also enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than seven (7) business days before the Final Fairness Hearing. No later than twenty-five (25) days before the Final Fairness Hearing, Class Counsel shall file indexed copies of any objections via the Court's "ECF" system. To the extent necessary or desired, the Parties may respond to any properly filed objections no later than ten (10) days before the Final Fairness Hearing.

## VI. CLAIMS PROCESS FOR MVR RECORD AND DISH CONTRACTOR SETTLEMENT CLASS MEMBERS

6.1.1. Members of the MVR Record Settlement Class and the DISH Contractor Settlement Class who elect to submit a Claim Form in order to be eligible for a share of the Settlement Funds must submit such claims so that they are postmarked no later than sixty (60) days after the Notice Mailing Date. If a Claim Form bears no postmark, or if the postmark is illegible, it must be received by the Settlement Administrator no later than sixty-seven (67) days after the Notice Mailing Date.

6.1.2. Submission of Claim Forms shall be permitted commencing on the first day on which notice is disseminated.

6.1.3. To be eligible to receive a share of the applicable Settlement Funds, a member of the MVR Record Settlement Class or the DISH Contractor Settlement Class must complete a Claim Form, which shall be provided within the Mail Notice to the members of the MVR Record Settlement Class and the DISH Contractor Settlement Class and also made available for download on the Settlement Website or by request from the Settlement Administrator. The Settlement Website shall provide complete instructions for completion of this process.

6.1.4. Claim Forms submitted by U.S. mail shall be mailed to a separate, dedicated post office box established by the Settlement Administrator exclusively for the purpose of receiving such claims as provided herein.

6.1.5. Deceased Claimants. Claim Forms may be filed by deceased members of the MVR Record Settlement Class and the DISH Contractor Settlement Class through authorized representatives of their estate if appropriate documentation is provided. Any such claim paid shall be made payable to the estate of the deceased member of the MVR Record Settlement Class or the DISH Contractor Settlement Class.

6.2.1. Determining the Validity of Claims. Claim Forms that are incomplete, inaccurate, or submitted on behalf of someone who is not a member of the Settlement Classes shall be rejected. The instructions shall provide that any failure to provide accurate information, any failure to submit the required representations, and any failure to properly sign a Claim Form will result in rejection of the claim.

6.2.2. The Settlement Administrator shall have the authority to determine whether a claim made by any member of the MVR Record Settlement Class or the DISH Contractor Settlement Class is a Valid Claim. The Settlement Administrator's determination in this regard shall be final and non-appealable unless Class Counsel or Defendant's Counsel disagree. If

counsel disagree regarding the validity of a claim, they shall meet and confer in good faith with one another and the claimant and make an effort to resolve the dispute. In the event such a dispute cannot be resolved, they shall submit the dispute to the Court for resolution. Any member of the MVR Record Settlement Class or the DISH Contractor Settlement Class who opts not to return the Claim Form and/or whose Claim is determined not to be a Valid Claim shall in all other respects be bound by the terms of this Settlement Agreement and by the Final Approval Order entered in the Litigation.

6.2.3. The Settlement Administrator shall notify, in a prompt fashion, any claimant whose claim has been rejected, setting forth the reasons therefore. The Settlement Administrator shall timely provide copies of all rejection notices to Class Counsel and to Defendant's Counsel. A Claimant shall have an additional fourteen (14) days after the date this notice is mailed to correct and resubmit the defective claim, but any subsequent determination by the Class Administrator on any resubmitted Claim Form shall be final.

## VII.    FINAL FAIRNESS HEARING AND FINAL APPROVAL

7.1.    Final Fairness Hearing. The Parties will jointly request that the Court hold the Final Fairness Hearing to consider approval of the Settlement of the Litigation as provided for herein not less than one hundred and twenty (120) days after Preliminary Approval. On or before a date at least ten (10) days prior to the Final Fairness Hearing, Class Counsel shall file a motion for entry of the Final Approval Order. The Parties agree that, upon entry, the Final Approval Order constitutes a final judgment dismissing the Litigation with prejudice.

7.2.    Final Approval. All relief contemplated by this Settlement Agreement is expressly contingent upon the Settlement Agreement receiving the Court's Final Approval.

