# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into as of _____August 19_____, 2016 by and between Scott Ernst, Sean Denton and Neil Trotter, individually and as representatives of the Settlement Classes as defined below (collectively, "Plaintiffs"), and Dish Network Service L.L.C. and DISH Network L.L.C., (collectively, "Defendants" or "DISH"). Plaintiffs and Defendants are collectively referred to as the "Parties." This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle all released rights and claims to the extent set forth below, subject to the terms and conditions set forth herein.

## RECITALS

WHEREAS, on December 4, 2012, Plaintiff Ernst filed his initial Complaint ("Complaint") in the United States District Court for the Southern District of New York, styled as *Scott Ernst v. DISH Network, LLC, DISH Network Service, LLC and Sterling Infosystems, Inc.*, Civil Action No. 12-cv-8794-LGS alleging that Defendants and Sterling Infosystems, Inc. ("Sterling") failed to comply with certain provisions of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681, *et seq.*;

WHEREAS, the Complaint alleges certain claims against DISH Network L.L.C. and Dish Network Service L.L.C. and certain, separate claims against Sterling;

WHEREAS, on October 13, 2014, Plaintiffs filed the First Amended Class Complaint ("Amended Complaint"), which reasserted the claims set forth in the Complaint, and advanced additional claims, pled in the alternative, against DISH and Sterling;

WHEREAS, the Plaintiffs claims against Sterling have been resolved in a previous settlement;

WHEREAS, after extensive arm's-length negotiations, significant discovery and a face-to-face meeting of counsel for both sides, numerous telephonic conferences, written exchanges, and ongoing conversations between counsel for the Parties, the Parties have agreed to a settlement of their disputes;

WHEREAS, the Parties are willing to enter into this Settlement Agreement to settle the claims of the Settlement Classes because of, among other reasons, the attendant expense, risks, difficulties, delay, and uncertainties of continued litigation;

WHEREAS, Plaintiffs and Class Counsel believe that this Settlement Agreement provides fair, reasonable, and adequate relief to the Settlement Classes and that it is in the best interest of the Settlement Classes to settle, compromise, and dismiss their claims on the merits and with prejudice as to DISH on the terms set forth below, subject to the approval of the Court of the Settlement Agreement as a whole; and

WHEREAS, DISH denies all claims asserted against it in the Litigation, denies that class certification would be appropriate if the case was litigated rather than settled, and denies all allegations of wrongdoing and liability, but nevertheless desires to settle Plaintiffs' claims on the terms and conditions set forth in this Settlement Agreement solely for the purpose of avoiding the burden, expense, inconvenience and distraction of continuing the proceedings on those issues in the Litigation and putting to rest the controversies engendered.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, IT IS AGREED that the Litigation, and all claims of the Settlement Classes against DISH be settled, compromised, and dismissed on the merits and with prejudice on the terms set forth below,

subject to the approval of the Court.  The recitals stated above are true and accurate and are hereby made a part of the Settlement Agreement.

## I.     DEFINITIONS

As used in this Settlement Agreement, the terms defined below shall have the meanings assigned to them when capitalized in the same fashion as in this Section I.  Any other terms that relate to the consumer reporting industry shall have the customary meaning accorded to those terms in the industry.

1.1.     "Attorneys' Fees" means any attorneys' fees, costs and/or expenses applied for by Class Counsel relating to this Settlement Agreement and approved by the Court.

1.2.     "Claim" means any and all actions, causes of action, claims, rights, proceedings, adjustments, executions, offsets, contracts, judgments, obligations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, variances, covenants, trespasses, damages (including, but not limited to punitive, exemplary or multiple damages), demands (whether written or oral), agreements, promises, liabilities, controversies, charges, penalties, costs, expenses, attorneys' fees and losses of any nature whatsoever, whether in law or in equity, whether by affirmative claim, counterclaim, or setoff, and whether based on any federal law, state law, foreign law or common law right of action or otherwise, foreseen or unforeseen, matured or unmatured, known or unknown, accrued or not accrued, existing now or to be created in the future.

1.3.     "Class Counsel" means Berger & Montague, PC.

1.4.     "Consumer" means a natural person residing in the United States of America or its territories.

1.5.    "Contractor Technicians" means individuals who were employed or engaged for the purpose of performing installation services for DISH by third-party contractors who provided installation services for DISH.

1.6    "DISH" has the meaning ascribed to that term in the Preamble.

1.7    "DISH Counsel" means the following firms and individuals:

Jackson Lewis P.C.

William J. Anthony

1.8    "DISH Network Contractor Program" means a program under which Sterling ran background checks on individuals working for third-party contractors who provided installation services for DISH.  The DISH Network Contractor Program does not include any employees of DISH.

1.9    "Effective Date" is the date on which this Court's entry of the Final Approval Order has become final and non-appealable because the following has occurred:

(i) the expiration of three (3) business days after the time to file a motion to alter or amend the Final Approval Order under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed;

(ii) the expiration of three (3) business days after the time in which to appeal the Final Approval Order has passed without any appeal having been filed (which date shall be deemed to be thirty-three (33) days following the entry of the Final Approval Order, unless the date to take such an appeal shall have been extended by Court order or otherwise, or unless the 33rd day falls on a weekend or a Court holiday, in which case the date for purposes of this Settlement shall be deemed to be the next business day after such 33rd day); and

(iii) if such motion to alter or amend is filed, or if an appeal is taken, three (3) business days after a final, non-appealable determination of any such motion or appeal that permits the consummation of the Settlement.  For purposes of this definition, the term "appeal" includes all writ proceedings.

1.10.    "FCRA" means the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*, and any subsequent amendments thereto.

1.11.    "FCRA State Equivalents" means any statute or regulation of any state, U.S. territory, the District of Columbia, or Puerto Rico, that has the purpose or effect of regulating the collection or reporting of consumer information and related actions.