## VIII.   SETTLEMENT FUNDS

8.1.1.  Creation of and Deposit Into Settlement Funds.  There shall be three settlement funds created as part of this Settlement Agreement.  The Criminal Record Settlement Fund shall consist of the sum of $4,125,000.  The MVR Record Settlement Fund shall consist of the sum of $375,000.  The Dish Contractor Settlement Fund shall consist of the sum of $250,000.  Class Counsel, in conjunction with the Settlement Administrator, shall establish escrow accounts or equivalent accounts at a federally-insured financial institution (the "Financial Institution") acceptable to the Parties, which shall be considered funds created as a result of this Settlement Agreement.  The Settlement Administrator shall direct the Financial Institution to make distributions from the Settlement Funds only in accordance with this Settlement Agreement.  No funds shall be distributed or paid by the Financial Institution without written confirmation from both Class Counsel and Defendant's Counsel.  Class Counsel shall promptly notify Defendant's Counsel of the date of the establishment of the account.  Within twenty (20) business days following Preliminary Approval, Defendant shall transfer to the Settlement Administrator, by draft or by wire, the sum required to accomplish the mailing of the Mail Notices.  Within ten (10) business days after Final Approval, Defendant shall transfer to the Settlement Administrator, by draft or by wire, the remainder of the total settlement amount.   The Settlement Funds may not be commingled with any other funds and may be held in cash, cash equivalents, certificates of deposit or instruments insured by an arm of or backed by the full faith and credit of the United States Government.  Interest earned, if any, on the Settlement Funds shall be for the benefit of the Settlement Classes in the event this Settlement Agreement is not terminated by the Defendant and the Effective Date otherwise occurs.

8.1.2.  Criminal Record Settlement Fund Apportionment.  The members of the Criminal Record Settlement Class who do not opt-out of the Settlement are entitled to payment from the

Criminal Record Settlement Fund. The fund shall be allocated such that each member of the Criminal Record Settlement Class who does not opt-out will receive an equal share of the Settlement Fund. The amount of each settlement check is subject to a proportionate deduction for Attorneys' Fees and costs, any service award approved by the Court, the costs and expenses of class administration incurred by the Settlement Administrator, and Taxes and Tax Expense, in accordance with Section 8.7.3 below.

8.1.3. MVR Record Settlement Fund Apportionment. The members of the MVR Record Settlement Class who submit a Valid Claim are entitled to payment from the MVR Record Settlement Fund. The fund shall be allocated such that each member of the MVR Settlement Class who submits a Valid Claim will receive an equal share of the Settlement Fund. The amount of each settlement check is subject to a proportionate deduction for Attorneys' Fees and costs, any service award approved by the Court, the costs and expenses of class administration incurred by the Settlement Administrator, and Taxes and Tax Expense, in accordance with Section 8.7.3 below.

8.1.4. The DISH Contractor Settlement Fund Apportionment. The members of the DISH Contractor Settlement Class who submit a Valid Claim are entitled to payment from the DISH Contractor Settlement Fund. The fund shall be allocated such that each member of the DISH Contractor Settlement Class who submits a Valid Claim will receive an equal share of the Settlement Fund. The amount of each settlement check is subject to a proportionate deduction for Attorneys' Fees and costs, any service award approved by the Court, the costs and expenses of class administration incurred by the Settlement Administrator, and Taxes and Tax Expense, in accordance with Section 8.7.3 below.

8.1.5.   Costs of Notice and Administration Expenses Deduction.  Costs of notice and any other expenses incurred in the administration of the Settlement shall be deducted from the Settlement Funds in accordance with Section 8.7.3 below.

8.2.1.   Settlement Fund Tax Status.  The Parties agree to treat the Settlement Funds as being at all times "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-1. The Settlement Administrator shall timely make such elections as necessary or advisable to carry out the provisions of this Section, including the "relation back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  For the purpose of Treasury Regulation § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Settlement Administrator.  The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Funds (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns shall be consistent with this Section and in all events shall reflect that all federal or state income taxes ("Taxes") (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Funds, if any, shall be paid out of the Settlement Funds, as provided in Section 8.2.2 hereof.