1.12.    "Final Approval" means the approval of the Settlement Agreement by the Court at or after the Final Approval Hearing, and entry on the Court's docket of the Final Approval Order.

1.13.    "Final Approval Hearing" or "Final Fairness Hearing" means the hearing at which the Court will consider and finally decide whether to approve this Settlement, enter the Final Approval Order, and make such other rulings as are contemplated by this Settlement.

1.14.    "Final Approval Order" means a final order entered by the Court, giving Final Approval of the Settlement Agreement and dismissing with prejudice Plaintiffs' claims and entering an order on the terms and conditions set forth in this Settlement Agreement.

1.15.     "Litigation" or "Lawsuit" means the matter of *Scott Ernst v. DISH Network, LLC, DISH Network Service, LLC and Sterling Infosystems, Inc.,* in the United States District Court for the Southern District of New York, Civil Action No. 12-cv-8794-LGS.

1.16.   "Long Form Notice" means the notice that will be posted on the Settlement Website pursuant to the Notice Plan, in a form agreed upon by the parties and approved by the Court.

1.17.   "Mail Notices" means the notices that will be mailed to Settlement Class Members pursuant to the Notice Plan, in a form agreed upon by the parties and approved by the Court.

1.18.   "Plaintiffs" has the meaning ascribed to that term in the Preamble.

1.19.   "Notice Mailing Date" means the date that the Mail Notices will be mailed, which shall be no later than thirty (30) days after Preliminary Approval.

1.20.   "Notice Plan" means the plan for disseminating notice to Settlement Class Members, as described in Section 5 herein.

1.21.   "Opt-Out and Objection Deadline" means the date by which opt-out requests or objections must be filed by Settlement Class Members, which shall be no later than sixty (60) days after the Notice Mailing Date.

1.22.   "Preliminary Approval" means the preliminary approval of the Settlement Agreement by the Court, conditional certification of the Settlement Classes, and approval of the method and content of notice to the Settlement Classes.

1.23.   "Released Claims" means all Claims released by this Settlement, as addressed in Section 11 below.

1.24.   "Released Parties" means DISH and its predecessors; their parents, direct and indirect subsidiaries and affiliates; the past and present owners, officers, directors, agents, supervisors, employees, subcontractors (including, without limitation, regional service providers), attorneys, insurers, re-insurers, representatives, executors, administrators, third party administrators, trustees and employee benefit plans and

programs of all of the foregoing persons and entities; and the heirs, successors and assigns of all of the foregoing persons and entities, and any representative of all of the foregoing persons and entities, regardless of the legal theory by which that person or entity could be asserted to be liable for any Released Claim.

1.25    "Releasing Parties" means Plaintiffs and all Settlement Class Members, and their direct or indirect parents and subsidiaries, and any of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf.

1.26.    "Settlement Administrator" shall mean the administrator for the Settlement Agreement that has been selected pursuant to Section 3.2.

1.27.    "Settlement Agreement" or "Agreement" means this Settlement Agreement and Release.

1.28.    The "Settlement Classes" mean the following classes:[1]

    a.    The "Authorization Class." All Dish Network Contractor Technicians in the United States who were the subject of a consumer report that was procured (or caused to be procured) by Dish Network after November 30, 2010, who were provided with Forms 1, 2, or 3 prior to Dish procuring a summary report, and who were not provided with any other relevant forms, except for the form produced by Digital Dish as Exhibit G.

    b.    The "Adverse Action Class." All Dish Network Contractor Technicians or Contractor Technician applicants whose summary reports were

---

[1] These classes are the same as those proposed in Plaintiffs' motion for class certification (ECF No. 215).  More information about how membership in the classes is defined, and how class members will be identified can be found in Plaintiff's Memorandum in Support of Class Certification (ECF No. 216).  The motion also included a proposed "Disclosure Class," but the Authorization class is inclusive of that proposed class.

transmitted to Dish Network and who were adjudicated as "high risk" at any time after November 30, 2010.

1.29.  "Settlement Class Member" means all Contractor Technicians in the Settlement Classes provided, however, that "Settlement Class Member" shall exclude:  (i) all Contractor Technicians who timely and validly request exclusion from the Settlement Class; (ii) all Contractor Technicians who would otherwise qualify for membership in the "Settlement Classes" but which Contractor Technicians previously released all Released Claims as to DISH; (iii) DISH's officers, directors, and employees; (iv) DISH's attorneys; (v) Plaintiffs' attorneys; and (vi) any judge or other individual who has presided over either mediation or disposition of this case and the members of his or her immediate family.

1.30.  "Settlement Funds" means the amounts paid pursuant to Section 10.1.1 herein. The Settlement Funds shall be inclusive of any and all service awards, Attorneys' Fees, costs, expenses, notice to the class members, and settlement administration costs.

1.31.  "Settlement Website" means the internet website established by the Settlement Administrator for purposes of facilitating notice to, and communicating with, the Settlement Class.