8.2.2.   All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to any income earned by the Settlement Funds, including any Taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the

Settlement Funds for any period during which the Settlement Funds do not qualify as "qualified settlement funds" for federal or state income tax purposes, and (b) expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns herein ("Tax Expenses"), shall be paid out of the Settlement Funds.  In no event shall the Released Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses.  The Settlement Administrator shall indemnify and hold the Released Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Funds without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)); the Released Parties are not responsible therefore nor shall they have any liability with respect thereto.  The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

8.3.1.  Attorneys' Fees.  No later than forty-five (45) days after the Notice Mailing Date, Class Counsel shall file an application to the Court for reimbursement of Attorneys' Fees and costs from the Settlement Funds, seeking costs not to exceed actual incurred and documented costs plus Attorneys' Fees not to exceed one-third of the total of the Settlement Funds.  The application shall be noticed to be heard at the Final Fairness Hearing.  Defendant will not oppose

such a request.  To the extent the Court approves an award of Attorneys' Fees in an amount that is less than the amount referenced above, the difference will remain in the Settlement Funds to be used for the benefit of the Settlement Class Members, as detailed below.  Attorneys' Fees and costs awarded by the Court shall be deducted from the Settlement Funds in accordance with Section 8.7.3 below.

8.3.2.   The application for Attorneys' Fees, and any and all matters related thereto, shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement.  Plaintiff and Class Counsel agree that this Settlement Agreement is not conditioned on the Court's approval of Attorneys' Fees in the requested amount or in any amount whatsoever.  The Court's ruling on the application or applications for such fees shall not operate to terminate or cancel the Settlement.

8.3.3.   Defendant shall have no additional responsibility for, nor any liability with respect to, the payment of Attorneys' Fees and costs to Class Counsel.  The sole source of any payment of Attorneys' Fees and costs shall be the Settlement Funds.

8.3.4.   Payment of Attorneys' Fees and Costs and Service Award.  Attorneys' Fees and costs, and any service award approved by the Court, will be paid through distribution from the Settlement Funds by wire transfer from the Settlement Administrator within fifteen (15) days after the Effective Date.

8.4.   Service Award to the Named Plaintiff.  Concurrent with the filing of the application for Attorneys' Fees, Class Counsel shall file an application to the Court for a service award, not to exceed $5,000 to be paid to Plaintiff for serving as class representative in support of the Settlement.  Defendant does not oppose such a request.  To the extent the Court approves a service award in an amount less than $5,000, the difference will remain in the Settlement Funds

for the benefit of the Settlement Class Members.  Any service award payment shall be funded through the Settlement Funds.  Plaintiff and Class Counsel agree that this Settlement Agreement is not conditional on the Court's approval of a service award in the requested amount or in any amount whatsoever.  Any service award approved by the Court shall be deducted from the Settlement Funds in accordance with Section 8.7.3 below.

8.5.    Settlement Class Member Payments.  The members of the Criminal Record Settlement Class who do not opt-out of the Settlement, and the members of the MVR Record Settlement Class and the DISH Contractor Settlement Class who submit a Valid Claim are entitled to payment pursuant to the processes set forth in Section 8.8.1.  The amount of each settlement check is subject to deduction for Attorneys' Fees and costs, any service award approved by the Court, the costs and expenses of class administration incurred by the Settlement Administrator, and Taxes and Tax Expense in accordance with Section 8.7.3 below.

8.6.    All settlement checks shall state: "This payment is tendered to you as a class member in *Scott Ernst v. Sterling Infosystems, Inc.,* in the Southern District of New York, Civil Action No. 12-cv-8794-LGS, in consideration for your release of the Released Parties as set forth in the Class Action Settlement Agreement and Release."

8.7.1.  Upon Preliminary Approval, the Settlement Administrator shall disburse funds as previously contracted for the costs of notice and related administrative expenses incurred with respect to effectuating the Notice Plan.