## II.    NO ADMISSION OF LIABILITY OR TO THE ELEMENTS OF CLASS CERTIFICATION

2.1.    Denial of Wrongdoing or Liability.  DISH has asserted and continues to assert many defenses in this Litigation and has expressly denied and continues to deny any fault, wrongdoing or liability whatsoever arising out of the conduct alleged in the Litigation.  DISH expressly denies any fault, wrongdoing or liability whatsoever, as well as the validity of each of the claims and prayers for relief asserted in the Litigation against DISH.  The Parties expressly acknowledge and agree that neither the fact of, nor any provision contained in, this Settlement

DocuSign Envelope ID: 231AA1A1-7CE9-4540-85A1-2DDA39D4465B

Agreement, nor any of the implementing documents or actions taken under them, shall constitute or be construed as any admission of the validity of any claim, any status, or any fact alleged in the Litigation or any fault, wrongdoing, violation of law, or liability of any kind on the part of DISH and/or the Released Parties, or any admission by DISH and/or the Released Parties of any claim or allegation made in any action or proceeding against DISH and/or the Released Parties.  DISH has denied and continues to deny each and all of the claims and allegations in the Litigation.  Neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement and/or the Settlement, or DISH's or Plaintiffs' willingness to enter into this Settlement Agreement, nor any or all negotiations, communications, and discussions associated with the Settlement are, or may be construed as, or may be used in any proceeding as, an admission by or against DISH, the Released Parties or Plaintiffs of any fault, wrongdoing or liability whatsoever, or any infirmity of any claims or defenses asserted by DISH or Plaintiffs.

2.2.    No Admission by DISH of Elements of Class Certification.  Solely for purposes of effectuating this Settlement, the Parties stipulate to certification of the Settlement Classes as defined in Section 1.28 above; stipulate to the appointment of Plaintiffs as the representatives of the Settlement Classes (the "Class Representatives"), and stipulate to the appointment of Class Counsel as counsel for the Settlement Classes.  The Parties agree to cooperate in the preparation of such moving papers as the Court shall require to effectuate certification of the Settlement Classes for settlement purposes.  DISH denies that a class should be certified other than for purposes of this Settlement and reserves its right to contest any class certification motion should this Settlement Agreement not be approved by the Court.  Nothing in this Settlement Agreement shall be construed as an admission by DISH that this Litigation or any similar case is amenable to class certification for trial purposes.  Certification of the Settlement Classes and appointment

of the Class Representatives and Class Counsel by the Court shall be binding only with respect to the settlement of the Action. In the event the Effective Date for any reason does not occur, the certification of the Settlement Classes and appointment of Class Representatives and Class Counsel shall be vacated, the Parties' stipulation shall be voided, and the Litigation shall proceed as though the certification and appointments had never occurred.

### III.   MOTION FOR PRELIMINARY APPROVAL

3.1.   After the execution of this agreement, Class Counsel shall file this Settlement Agreement with the Court together with a motion for Preliminary Approval that seeks entry of an order that would, for settlement purposes only: (i) certify conditional settlement classes under Federal Rule of Civil Procedure 23(b)(3) composed of the Settlement Class Members; (ii) preliminarily approve the proposed Settlement Agreement; (iii) approve the proposed Mail Notices and Claim Form to the Settlement Classes; (iv) certify the Named Plaintiffs as representatives of the Settlement Classes; (v) appoint Class Counsel; (vi) approve the proposed notice plan; and (vii) appoint the proposed Settlement Administrator.

3.2.   Dahl Administration shall serve as the Settlement Administrator.  The Settlement Administrator shall be responsible for carrying out the specified tasks set forth below, including, but not limited to, maintaining records of all its activities, including the dates of Mail and Payment Notices, receipt of Claim Forms, mailed checks, returned mail, and any other communications and attempted communications with the members of the Settlement Classes.

### IV.   STAY OF LITIGATION AND CANCELLATION OR TERMINATION OF SETTLEMENT.

4.1.   Upon the preliminary approval of this Settlement by the Court as evidenced by entry of the Preliminary Approval Order, all proceedings in the Litigation shall be stayed until

further order of the Court, except such proceedings as may be necessary either to implement the Settlement or to comply with or effectuate the terms of the Settlement.

4.2    In the event that any of the events or conditions described in Section VIII or IX hereof either are not met or do not occur, this entire Settlement shall, upon written notice from DISH to Plaintiffs, or Plaintiffs to DISH, become null and void, except that the Parties shall have the option to agree mutually in writing to waive the event or condition and proceed with this Settlement.

### V.    NOTICE PLAN

5.1.    DISH has previously provided Plaintiff with a spreadsheet containing information regarding individual Contractor Technicians, with personally identifying information replaced by a unique identification number.   Plaintiffs agree to provide Defendant with the unique identification numbers of all Contractor Technicians who meet the class definitions.   DISH will match those identification numbers with its records, and provide the Settlement Administrator with class lists.   Each class list will consist of the Settlement Class Members in the respective Settlement Class.   DISH agrees to use commercially reasonable methods to provide the most recent mailing address found in and/or available from its records, to the extent such information exists and can be systematically retrieved.   The mailing addresses will be electronically checked and updated against the U.S.P.S. National Change of Address database by the Settlement Administrator, as well as skip-traced before mailing.   The Parties agree that DISH shall not be required to search beyond the records it currently maintains in the ordinary course of business to locate class member information.   The class lists shall be used solely for the purpose of effectuating the Settlement.   DISH shall provide such class address information to the Settlement

Administrator no later than 20 business days after the Court issues the Preliminary Approval Order.

5.2.    Notice Process Generally.   For purposes of providing court-approved class notices and establishing that the best practicable notice has been given, the provision of the Mail Notice will be accomplished in accordance with the following provisions.   Within thirty (30) days following Preliminary Approval (i.e. by the Notice Mailing Date), the Settlement Administrator shall cause the Mail Notices, to be sent by U.S. mail, postage prepaid to each Settlement Class Member identified on one of the class lists.   Each Settlement Class Member shall receive a notice which informs them which Settlement Class(es) they are a member of, and that they are required to return a Claim Form.   The Notice shall be in the form of a double-sided postcard, one half of which should consist of the Claim Form.   The Claim Form shall be perforated so that it can be easily removed from the Notice and returned.   The claim form shall be pre-addressed to the Settlement Administrator, with postage pre-paid.   The Claim Form shall bear a stamped claim number unique for each recipient and shall state that each member of the Classes must return the Claim Form to be eligible to receive a share of the Settlement Fund.   Any member of the Classes who does not return a Claim Form will not be eligible for payment.   Neither the Parties nor the Settlement Administrator shall have any further obligation to send Mail Notice to the Settlement Class Members.   For any mailing that is returned to the Settlement Administrator with a forwarding address, the Settlement Administrator shall re-mail the Mail Notice to that forwarding address.