8.7.2.  The Settlement Administrator shall distribute payments from the Settlement Funds pursuant to the distribution plan set forth in Section 8.8.1.  The Settlement Administrator may deduct from the Settlement Funds any and all reasonable and necessary expenses for the administration of such payments (*e.g.,* costs associated with generating and

mailing checks), as well as all reasonable expenses for the determinations as to the review of the Claim Forms.

8.7.3.  Allocation of deductions between Settlement Funds.   The Settlement Administrator shall retain records related to each Settlement Fund such that all fees, costs and other expenses are deducted from the respective funds in accordance with this Section.

a)  Attorneys' Fees shall be deducted from each fund in proportion to the size of the fund.  For example, if the Court grants a request from Class Counsel for fees consisting of one-third of the Settlement Funds, one-third of each settlement fund shall be allocated to fees.

b)  All costs of settlement administration directly attributable to the administration of a particular fund shall be deducted from that fund.  For example, the cost of mailing notice to the Criminal Record Settlement Class shall be deducted from the Criminal Record Settlement Fund.

c)  All other deductions from the Settlement Funds, including but not limited to the service award to the Named Plaintiff, and costs of administration not attributable to any specific fund (such as the costs of maintaining the Settlement Website or for overall project administration), shall be deducted from each of the Settlement Funds in proportion to the number of members in the associated Settlement Class.

8.8.1.  General Distribution Plan.  Within sixty (60) days after the Effective Date, the Settlement Administrator shall mail payments out of the Settlement Funds to the Settlement Class Members, as set forth in Sections 8.5 and 8.6, via U.S. mail.  If a Settlement Class Member falls into two or more Settlement Classes, only one check will be sent reflecting the total payment due.

The Payment Notices accompanying the payment check shall notify the recipients that the checks must be cashed within ninety (90) days from the date on the Payment Notice and that the enclosed check shall not be valid after that date.  Ninety (90) days after the date on the Payment Notice, if the check has not been deposited or cashed, the amount of the check shall remain in the Settlement Funds for further distribution to the *cy pres* recipients under Section 8.9.  No amount shall revert to Defendant.

8.9.    In conjunction with the motion for Final Approval, the Parties shall propose a non-profit organization or foundation to receive any residue from the Settlement Funds under the terms set forth herein.  Any excess funds remaining in the Settlement Funds after all distributions have been made in accordance with this Agreement shall then be donated to the *cy pres* entities selected by the Parties, subject to approval by the Court.  The *cy pres* distributions shall be distributed by the Settlement Administrator within one hundred (100) days of the mailing of the final payment under the provisions of Section 8.8.1.  For purposes of any *cy pres* distribution, the Parties propose that fifty percent (50%) of any *cy pres* funds be provided to the Southern Coalition for Social Justice (SCSJ) of Durham, North Carolina, a non-profit charitable organization exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code, solely for the purpose of fulfilling or continuing that organization's obligations under an agreement with the Equal Justice Works AmeriCorps Legal Fellowship program and subject to all the conditions and requirements of that program, with the additional condition that no *cy pres* funds will be used for litigation regarding claims under the Fair Credit Reporting Act or against consumer reporting agencies as defined by the Fair Credit Reporting Act.  This restriction does not preclude SCSJ from accepting other funds to support such work, nor limit any other activities consistent with its mission.  The Parties agree and propose that the remaining fifty percent (50%)

of any *cy pres* funds be provided to the Salvation Army, a non-profit charitable organization exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code, solely for the purpose of continuing that organization's programs that provide re-entry assistance to individuals.

8.10.   Capped Fund.  Except for Defendant's costs to generate the class lists pursuant to Section 4.1, all of the following must be paid from the Settlement Funds (i) notice and administration costs, (ii) payments to the Settlement Class Members; (iii) payments of any service award to the Named Plaintiff; (iv) payments to Class Counsel for Attorneys' Fees and costs; (v) and any Taxes and Tax Expense.  The Parties and their respective counsel agree that under no circumstances will Defendant and/or Released Parties pay or cause to be paid more than the $4,750,000 total payment contemplated by this Settlement Agreement.

8.11.   The Parties Agree, and the Court shall order, that no Settlement Class Member has a vested interest in any amount to be paid to him or her under the Settlement Agreement unless and until he or she has cashed a settlement check under the parameters and timeframe set forth herein.