5.3    Reminder Notice.   Approximately halfway through the claims period, the Administrator shall send a second notice, in a form to be agreed upon by the Parties, to those class members who have not yet returned a Claim Form.

DocuSign Envelope ID: 231AA1A1-7CE9-4548-8541-2DDA29D4465B

5.4.    Settlement Website.  The Settlement Administrator shall establish an Internet website containing information about the Settlement.  The Settlement Website will be accessible as of the Notice Mailing Date.  The Settlement Website will set forth the following information: (i) the operative Amended Complaint; (ii) the full text of the Settlement Agreement; (iii) the Mail Notices; (iv) the Long Form Notice; (v) the Preliminary Approval Order and other relevant orders of the Court; (vi) the Claim Form; and (vii) contact information for Class Counsel and the Settlement Administrator.  The Settlement Website will also include the ability for Class Members to digitally submit their Claim Forms.  Any information appearing on the website in addition to the above-listed documents shall be subject to joint approval of the Parties.  The Settlement Website shall be disestablished within sixty (60) days following the mailing of the last Payment Notice.

5.5.    Expenses of Notice and Administration.  All Mail Notice, Payment Notice, claims and other class administration costs, excluding only the costs associated with DISH's gathering and delivery of address information pursuant to Section 5.1, shall be invoiced by the Settlement Administrator and paid promptly from the Settlement Funds.

5.6.    Furthermore, with respect to any of the costs of any mailing contemplated herein, no later than fifteen (15) days after Preliminary Approval, the Class Administrator shall provide to Class Counsel a detailed statement of the mailing costs that will be incurred.  Class Counsel shall advance the sum required to accomplish the mailing of the Mail Notices, or shall reach an agreement with the Settlement Administrator for the Administrator to advance the funds pending final approval and Defendant's provision of the Settlement Fund 30 business days after the Effective Date as set forth in Paragraph 10.1.1 herein.  However, in the event the Effective Date

never comes to pass, Class Counsel shall be liable for all payments owed to the Settlement Administrator.

5.7.    The total expenses associated with Mail Notice, Payment, claims, and other class administration costs shall not increase the amount paid by DISH as part of the Settlement under any circumstances.  Any and all payments for class administration including amounts for Mail Notices shall come from the Settlement Funds.

5.8.    Notice Under Class Action Fairness Act of 2005 ("CAFA Notice").    The Settlement Administrator will send the CAFA Notice in accordance with 28 U.S.C. § 1715, not later than ten (10) days after this Settlement Agreement is filed with the Court.

5.9.    Confidentiality.  The Settlement Administrator (and any person retained by the Settlement Administrator) shall sign a confidentiality agreement in a form agreed to by Class Counsel and DISH's Counsel.  The confidentiality agreement will provide that the Settlement Administrator (and any person retained by the Settlement Administrator) shall treat as confidential the names, addresses and all other identifying information concerning the Settlement Class Members.   The confidentiality agreement will further provide that the Settlement Administrator (and any person retained by the Settlement Administrator) shall use such information only for the purposes of fulfilling the Settlement Administrator's duties and responsibilities as provided for under this Settlement Agreement.

## VI.    PROCEDURES FOR OPT-OUTS AND OBJECTIONS

6.1.    Opt-Out Procedures for Settlement Class Members.  The Mail Notices contain information about how a potential Settlement Class Member may opt-out of the Settlement, as well as the potential implications of doing so, including that opting out may preclude later participation in any class action against DISH.  A potential Settlement Class Member may

DocuSign Envelope ID: 231AA1A1-7C59-4540-8F11-2DDA20D4495B

request to be excluded from the Settlement Classes by sending a written request for exclusion to the Settlement Administrator.  To be valid, a request for exclusion must be personally signed by the potential Settlement Class Member and must include: (i) name, address, telephone number, and the last four digits of the Settlement Class Member's Social Security number; (ii) a statement that he or she is a member of one or more of the Settlement Classes; and (iii) the following statement: "I request to be excluded from the class settlement in *Ernst v. DISH Network*."  Opt-out requests must be postmarked no later than the Opt-Out and Objection Deadline.  If an opt-out request bears no post-mark, or if the postmark is illegible, it must be received by the Settlement Administrator no later than seven (7) days after the Opt-Out and Objection Deadline. No person within the Settlement Classes, or any person acting on behalf of or in concert or participation with that person, may exclude any other person within the Settlement Classes from the Settlement Classes.  In no event shall persons who purport to opt-out of the Settlement Classes as a group, aggregate, or class involving more than one person be considered valid opt-outs. Requests for exclusion that do not comply with any of the foregoing requirements are invalid.

6.2.    List of Opt-Outs.  Upon request, and in any event no later than seven (7) business days after Opt-Out and Objection Deadline, the Settlement Administrator shall provide to Class Counsel and DISH' Counsel a complete list of all persons who have properly opted-out of the Settlement together with copies of the opt-out requests.

6.3.    Objections from Settlement Class Members.  Any Settlement Class Member may object to the Settlement in writing and/or appear at the Final Fairness Hearing to argue that the proposed Settlement should not be approved and/or to oppose the application of Class Counsel for an award of Attorneys' Fees and costs and the service award to Plaintiffs.  However, no individual within the Settlement Classes shall be heard, and no objection may be considered,

DocuSign Envelope ID: 231AA1A1-7C59-4548-8F41-2DDA20D4495B

unless the individual serves the objection no later than the Opt-Out and Objection Deadline.  In order to allow class members to consider Class Counsel's requested compensation before deciding whether to object, Class Counsel's motion for Attorneys' Fees and costs shall be filed at least fifteen (15) days before the Opt-Out and Objection Deadline, and after filing, the motion and any supporting memoranda shall be immediately posted on the Settlement Website.