## IX.  NON-MONETARY RELIEF

9.1.   Changes to MVR Reporting Policies.  Beginning on the Effective Date, Sterling will not report any charge, accident or civil citation in the motor vehicle section of a consumer report, which did not result in a criminal conviction, and which occurred more than seven years prior to the date of the report.

9.2.   Changes to Criminal Reporting Policies.  Beginning on the Effective Date, Sterling will not report any criminal count charged in a criminal case in which a conviction

occurred more than seven years prior to the date of the report unless that charge itself resulted in a conviction.

9.3.    Changes to Processing of DISH Contractor Reports.  Beginning on the Effective Date, Sterling will not provide consumer reports to the DISH Defendants regarding applicants or individuals working for third-party contractors who provide satellite installation services for DISH, unless or until it receives from DISH a certification of the type required by 15 U.S.C. § 1681b(b)(1) which explicitly applies to such contractors.

## X. RELEASE OF CLAIMS

10.1.    Upon the Effective Date, the Named Plaintiff, for himself and as representative of the Settlement Classes, and on behalf of each member of the Settlement Classes and/or his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally and forever settled, released and discharged the Released Parties of and from the Released Claims.

10.2.    Subject to the requirements of due process, this Settlement Agreement shall bind all Settlement Class Members and all of the Released Claims shall be dismissed with prejudice and released as against the Released Parties, even if a Settlement Class Member claims or can later show that he or she did not receive actual notice of the Settlement prior to the Final Approval Hearing.

10.3.1.    Criminal Record and MVR Record Release.  In exchange for the relief described in this Settlement Agreement, the Named Plaintiff and the members of the Criminal Record Settlement Class and the MVR Record Settlement Class and any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents

and/or representatives, and/or anyone acting or purporting to act on their behalf, hereby release the Released Parties from all duties, obligations, demands, claims, actions, causes of action, suits, damages, rights or liabilities of any nature and description whatsoever, arising under 15 U.S.C. § 1681c, and/or arising under FCRA State Equivalents comparable to 15 U.S.C. § 1681c related to any consumer reports prepared by Sterling and/or the Released Parties, whether known or unknown, concealed or hidden, suspected or unsuspected, anticipated or unanticipated, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, fixed or contingent related to the allegations in the Complaint, Amended Complaint and/or any claims that could have been brought arising out of the allegations set forth in the Complaint and Amended Complaint.  It is the intent of the Parties that this release cover every possible Claim that could have been brought under 15 U.S.C. § 1681c and/or FCRA State Equivalents comparable to 15 U.S.C. § 1681c, regardless of whether it was a Claim relating to accuracy, privacy, disclosure, notification, dispute processing, or any other requirement imposed by federal or state law in connection with furnishing consumer reports.  This release includes, but is not limited to all claimed or unclaimed compensatory damages, actual damages, damages stemming from any allegations of willfulness, recklessness, damages for emotional distress, statutory damages, consequential damages, incidental damages, treble damages, punitive and exemplary damages, as well as all Claims for equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory that was alleged or could have been alleged in the Litigation, including but not limited to any and all claims under deceptive or unfair practices statutes, or any other statute, regulation or judicial interpretation.  This release also includes interest, attorneys' fees, costs and expenses arising out of any of the Claims described above.

Nothing in this Settlement Agreement shall be deemed a release of the Parties' respective rights and obligations under this Settlement Agreement.