Copies of all objection papers must be sent to the Settlement Administrator.   All objections must include: (i) the objector's name, address, telephone number, and the last four digits of his or her Social Security number; (ii) a statement that he or she is a member of one or more of the Settlement Classes; (iii) the factual basis and legal grounds for the objection to the Settlement; (iv) the identity of any witnesses whom the objector may call to testify at the Final Fairness Hearing; and (v) copies of any exhibits the objector may seek to offer into evidence at the Final Fairness Hearing.  The written objection must indicate whether the objector and/or his or her lawyer(s) intend to appear at the Final Fairness Hearing.  Any attorney who intends to appear at the Final Fairness Hearing must also enter a written Notice of Appearance of Counsel with the Clerk of the Court no later than seven (7) business days before the Final Fairness Hearing.  No later than twenty-five (25) days before the Final Fairness Hearing, Class Counsel shall file indexed copies of any objections via the Court's "ECF" system.   To the extent necessary or desired, the Parties may respond to any properly filed objections no later than ten (10) days before the Final Fairness Hearing.

6.4     No party shall make any payment to any potential or actual objector or any potential or actual objector's counsel in exchange for the agreement not to make an objection, for the withdrawal of an objection, for the agreement not to appeal an objection, or for withdrawing an appeal associated with an objection.

## VII.    CLAIMS PROCESS FOR CLASS MEMBERS

7.1.1.   Members of the Classes who elect to submit a Claim Form in order to be eligible for a share of the Settlement Funds must submit such claims so that they are postmarked or digitally submitted via the Settlement Website no later than sixty (60) days after the Notice Mailing Date.  If a mailed Claim Form bears no postmark, or if the postmark is illegible, it must be received by the Settlement Administrator no later than sixty-seven (67) days after the Notice Mailing Date.

7.1.2.   Submission of Claim Forms shall be permitted commencing on the first day on which notice is disseminated.

7.1.3.   To be eligible to receive a share of the applicable Settlement Funds, a member of the Classes must complete a Claim Form, which shall be provided within the Mail Notice to the members of the Classes and also made available for download on the Settlement Website or by request from the Settlement Administrator.   The Settlement Website shall provide complete instructions for completion of this process.

7.1.4.   Claim Forms submitted by U.S. mail shall be mailed to a separate, dedicated post office box established by the Settlement Administrator exclusively for the purpose of receiving such claims as provided herein.

7.1.5.   Deceased Claimants.  Claim Forms may be filed by deceased members of the Classes through authorized representatives of their estate if appropriate documentation is provided.  Any such claim paid shall be made payable to the estate of the deceased member of the Classes.

7.1.6.   Determining the Validity of Claims.   Claim Forms that are incomplete, inaccurate, or submitted on behalf of someone who is not a member of the Settlement Classes

shall be rejected.  The instructions shall provide that any failure to provide accurate information, any failure to submit the required representations, and any failure to properly sign a Claim Form will result in rejection of the claim.

      7.1.7.  The Settlement Administrator shall have the authority to determine whether a claim made by any member of the Classes is a valid claim based on the criteria set forth in Section 7.1.6.  The Settlement Administrator's determination in this regard shall be final and non-appealable unless Class Counsel or DISH's Counsel disagree.  If counsel disagree regarding the validity of a claim, they shall meet and confer in good faith with one another and the claimant and make an effort to resolve the dispute.  In the event such a dispute cannot be resolved, they shall submit the dispute to the Court for resolution.  Any member of the Settlement Classes who opts not to return the Claim Form and/or whose Claim is determined not to be a valid claim shall in all other respects be bound by the terms of this Settlement Agreement and by the Final Approval Order entered in the Litigation.

      7.1.8.  The Settlement Administrator shall notify, in a prompt fashion, any claimant whose claim has been rejected, setting forth the reasons therefore.  The Settlement Administrator shall timely provide copies of all rejection notices to Class Counsel and to DISH's Counsel.  A Claimant shall have an additional fourteen (14) days after the date this notice is mailed to correct and resubmit the defective claim, but any subsequent determination by the Settlement Administrator on any resubmitted Claim Form shall be final.

## VIII.   FINAL FAIRNESS HEARING AND FINAL APPROVAL

      8.1.    Final Fairness Hearing.  The Parties will jointly request that the Court hold the Final Fairness Hearing to consider approval of the Settlement of the Litigation as provided for herein not less than one hundred and twenty (120) days after Preliminary Approval.  On or

before a date at least ten (10) days prior to the Final Fairness Hearing, Class Counsel shall file a motion for entry of the Final Approval Order. The Parties agree that, as of the Effective Date, the Final Approval Order constitutes a final judgment dismissing the Litigation with prejudice.

8.2. Final Approval. All relief contemplated by this Settlement Agreement is expressly contingent upon the Settlement Agreement receiving the Court's Final Approval and the occurrence of the Effective Date

## IX.   DISMISSAL OF ACTION

9.1   Upon issuance of the Court's Final Approval Order, Final Judgment shall be entered in the form agreed upon by the parties.

9.2   Plaintiffs shall dismiss the Litigation with prejudice within two (2) days of Defendants' transfer of all funds to the Settlement Administrator, pursuant to Section 9.2.