    10.3.2.   DISH Contractor Release.  In exchange for the relief described in this Settlement Agreement, the Named Plaintiff and the members of the DISH Contactor Settlement Class and any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf, hereby release the Released Parties from all duties, obligations, demands, claims, actions, causes of action, suits, damages, rights or liabilities of any nature and description whatsoever, arising under 15 U.S.C. § 1681b, and/or arising under FCRA State Equivalents comparable to 15 U.S.C. § 1681b related to any consumer reports prepared by Sterling and/or the Released Parties, whether known or unknown, concealed or hidden, suspected or unsuspected, anticipated or unanticipated, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, fixed or contingent related to the allegations in the Complaint, Amended Complaint and/or any claims that could have been brought arising out of the allegations set forth in the Complaint and Amended Complaint.  It is the intent of the Parties that this release cover every possible Claim that could have been brought under 15 U.S.C. § 1681b and/or FCRA State Equivalents comparable to 15 U.S.C. § 1681b, regardless of whether it was a Claim relating to accuracy, privacy, disclosure, notification, dispute processing, or any other requirement imposed by federal or state law in connection with furnishing consumer reports.  This release includes, but is not limited to all claimed or unclaimed compensatory damages, actual damages, damages stemming from any allegations of willfulness, recklessness, damages for emotional distress, statutory damages, consequential damages, incidental damages, treble damages, punitive and exemplary damages, as well as all Claims for equitable, declaratory

or injunctive relief under any federal or state statute or common law or other theory that was alleged or could have been alleged in the Litigation, including but not limited to any and all claims under deceptive or unfair practices statutes, or any other statute, regulation or judicial interpretation.  This release also includes interest, attorneys' fees, costs and expenses arising out of any of the Claims described above.  Nothing in this Settlement Agreement shall be deemed a release of the Parties' respective rights and obligations under this Settlement Agreement.

10.3.3.   The Claims described in Sections 10.3.1 and 10.3.2 are released regardless of whether they are unknown, concealed or hidden, unsuspected, unanticipated, unasserted, unforeseen, contingent, unliquidated, or contingent.

10.3.4.   Waiver of California Civil Code Section 1542.  The Parties agree that this Settlement Agreement shall not require Settlement Class Members to provide to Defendant a general release and that the release is limited to those claims encompassed by the provisions of Sections 10.3.1 through 10.3.3.  Notwithstanding that understanding, to the extent applicable under Sections 10.3.1 through 10.3.3, Plaintiff and the Settlement Class Members acknowledge that they are aware that they may hereafter discover facts in addition to or different from those that they or Class Counsel now knows or believes to be true with respect to the subject matter of these releases, but it is their intention to, and they do hereby, upon the Effective Date of this Settlement Agreement, fully, finally and forever settle and release any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiff and the Settlement Class Members waive any and all rights and benefits afforded by California Civil Code Section 1542, which provides as follows:  "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE

RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." Plaintiff and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable federal or state law relating to limitations on releases.

10.3.5. In addition to the release above, Plaintiff Ernst for himself, hereby fully, finally, and forever settles, releases, and discharges the Released Parties from any Claims whatsoever that were or could have been asserted in the Litigation, including but not limited to any and all claims under the FCRA and/or FCRA State Equivalents.

10.3.6. For the purposes of the release in Sections 10.3.1 and 10.3.2, the Parties agree that Count V of the Amended Complaint, which asserted a claim under 15 U.S.C. § 1681g, is released as to Ernst individually, but is not released as to the Settlement Class Members.

10.3.7. The claims asserted against the DISH Defendants (including but not limited to Counts I through III and Counts VI and VII of the Amended Complaint) are not released in Sections 10.3.1 and 10.3.2 and/or through this Settlement Agreement.

## XI.    TERMINATION AND SUSPENSION

11.1.   Defendant's Rights to Terminate Agreement.    Defendant's willingness to settle this Litigation on a class-action basis and to agree to the certification of conditional Settlement Classes is dependent upon achieving finality in this Litigation, and the desire to avoid the expense of this and other litigation.   Consequently, Defendant shall have the right to terminate this Settlement Agreement, declare it null and void, and have no further obligations under this Settlement Agreement to the Named Plaintiff, Settlement Class Members, or Class Counsel if any of the following conditions subsequently occurs: (i) the Court fails or declines to grant Preliminary Approval pursuant to the terms of the Preliminary Approval Order; (ii) more

34

than 2% of the Settlement Class Members request to opt-out of the Settlement pursuant to Section 5.1; (iii) the Court materially modifies the terms of the Release or the Released Parties; (iv) the Effective Date does not occur for any reason, including the entry of an order by any court that would require either material modification or termination of the Settlement Agreement or the Final Approval Order.