## X.   SETTLEMENT FUND

10.1.1. Creation of and Deposit Into Settlement Funds. There shall be a settlement fund created as part of this Settlement Agreement. The Settlement Fund shall consist of the total settlement amount of $1,750,000. Class Counsel, in conjunction with the Settlement Administrator, shall establish escrow accounts or equivalent accounts at a federally-insured financial institution (the "Financial Institution") acceptable to the Parties, which shall be considered funds created as a result of this Settlement Agreement. The Settlement Administrator shall direct the Financial Institution to make distributions from the Settlement Funds only in accordance with this Settlement Agreement. No funds shall be distributed or paid by the Financial Institution without written confirmation from both Class Counsel and DISH's Counsel. Within 30 business days after the Effective Date, Defendants shall transfer to the Settlement Administrator, by draft or by wire, the total settlement amount. The Settlement Funds may not be

DocuSign Envelope ID: 231AA1A1-7CE9-4540-85A4-2DDA20D44E5B

commingled with any other funds and may be held in cash, cash equivalents, certificates of deposit or instruments insured by an arm of or backed by the full faith and credit of the United States Government. Interest earned, if any, on the Settlement Funds shall be for the benefit of the Settlement Classes in the event this Settlement Agreement is not terminated by the Defendants and the Effective Date otherwise occurs.

10.1.2. Settlement Fund Apportionment. The members of the Classes who return a valid claim form are entitled to payment from the Settlement Fund. The Settlement Fund shall be apportioned among the Class Members who return a valid claim form as follows. First, all court approved deductions from the Settlement Fund, including but not limited to deductions for settlement administration, attorney's fees and costs and named plaintiffs' service awards will be made. After those deductions are made, all remaining funds will be allocated to the Class Members who returned a claim form such that each member of the Adverse Action Class will receive an amount that is six times larger than the amount paid to each member of the Authorization Class. If a Class Member is a member of both Classes, they shall receive the larger amount as a member of the Adverse Action class, and shall not recover as a member of both classes.

10.2.1. Attorneys' Fees. No later than forty-five (45) days after the Notice Mailing Date, Class Counsel shall file an application to the Court for reimbursement of Attorneys' Fees and costs from the Settlement Funds, seeking costs not to exceed actual incurred and documented costs plus Attorneys' Fees not to exceed one-third of the total of the Settlement Funds. The application shall be noticed to be heard at the Final Fairness Hearing. DISH will not oppose such a request that complies with the foregoing parameters. To the extent the Court approves an award of Attorneys' Fees in an amount that is less than the amount referenced above, the

difference will remain in the Settlement Funds to be used for the benefit of the Settlement Class Members, as detailed below.  Attorneys' Fees and costs awarded by the Court shall be deducted from the Settlement Funds in accordance with Section 10.1.2 above.

10.2.2. The application for Attorneys' Fees, and any and all matters related thereto, shall be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement.  Plaintiffs and Class Counsel agree that this Settlement Agreement is not conditioned on the Court's approval of Attorneys' Fees in the requested amount or in any amount whatsoever.  The Court's ruling on the application or applications for such fees shall not operate to terminate or cancel the Settlement.

10.2.3. DISH shall have no responsibility for, nor any liability with respect to, the payment of Attorneys' Fees and costs to Class Counsel.  The sole source of any payment of Attorneys' Fees and costs shall be the Settlement Funds.

10.2.4. Payment of Attorneys' Fees and Costs and Service Award.  Attorneys' Fees and costs, and any service award approved by the Court, will be paid through distribution from the Settlement Funds by wire transfer from the Settlement Administrator contemporaneously with the mailing of Settlement Class Member payments.

10.3.  Service Award to the Named Plaintiffs.  Concurrent with the filing of the application for Attorneys' Fees, Class Counsel shall file an application to the Court for a service award, not to exceed $5,000 to be paid to each of the Plaintiffs for serving as class representative in support of the Settlement.  DISH will not oppose such a request that complies with the prior sentence.  To the extent the Court approves a service award in an amount less than $5,000, the difference will remain in the Settlement Funds for the benefit of the Settlement Class Members. Any service award payment shall be funded through the Settlement Funds.  Plaintiffs and Class

Counsel agree that this Settlement Agreement is not conditional on the Court's approval of a service award in the requested amount or in any amount whatsoever.  Any service award approved by the Court shall be deducted from the Settlement Funds in accordance with Section 10.1.2 above.

10.4.    General Distribution Plan.  Within thirty (45) days after the Effective Date, the Settlement Administrator shall mail payments out of the Settlement Funds to the Settlement Class Members via U.S. mail.  The Payment Notices accompanying the payment check shall notify the recipients that the checks must be cashed within ninety (90) days from the date on the Payment Notice and that the enclosed check shall not be valid after that date.  Ninety (90) days after the date on the Payment Notice, if the check has not been deposited or cashed, the amount of the check shall remain in the Settlement Funds for further distribution to the *cy pres* recipients.  No amount shall revert to Defendants.

10.5.    Any excess funds remaining in the Settlement Funds after all distributions have been made in accordance with this Agreement shall then be donated to the *cy pres* entities set forth below.  The *cy pres* distributions shall be distributed by the Settlement Administrator within one hundred (100) days of the mailing of the final payment under the provisions of Section 10.4.  For purposes of any *cy pres* distribution, fifty percent (50%) of any *cy pres* funds shall be provided to the Southern Coalition for Social Justice (SCSJ) of Durham, North Carolina, a non-profit charitable organization exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code, solely for the purpose of fulfilling or continuing that organization's obligations under an agreement with the Equal Justice Works AmeriCorps Legal Fellowship program and subject to all the conditions and requirements of that program, with the additional condition that no *cy pres* funds will be used for litigation regarding claims under the Fair Credit

Reporting Act or against consumer reporting agencies as defined by the Fair Credit Reporting Act.  This restriction does not preclude SCSJ from accepting other funds to support such work, nor limit any other activities consistent with its mission.  The remaining fifty percent (50%) of any *cy pres* funds be provided to the Legal Aid Foundation of Colorado, a non-profit charitable organization exempt from federal income taxes under Section 501(c)(3) of the Internal Revenue Code, solely for the purpose of continuing that organization's programs that provide legal assistance to individuals.