11.2.   The failure of the Court to approve the Attorneys' Fees in the requested amounts, or any amounts whatsoever, shall not be grounds for the Named Plaintiff or Class Counsel to terminate this Settlement Agreement.

11.3.   Effect of Termination on This or Future Litigation.  If this Settlement Agreement is  rejected by the Court or terminated for any reason: (i) the class certification portions of the Settlement Agreement shall have no further force and effect and shall not be offered in evidence or used in the Litigation or in any other proceeding; (ii) counsel for the Parties shall seek to have any Court orders, filings, or other entries in the Court's file that result from this Settlement Agreement set aside, withdrawn, and stricken from the record; (iii) the Settlement Agreement and all negotiations, proceedings, and documents prepared, and statements made in connection with either of them, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, liability, or proposition of law; and (iv) the Parties shall stand in the same procedural position as if the Settlement Agreement had not been negotiated, made, or filed with the Court, and no doctrine of waiver, estoppel, or preclusion will be asserted in any litigated certification proceedings in the Litigation against either party.

11.4.   Effect of Termination on Monies Paid by Defendant to Settlement Agreement.  If this Settlement Agreement is terminated, the Settlement Funds, including any interest earned,

less any Taxes, Tax Expenses, and notice, claims, and other administration costs (including fees, costs, and other expenses of the Settlement Funds) that have been properly disbursed pursuant to this Settlement Agreement, shall be returned to Defendant.

## XII.    PUBLIC STATEMENTS

12.1.    The Parties agree that Class Counsel will not issue or cause to be issued any press release or the equivalent and will not conduct or participate in any press conferences about the Settlement.   The Parties also agree that, after the Settlement is preliminarily approved, Class Counsel may post on their website a mutually agreeable description of the Settlement and resolution of the case.

## XIII.    MISCELLANEOUS PROVISIONS

13.1.    Admissibility of Settlement Agreement.   This Settlement Agreement shall not be offered or be admissible in evidence in any action or proceeding except: (1) the hearings necessary to obtain and implement Court approval of this Settlement; or (2) any hearing to enforce the terms of this Settlement Agreement or any related order by the Court.

13.2.    Successors and Assigns.   The terms of this Settlement Agreement shall apply to and bind the Parties as well as their heirs, successors, and assigns.

13.3.    Communications Relating to Settlement Agreement.   All notices or other formal communications under this Settlement Agreement shall be in writing and sent by mail to the following addresses:

| | |
|---|---|
| E. Michelle Drake, Esq.<br>Nichols Kaster, PLLP<br>4600 IDS Center<br>80 South Eighth Street<br>Minneapolis, MN 55402 | Charles K. Seyfarth, Esq.<br>LeClairRyan, P.C.<br>Riverfront Plaza - East Tower<br>951 E Byrd Street – 8th Floor<br>Richmond, VA 23219 |

Any Party may, by written notice to the other Party, change its designated recipient(s) or notice address provided above.

13.4.   **Defendant's Communications with Consumers in the Ordinary Course of Business.**   Defendant reserves the right to continue communicating with its customers and Consumers, including Settlement Class Members, in the ordinary course of business.   To the extent Consumers initiate communications regarding this Settlement Agreement, Defendant may confirm the fact of a settlement and refer inquiries to the Settlement Administrator.   Nothing herein is intended to prohibit Defendant from communicating with Consumers regarding disputes relating to the provision of consumer reports.

13.5.   **Efforts to Support Settlement.**   The Parties and their counsel agree to cooperate fully in seeking Court approval for this Settlement Agreement and to use their best efforts to effect the consummation of the Settlement and to protect the Settlement Agreement by applying for appropriate orders enjoining others from initiating or prosecuting any action arising out of or related to facts or claims alleged in the Litigation, if so required.