10.6.    Capped Fund.  Except for DISH's costs to generate the class lists and provide the address information pursuant to Section 5.1, all of the following must be paid from the Settlement Funds (i) notice and administration costs, (ii) payments to the Settlement Class Members; (iii) payments of any service award to the Named Plaintiffs; (iv) payments to Class Counsel for Attorneys' Fees and costs; (v) and any Taxes and Tax Expense.  The Parties and their respective counsel agree that under no circumstances will DISH and/or Released Parties pay or be required to pay more than the $1,750,000 total payment contemplated by this Settlement Agreement.

10.7.    The Parties Agree, and the Court shall order, that no Settlement Class Member has a vested interest in any amount to be paid to him or her under the Settlement Agreement unless and until he or she has cashed a settlement check under the parameters and timeframe set forth herein.

## XI. RELEASE OF CLAIMS

11.1.    Upon the Effective Date, the Plaintiffs, for themselves and as representatives of the Settlement Classes, and on behalf of each member of the Settlement Classes and/or his or her respective spouses, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf

DocuSign Envelope ID: 231AA1A1-7CE9-4548-8541-2DDA20D4465B

acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally and forever settled, released and discharged the Released Parties as set forth in Section 11.2.1 below.

11.2.   This Settlement Agreement shall bind all Settlement Class Members and all of the Released Claims shall be dismissed with prejudice and released as against the Released Parties, even if a Settlement Class Member claims or can later show that he or she did not receive actual notice of the Settlement prior to the Final Approval Hearing.

11.2.1. Plaintiffs' Release.  The Plaintiffs and the members of the Settlement Classes and all of their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf, hereby release and forever discharge the Released Parties from all Claims that were brought or could have been brought in the Litigation arising out of or relating to the facts alleged in the Litigation.

In addition, Plaintiffs and the members of the Settlement Classes and their respective heirs, spouses, executors, administrators, partners, attorneys, predecessors, successors, assigns, agents and/or representatives, and/or anyone acting or purporting to act on their behalf, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs and the members of the Settlement Classes fully understand that the facts on which this Settlement Agreement is executed may be different from the facts now believed by

them and Plaintiffs' Counsel to be true and expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts existing now or hereafter discovered.  Defendants

## XIII.   MISCELLANEOUS PROVISIONS

13.1.   Inadmissibility**.**  This Agreement (whether approved or not approved, revoked, or made ineffective for any reason) and any proceedings or discussions related to this Agreement are for settlement purposes only and shall not be construed as admissible evidence of any liability or wrongdoing whatsoever in any Court or tribunal in any state, territory, or jurisdiction. Further, neither this Agreement, the settlement contemplated by it, nor any proceedings taken under it, will be construed or offered or received into evidence as an admission, concession or presumption that class certification is appropriate, except to the extent necessary to obtain and implement Court approval of this Settlement or to enforce the terms thereof.  This Agreement is made without prejudice to the rights of DISH to oppose certification of a class or classes should this Agreement not be approved or implemented or should the Effective Date not occur.

13.2.   Successors and Assigns.  The terms of this Settlement Agreement shall apply to and bind the Parties' respective subsidiaries and their officers, directors, employees, partners, agents, and any other successors, assigns, legatees, heirs, and personal representatives.

13.3.   DISH's Communications with Contractor Technicians in the Ordinary Course of Business.  DISH reserves the right to continue communicating with Contractor Technicians, including Settlement Class Members, in the ordinary course of business.   To the extent Contractor Technicians initiate communications regarding this Settlement Agreement, DISH may confirm the fact of a settlement and refer inquiries to the Settlement Administrator.  Nothing

herein is intended to prohibit DISH from communicating with Contractor Technicians regarding disputes relating to the provision of consumer reports.

13.4.   Efforts to Support Settlement.   The Parties and their counsel agree to use commercially reasonable efforts to cooperate in seeking Court approval for this Settlement Agreement and to use commercially reasonable efforts to effect the consummation of the Settlement Agreement and to protect the Settlement Agreement by applying for appropriate orders enjoining others from initiating or prosecuting any action arising out of or related to facts or claims alleged in the Litigation, if so required.

13.5.   Voluntary Agreement.   The Parties agree that the terms of the Settlement Agreement were negotiated at arm's length and in good faith and were reached voluntarily and of each Party's own free will and without threat, force, fraud, duress, undue influence or coercion of any kind.

13.6   Parties Represented by Counsel.   The Parties acknowledge that: (a) they have been represented by independent counsel of their own choosing during the negotiation of this Settlement and the preparation of this Agreement; (b) they have read this Agreement and are fully aware of its contents; and (c) their respective counsel fully explained to them the Agreement and its legal effect.

13.7   Entire Agreement.   This Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter of this Settlement Agreement.  Except as otherwise expressly provided herein, no party shall be bound by any communication between them on the subject matter of this Settlement Agreement, unless such communication is: (i) in writing; (ii) bears a date contemporaneous with or subsequent to the date the Parties execute this Settlement Agreement; and (iii) is signed by both Parties to this Settlement Agreement.  On the

date the Parties execute this agreement, all prior agreements or understandings between the Parties shall be null and void. The Parties specifically acknowledge that there are no unwritten side agreements or oral agreements between them that alter, amend, modify or supplement this Settlement Agreement. In addition to (and without limitation of) any provisions of this Settlement Agreement that expressly survive termination or expiration, any provision of this Settlement Agreement that logically would be expected to survive termination or expiration shall survive for a reasonable time period under the circumstances.