13.6.   **Entire and Voluntary Agreement.**   The Parties intend the Settlement Agreement to be a final and complete resolution of the Litigation.   The Parties agree that the terms of the Settlement Agreement were negotiated at arm's length and in good faith and were reached voluntarily after consultation with competent legal counsel.   There shall there be no presumption for or against any Party that drafted all or any portion of this Settlement Agreement.   This Settlement Agreement contains the entire agreement and understanding concerning the subject matter between the Parties and supersedes all prior negotiations and proposals, whether written or oral.   No other party or any agent or attorney of any other party has made any promise, representation or warranty whatsoever not contained in this Settlement

Agreement and the other documents referred to in this Settlement Agreement to induce them to execute the same. The Parties represent that they have not executed this instrument or the other documents in reliance on any promise, representation, or warranty not contained in this Settlement Agreement and the other documents referred to in this Settlement Agreement. Any modification must be in writing signed by the Parties and their respective counsel and, to the extent necessary, approved by the Court.

13.7.   Headings for Convenience Only.   The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

13.8.   Settlement Agreement Controls.   All of the Exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. To the extent that there is any conflict between the terms of this Settlement Agreement and the Exhibits attached hereto, this Settlement Agreement shall control.

13.9.   Amendments.   The Settlement Agreement may be amended or modified only by a written instrument signed by Defendant or Defendant's Counsel and Plaintiff or Class Counsel, or their respective successors-in-interest.

13.10.   Authorization of Counsel.   Class Counsel, on behalf of the Settlement Classes, are expressly authorized by Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Classes pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Classes that they deem necessary or appropriate. Each attorney executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such attorney has the full authority to do so.

13.11. Confidentiality.  All orders and agreements entered and made during the course of the Litigation relating to the confidentiality and/or proprietary nature of certain information shall survive this Settlement Agreement.

13.12. Court's Jurisdiction.   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement and all orders entered in connection therewith.  The Parties and their attorneys submit to the jurisdiction of the Court regarding these matters.

13.13. Construction. The Parties have cooperated in the mutual drafting and preparation of this Settlement Agreement.  Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any of the Parties.  Before declaring any provision of this Settlement Agreement invalid, a court should first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Settlement Agreement valid and enforceable.

13.14. No Claims Arising from this Settlement Agreement.  No person shall have any claim against any Defendant, Released Party, Defendant's Counsel, Named Plaintiff or Class Counsel based on distribution of benefits made substantially in accordance with this Settlement Agreement or any Settlement Agreement-related order(s) of the Court.

13.15. Applicable Law.  This Settlement Agreement shall, in all respects, be interpreted, construed and governed by and under the laws of the United States of America.  To the extent state law applies for any reason, the laws of the State of New York shall apply.  All judicial proceedings regarding this Settlement Agreement shall be brought only in this Court.  Any notice period set forth in this Settlement Agreement shall be calculated pursuant to the Federal Rules of

Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of New York, to the extent applicable.

13.16. Waiver.  The waiver by one Party of any provision or breach of this Settlement Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

13.17. Counterparts and Date of Agreement.  This Settlement Agreement may be executed in one or more counterparts and by facsimile.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the Parties shall exchange among themselves signed counterparts, and a complete set of executed counterparts shall be filed with the Court.  The Settlement Agreement shall become effective upon its execution by all of the undersigned.

IN WITNESS THEREOF, the Parties hereto have caused this Settlement Agreement to be executed by their duly authorized representatives.

Plaintiff:

_Scott Ernst_
**Scott Ernst**

Dated: January 8 , 2015

NICHOLS KASTER, PLLP

E. Michelle Drake (admitted *pro hac vice*)
Joseph C. Hashmall (admitted *pro hac vice*)
Megan D. Yelle (admitted *pro hac vice*)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile:  (612) 215-6870
drake@nka.com
jhashmall@nka.com
myelle@nka.com

Attorneys for Plaintiff and the Class Members

41

**Plaintiff:**

_____

Scott Ernst

Dated: January _____, 2015

NICHOLS KASTER, PLLP

_____

E. Michelle Drake (admitted *pro hac vice*)
Joseph C. Hashmall (admitted *pro hac vice*)
Megan D. Yelle (admitted *pro hac vice*)
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
drake@nka.com
jhashmall@nka.com
myelle@nka.com

Attorneys for Plaintiff and the Class Members

**Defendant:**

_____

STERLING INFOSYSTEMS, INC.

By: ANDREW PORTER

Its: GENERAL COUNSEL

Dated: January, 8, 2015

41