13.8. Headings for Convenience Only. The headings in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

13.9. Amendments. No amendment, change, or modification to this Agreement will be valid unless in writing signed by the Parties or their counsel.

13.10. Authorization of Parties and Counsel. Each Party warrants and represents that there are no liens or claims of lien or assignments, in law or equity, against any of the claims or causes of action released by this Agreement and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge. Class Counsel, on behalf of the Settlement Classes, are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Classes pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Classes that they deem necessary or appropriate. Each attorney executing the Settlement Agreement on behalf of any Party hereto hereby warrants that such attorney has the full authority to do so.

13.11. Confidentiality.  All orders and agreements entered and made during the course of the Litigation relating to the confidentiality and/or proprietary nature of certain information shall survive this Settlement Agreement.  The Plaintiffs, Settlement Class members, and Class Counsel, including their experts and consultants, agree that they will not use any confidential material obtained, derived, or created in connection with this lawsuit for any purpose unrelated to this Action.  Except as otherwise expressly agreed to in writing, DISH, DISH's Counsel, Plaintiffs, and Class Counsel agree not to make any oral or written statements to the press regarding the Action or the Settlement. Class Counsel and DISH's counsel reserve the right to post neutral factual statements about the Settlement on their websites and to provide information about the Settlement to courts or in the course of their practices, including but not limited to providing information to potential clients and/or co-counsel.

13.12. Court's Jurisdiction.   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement and all orders entered in connection therewith.  The Parties and their attorneys submit to the jurisdiction of the Court regarding these matters.

13.13 Severability.  If any provision of this Agreement is held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, which shall continue in full force and effect without being impaired or invalidated in any way, and, such invalid, illegal or unenforceable provision shall be restated by a court of competent jurisdiction to reflect as nearly as possible the original intentions of the Parties in accordance with applicable law.

13.14. Construction. The Parties have cooperated in the mutual drafting and preparation of this Settlement Agreement.  Hence, in any construction to be made of this Settlement

DocuSign Envelope ID: 231AA1A1-7C59-4540-8F14-2DDA20D4465B

Agreement, the same shall not be construed against any of the Parties. Before declaring any provision of this Settlement Agreement invalid, a court should first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Settlement Agreement valid and enforceable.

13.15. No Claims Arising from this Settlement Agreement. No person shall have any claim against any DISH, any Released Party, DISH's Counsel, Plaintiffs or Class Counsel based on distribution of benefits made substantially in accordance with this Settlement Agreement or any Settlement Agreement-related order(s) of the Court.

13.16. Applicable Law. This Settlement Agreement shall, in all respects, be interpreted, construed and governed by and under the laws of the United States of America. To the extent state law applies for any reason, the laws of the State of New York shall apply. All judicial proceedings regarding this Settlement Agreement shall be brought only in this Court. Any notice period set forth in this Settlement Agreement shall be calculated pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Southern District of New York, to the extent applicable.

13.17. Waiver. The waiver by one Party of any provision or breach of this Settlement Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

13.18. Counterparts and Date of Agreement. This Settlement Agreement may be executed in one or more counterparts and by facsimile. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the Parties shall exchange among themselves signed counterparts, and a complete set of executed counterparts shall be filed with the Court.

13.19.  Agreement Constitutes a Complete Defense**.**  To the extent permitted by law, this Agreement may be pled as a full and complete defense to any action, suit, or other proceedings that may be instituted, prosecuted or attempted against the Released Parties contrary to this Agreement.

DocuSign Envelope ID: 43D6144E-F23E-41BB-8240-D459692C35C3

IN WITNESS THEREOF, the Parties hereto have caused this Settlement Agreement to

be executed by their duly authorized representatives.

**Plaintiffs:**

**Scott Ernst**

**Neil Trotter**

**Sean Denton**

BERGER & MONTAGUE, P.C.

E. Michelle Drake
43 SE Main Street
Suite 505
Minneapolis, MN 55414
emdrake@bm.net

Attorneys for Plaintiffs and the Class Members

**Defendants:**

**DISH NETWORK L.L.C**
**DISH NETWORK SERVICE L.L.C.**

By:     R. Stanton Dodge
Its:     EVP, General Counsel and Secretary

09617.054 3508532v1                      Page 31 of 31

DocuSign Envelope ID: F1C25EBB-B853-4B85-B5E0-3780AA3003A7

IN WITNESS THEREOF, the Parties hereto have caused this Settlement Agreement to be executed by their duly authorized representatives.

**Plaintiffs:**

_____
Scott Ernst

*Neil Trotter*
_____
**Neil Trotter**

_____
**Sean Denton**

BERGER & MONTAGUE, P.C.

_____
E. Michelle Drake
43 SE Main Street
Suite 505
Minneapolis, MN 55414
emdrake@bm.net

Attorneys for Plaintiffs and the Class Members

**Defendants:**

**DISH NETWORK L.L.C**
**DISH NETWORK SERVICE L.L.C.**

_____
By:     R. Stanton Dodge
Its:     EVP, General Counsel and Secretary

IN WITNESS THEREOF, the Parties hereto have caused this Settlement Agreement to be executed by their duly authorized representatives.

**Plaintiffs:**

_____

**Scott Ernst**

_____

**Neil Trotter**

*Sean Denton*
_____

**Sean Denton**

BERGER & MONTAGUE, P.C.

_____

E. Michelle Drake
43 SE Main Street
Suite 505
Minneapolis, MN 55414
emdrake@bm.net

Attorneys for Plaintiffs and the Class Members

**Defendants:**

**DISH NETWORK L.L.C**
**DISH NETWORK SERVICE L.L.C.**

_____

By:     R. Stanton Dodge
Its:     EVP, General Counsel and Secretary